Eric J. Goodman (SBN 210694)
David A. Berstein (SBN 204472)
BURKHALTER KESSLER
GOODMAN & GEORGE  LLP
2020 Main Street, Suite 600
Irvine, California 92614
Telephone:  949.975.7500
Facsimile:   949.975.7501
dberstein@bkgglaw.com

Attorneys for Plaintiffs
KIM LAUBE & COMPANY, INC.
and KIM LAUBE



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| KIM LAUBE & COMPANY, INC., a California corporation;  KIM LAUBE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>WAHL CLIPPER CORPORATION, an Illinois Corporation; GREGORY S. WAHL, an individual; and DOES 1 to 10, Inclusive,<br><br>Defendants. | Case No. CV09 - 914 **ODW(JCX)**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.  Patent Infringement of U.S. Patent No. 6,473,973<br><br>2.  Patent Infringement of U.S. Patent No. 7,010,859<br><br>3.  Breach of Contract<br><br>4.  Misappropriation of Trade Secrets (California Civil Code §§3426, *et seq.*)<br><br>5.  Misappropriation of Trade Secrets (California Civil Code §§3426, *et seq.*)<br><br>6.  Fraud and Deceit<br><br>7.  Unfair Competition and Business Practices (California Business and Professions Code §§17200, *et seq.*)<br><br>-Jury Trial Demanded- |

Plaintiffs KIM LAUBE & COMPANY, INC. and KIM LAUBE (hereinafter "Plaintiffs" unless otherwise identified) complain and allege as follows:

BURKHALTER KESSLER GOODMAN & GEORGE LLP
2020 MAIN STREET, SUITE 600
IRVINE, CALIFORNIA 92614

**JURISDICTION AND VENUE**

1.     This is a civil action for patent infringement and damages arising under the Acts of Congress relating to patents, 35 U.S.C. § 1, *et seq.*, particularly including 35 U.S.C. §§271, 281, 284, 285 and 289.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

2.     Venue is proper in this district under 28 U.S.C. §§1391 (b) and (c) in that the Defendants conduct business, market, distribute, advertise, sell and/or offer for sell products in this district and a substantial part of the events or omissions giving rise to the claims stated herein have occurred and are occurring within this judicial district.

**THE PARTIES**

3.     Plaintiff KIM LAUBE & COMPANY, INC. is, and at all times mentioned herein, was, a corporation organized and existing under and by virtue of the laws of the State of California with its principal place of business located at 2221 Statham Boulevard, Oxnard, California   93033.   Plaintiff KIM LAUBE is an individual residing in the County of Ventura, State of California.

4.     Plaintiffs are informed and believe, and based thereon allege, that Defendant WAHL CLIPPER CORPORATION (hereinafter "WAHL") is a corporation organized under the laws of the State of Illinois and is conducting business in this Judicial District.

5.     Plaintiffs are informed and believe, and based thereon alleges that Defendant GREGORY S. WAHL (hereinafter "GREG") is an individual residing in the State of Illinois and conducting business in this Judicial District.   Upon information and belief, Defendant GREG is the President and Chief Executive Officer of Defendant WAHL.

6.     Plaintiffs are unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive.  Therefore, Plaintiffs sue said DOES, and each of them, by such fictitious names.  Plaintiffs are informed and believe, and thereon allege, that DOES 1 through 10, and each of them, are in some  way

BURKHALTER KESSLER GOODMAN & GEORGE LLP
2020 MAIN STREET, SUITE 600
IRVINE, CALIFORNIA 92614

associated with co-Defendants and Plaintiffs pray that their true names and capacities, when ascertained, may be incorporated by appropriate amendment.

7.     Plaintiffs are informed and believe, and based thereon allege, that at all times herein mentioned, each and every Defendant was the agent, servant, employee, joint venturer, partner, subsidiary, and/or co-conspirator of each other Defendant, and that, in performing or failing to perform the acts herein alleged, each was acting individually as well as through and in the foregoing alleged capacity and within the course and scope of such agency, employment, joint venture, partnership, subsidiary and/or conspiracy, and each other Defendant ratified and affirmed the acts and omissions of the other Defendants.  Plaintiffs are further informed and believe that each Defendant, in taking the actions alleged herein and/or ratifying the actions alleged herein, acted within the course and scope of such authority and, at the same time, for their own financial and individual advantage, as well as in the course and scope of such employment, agency and as an alter ego therein.

## GENERAL ALLEGATIONS

8.     For over 28 years, Plaintiffs have been widely recognized and celebrated inventors and manufacturers of animal care products, i.e. pet hair clippers, scissors, and other grooming supplies.  Plaintiffs' products are purchased and used by professional salons and pet grooming establishments as well as private individuals throughout the United States and worldwide.

9.     Defendant WAHL is engaged in the manufacture of consumer personal care appliances, products for the professional beauty and barber salon trade and pet grooming equipment including clippers, blades, guide combs and shampoo.  Since 1997, Defendant GREG has served as President of Defendant WAHL.

10.     In 1998, Defendant WAHL purchased One Thousand, Two Hundred and Sixty-Five (1,265) shares of issued and outstanding stock in KIM LAUBE & COMPANY, INC.  The aforementioned shares represented Seventy-Five percent (75%) ownership in KIM LAUBE & COMPANY, INC.

BURKHALTER KESSLER GOODMAN & GEORGE LLP
2020 MAIN STREET, SUITE 600
IRVINE, CALIFORNIA 92614

11.   According to Defendant WAHL's website: "[t]he acquisition of Kim Laube & Company Inc. solidified Wahl's position as the preeminent worldwide manufacturer of pet clippers, trimmers and related products.  Laube . . . makes and markets high-end pet clippers and a full line of premium quality shampoos for professional groomers."

12.   During the time period that Defendant WAHL owned a 75% interest in Kim Laube & Company, Inc., Plaintiff KIM LAUBE lawfully filed patent applications 10/042,546 and 10/042,547 with the United States Patent and Trademark Office.

13.   On November 5, 2002, patent application 10/042,547 was approved and the United States Patent and Trademark Office duly and legally issued U.S. Patent Number 6,473,973 (hereinafter "'973 patent") to Plaintiff KIM LAUBE who is the owner of the entire right, title and interest in the '973 patent.  A true and correct copy of the '973 patent is attached hereto as Exhibit "A."

14.   On March 14, 2006, patent application 10/042,546 was approved and the United States Patent and Trademark Office duly and legally issued U.S. Patent Number 7,010,859 (hereinafter "'859 patent") to Plaintiff KIM LAUBE who is the owner of the entire right, title and interest in the '859 patent.  A true and correct copy of the '859 patent is attached hereto as Exhibit "B."

15.   On December 24, 2002, Plaintiffs entered into a STOCK TRANSFER AGREEMENT (hereinafter "Agreement") with Defendants wherein Defendant WAHL transferred its entire interest in KIM LAUBE & COMPANY, INC. back to Plaintiff KIM LAUBE.  The Agreement was signed by Plaintiff KIM LAUBE and Defendant GREGORY WAHL on December 24, 2002.

16.   Pursuant to the Agreement, Defendants recognized and agreed that they had no interest in or rights to the '973 patent nor the then pending patent application 10/042,546.

/ / /

/ / /

BURKHALTER KESSLER GOODMAN & GEORGE LLP
2020 MAIN STREET, SUITE 600
IRVINE, CALIFORNIA 92614

17.   Since December 24, 2002, Plaintiffs and Defendants have, and remain, competitors in the area of animal care products which includes pet hair clippers, blades, guide combs, shampoos and other grooming supplies.

### FIRST CLAIM FOR RELIEF

#### Infringement of United States Patent No. 6,473,973

#### As Against Defendants WAHL and DOES 1-10

18.   Plaintiffs reallege and reincorporate by reference each and every allegation contained in paragraphs 1 through 17 as though fully set forth herein.

19.   On information and belief, Defendant WAHL has manufactured, used, distributed, sold and/or offered for sale products that infringe at least claims 1 and 4 of the '973 patent in this judicial district and elsewhere in the United States. Such infringing products include those designated by Defendant WAHL as the "Wahl Clipper Stainless Steel Attachment Guide Combs," Model No. 3390-100.

20.   On information and belief, Defendant WAHL has induced others to infringe the '973 patent by encouraging and promoting the manufacture, use, distribution, sale and/or offer for sale by others of products that infringe the '973 patent, including the products designated by Defendant WAHL as the "Wahl Clipper Stainless Steel Attachment Guide Combs," Model No. 3390-100.

21.   On information and belief, Defendant WAHL had actual knowledge of the '973 patent before the filing of this action and its infringement of the '973 patent has been, and continues to be, willful and deliberate.

22.   Plaintiffs have been damaged by Defendant WAHL's infringement of the '973 patent in an amount to be determined at the time of trial, including all of Defendant WAHL's profits derived by way of its infringement. Furthermore, by its infringing acts, Defendant WAHL has irreparably injured Plaintiffs and such injury will continue unless Defendant WAHL is enjoined by this Court.

/ / /

/ / /

BURKHALTER KESSLER GOODMAN & GEORGE LLP
2020 MAIN STREET, SUITE 600
IRVINE, CALIFORNIA 92614

**SECOND CLAIM FOR RELIEF**

**Infringement of United States Patent No. 7,010,859**

**As Against Defendants WAHL and DOES 1-10**

23.   Plaintiffs reallege and reincorporate by reference each and every allegation contained in paragraphs 1 through 22 as though fully set forth herein.

24.   On information and belief, Defendant WAHL has manufactured, used, distributed, sold and/or offered for sale products that infringe at least claim 1 of the '859 patent in this judicial district and elsewhere in the United States.   Such infringing products include those designated by Defendant WAHL as the "Wahl Clipper Stainless Steel Attachment Guide Combs," Model No. 3390-100.

25.   On information and belief, Defendant WAHL has induced others to infringe the '859 patent by encouraging and promoting the manufacture, use, distribution, sale and/or offer for sale by others of products that infringe the '859 patent, including the products designated by Defendant WAHL as the "Wahl Clipper Stainless Steel Attachment Guide Combs," Model No. 3390-100.

26.   On information and belief, Defendant WAHL had actual knowledge of the '859 patent before the filing of this action and its infringement of the '859 patent has been, and continues to be, willful and deliberate.

27.   Plaintiffs have been damaged by Defendant WAHL's infringement of the '859 patent in an amount to be determined at the time of trial, including all of Defendant WAHL's profits derived by way of its infringement.   Furthermore, by its infringing acts, Defendant WAHL has irreparably injured Plaintiffs and such injury will continue unless Defendant WAHL is enjoined by this Court.

/ / /

/ / /

/ / /

/ / /

/ / /

BURKHALTER KESSLER GOODMAN & GEORGE LLP
2020 MAIN STREET, SUITE 600
IRVINE, CALIFORNIA 92614

# THIRD CLAIM FOR RELIEF

## Breach of Contract

## As Against All Defendants

28.    Plaintiffs reallege and reincorporate by reference each and every allegation contained in paragraphs 1 through 27 as though fully set forth herein.

29.    Pursuant to Section 8.1 of the Agreement entered into by and between Plaintiffs and Defendants, Defendants acknowledged and agreed "not to divulge, communicate, use to the detriment of [Plaintiffs] or for the benefit of any other person or entity, or misuse in any way, any confidential information or trades secrets of [Plaintiffs]."

30.    Further, pursuant to Section 8.2 of the Agreement, Defendants acknowledged and agreed that they have "no interest in or right to any . . . patents or applications [of Plaintiffs] as listed in Schedule 5 . . .." Schedule 5 specifically identifies the '973 patent and the application for the '859 patent.

31.    Plaintiffs have performed and fully executed all conditions, covenants, and promises required to be performed on their part in accordance with the terms and conditions of the Agreement.

32.    By way of their infringing activities hereinabove alleged, Defendants are in breach of Section 8.1 and 8.2 of the Agreement.

33.    As a legal result of defendants' breach, Plaintiffs are entitled to recover from Defendants the damages they have sustained, and will sustain, as a result of Defendants' wrongful acts as hereinabove alleged.  The amount of such damages cannot be determined at this time.  Plaintiffs are further entitled to recover from Defendants their unjust enrichment including gains, profits and advantages they have obtained as a result of their wrongful acts as hereinabove alleged.  Plaintiffs at present are unable to ascertain the full extent of the Defendants' unjust enrichment including gains, profits, and advantages obtained by reason of their aforesaid breach.

/ / /

BURKHALTER KESSLER GOODMAN & GEORGE LLP
2020 MAIN STREET, SUITE 600
IRVINE, CALIFORNIA 92614

**FOURTH CLAIM FOR RELIEF**

**Misappropriation of Trade Secrets**

**(California Civil Code §§3426 *et seq.*)**

**As Against All Defendants**

34.    Plaintiffs reallege and reincorporate by reference each and every allegation contained in paragraphs 1 through 33 as though fully set forth herein.

35.    From the time that Defendant WAHL owned a 75% interest in KIM LAUBE & COMPANY, INC., between 1998 and December 24, 2002, Defendants and Plaintiffs were engaged in a fiduciary relationship.  In furtherance of that fiduciary relationship, Plaintiffs shared proprietary inventions related to the then pending patent application for the '859 patent.

36.    Plaintiffs' proprietary inventions contained information that was not known to the general public or to other persons who can obtain value from their disclosure or use.    Plaintiffs duly maintained the secrecy of this information, which derived economic value from not being generally known.  Plaintiffs' proprietary inventions constituted a "trade secret" under California Civil Code §3246.1.

37.    Plaintiffs are informed and believe and based thereupon allege that Defendants accessed and misappropriated Plaintiffs' proprietary inventions when they were under a duty not to do so. Upon information and believe, Defendants' misappropriation of Plaintiffs' proprietary inventions resulted in the manufacture, use, distribution, sale and/or offer for sale, of products designated by Defendant WAHL as the "Wahl Clipper Stainless Steel Attachment Guide Combs," Model No. 3390-100.

38.    By reason of the foregoing acts and conduct of Defendants, Plaintiffs have and will suffer great and irreparable harm and damage, which will be difficult to ascertain.  Plaintiffs will be without an adequate remedy at law.

39.    Plaintiffs are entitled to an injunction restraining Defendants, their officers, agents, employees, and all persons acting in concert with them from engaging in

BURKHALTER KESSLER GOODMAN & GEORGE LLP
2020 MAIN STREET, SUITE 600
IRVINE, CALIFORNIA 92614

1 further unlawful acts and from reaping any additional commercial advantage from
2 their misappropriation of Plaintiffs' trade secrets.

3 40.    Plaintiffs are further entitled to recover from Defendants the damages Plaintiffs
4 sustained, and will sustain, as a result of Defendants' wrongful acts as hereinabove
5 alleged. The amount of such damages cannot be determined at this time.   Plaintiffs
6 are further entitled to recover from Defendants the gains, profits, advantages, and
7 unjust enrichment they have obtained as a result of their wrongful acts as hereinabove
8 alleged.

9 41.    Defendants' misappropriation was both willful and malicious, and therefore
10 Plaintiffs is entitled to exemplary damages against each Defendant.

### FIFTH CLAIM FOR RELIEF

**Misappropriation of Trade Secrets**

**(California Civil Code §§3426 *et seq.*)**

**As Against All Defendants**

15 42.    Plaintiffs reallege and reincorporate by reference each and every allegation
16 contained in paragraphs 1 through 41 as though fully set forth herein.

17 43.    From the time that Defendant WAHL owned a 75% interest in KIM LAUBE &
18 COMPANY, INC., between 1998 and December 24, 2002, Defendants and Plaintiffs
19 were engaged in a fiduciary relationship.   In furtherance of that fiduciary relationship,
20 Plaintiffs shared certain proprietary inventions and ideas.

21 44.    Plaintiffs' proprietary inventions and ideas contained information that was not
22 known to the general public or to other persons who can obtain value from their
23 disclosure or use.   Plaintiffs duly maintained the secrecy of this information, which
24 derived economic value from not being generally known.   Plaintiffs' proprietary
25 inventions and ideas constituted a "trade secret" under California Civil Code
26 §3246.1.

27 45.    Plaintiffs are informed and believe and based thereupon allege that Defendants
28 accessed and misappropriated Plaintiffs' proprietary inventions and ideas when they

BURKHALTER KESSLER GOODMAN & GEORGE LLP
2020 MAIN STREET, SUITE 600
IRVINE, CALIFORNIA 92614

were under a duty not to do so. Upon information and believe, Defendants' misappropriation of Plaintiffs' proprietary inventions and ideas resulted in the manufacture, use, distribution, sale and/or offer for sale, of products designated by Defendant WAHL as the "Wahl Switchblade Clipper," Model No. 8881. Additionally, Plaintiffs' proprietary inventions and ideas have been reduced to claims within pending United States Patent Applications bearing Nos. 20060042093 and 20060064878. Defendant WAHL is the assignee of the aforementioned applications.

46.   By reason of the foregoing acts and conduct of Defendants, Plaintiffs have and will suffer great and irreparable harm and damage, which will be difficult to ascertain. Plaintiffs will be without an adequate remedy at law.

47.   Plaintiffs are entitled to an injunction restraining Defendants, their officers, agents, employees, and all persons acting in concert with them from engaging in further unlawful acts and from reaping any additional commercial advantage from their misappropriation of Plaintiffs' trade secrets.

48.   Plaintiffs are further entitled to recover from Defendants the damages Plaintiffs sustained, and will sustain, as a result of Defendants' wrongful acts as hereinabove alleged. The amount of such damages cannot be determined at this time. Plaintiffs are further entitled to recover from Defendants the gains, profits, advantages, and unjust enrichment they have obtained as a result of their wrongful acts as hereinabove alleged.

49.   Defendants' misappropriation was both willful and malicious, and therefore Plaintiffs is entitled to exemplary damages against each Defendant.

### SIXTH CLAIM FOR RELIEF

#### Fraud and Deceit

#### As Against All Defendants

50.   Plaintiffs reallege and reincorporate by reference each and every allegation contained in paragraphs 1 through 49 as though fully set forth herein.

///

BURKHALTER KESSLER GOODMAN & GEORGE LLP
2020 MAIN STREET, SUITE 600
IRVINE, CALIFORNIA 92614

51.     By entering into the Agreement herein identified, Defendants acknowledged and agreed that they would not violate the trade secret and intellectual property rights enjoyed by Plaintiffs as memorialized in Sections 8.1, 8.2 and Schedule 5 of the Agreement.

52.     At the time Defendants entered into the Agreement, Defendants had no intention of honoring Sections 8.1, 8.2 and Schedule 5 of the Agreement.

53.     The representations made by Defendants were made with the intent to induce Plaintiff to enter into the Agreement with the knowledge, by Defendants, that Sections 8.1, 8.2 and Schedule 5 of the Agreement would not be honored by Defendants.

54.     Plaintiffs, at the time the Agreement was made and at the time Plaintiffs took the actions herein alleged, were ignorant of Defendants' secret intention not to perform and could not, in the exercise of reasonable diligence, have discovered Defendants' secret intention.  In reliance on Defendants' representations, Plaintiffs did enter into the Agreement.  If Plaintiffs had known of Defendants' actual intention not to honor Sections 8.1, 8.2 and Schedule 5 of the Agreement, Plaintiffs would not have entered into said Agreement.

55.     As a legal result of Defendants' fraud and the facts alleged in this Complaint, Plaintiffs are entitled to recover from Defendants the damages they have sustained, and will sustain, as a result of Defendants' wrongful acts as hereinabove alleged.  The amount of such damages cannot be determined at this time.  Plaintiffs are further entitled to recover from Defendants the gains, profits and advantages they have obtained as a result of their wrongful acts as hereinabove alleged.  Plaintiffs are at present unable to ascertain the full extent of the gains, profits, and advantages Defendants have obtained by reason of their aforesaid fraudulent acts.

56.     The conduct of Defendants was and is fraudulent, oppressive, malicious, and in conscious disregard of the rights of Plaintiffs, and Plaintiffs are therefore entitled to punitive damages against each such Defendants.

BURKHALTER KESSLER GOODMAN & GEORGE LLP
2020 MAIN STREET, SUITE 600
IRVINE, CALIFORNIA 92614

**SEVENTH CLAIM FOR RELIEF**

**Unfair Competition and Business Practices**

**(California Business and Professions Code §§17200 *et seq.*)**

**As Against All Defendants**

57. Plaintiffs reallege and reincorporate by reference each and every allegation contained in paragraphs 1 through 56 as though fully set forth herein.

58. The conduct of Defendants as alleged herein has the capacity to deceive the public and constitutes unfair methods of competition. Furthermore, this conduct constitutes an unlawful, unfair or fraudulent act or practice in the conduct or furnishing of a business, trade or service in California pursuant to California's Unfair Competition Law, Calif. Business and Professions Code § 17200 ("UCL"), as well as the common law of the State of California.

59. Plaintiffs are entitled to restitution of any monies obtained by Defendants as a direct and legal result of the violations of the UCL and common law, and reasonable attorneys' fees under California Code of Civil Procedure § 1021.5.

60. The wrongful acts of Defendants, as alleged herein, unless restrained and enjoined by order of this Court, will cause great and irreparable injury to the general public and to Plaintiffs, their business reputation and goodwill. Plaintiffs have no adequate remedy at law for the injuries that have been or will continue to be sustained in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against Defendants, and each of them, as follows:

**ON THE FIRST CLAIM FOR RELIEF**

1. That Defendants be adjudged to have infringed United States Patent No. 6,473,973 under 35 U.S.C. § 271;

2. That Defendants be adjudged to have induced infringement of United States Patent No. 6,473,973 under 35 U.S.C. § 271;

3.    That Defendants' infringement of United States Patent No. 6,473,973 be adjudged willful and deliberate;

4.    That this case be deemed exceptional under 25 U.S.C. § 285 and that the damages for patent infringement by enhanced accordingly;

5.    That Defendants, its subsidiaries, affiliates, parents, successors, assigns, officers, agents, servants, employees, attorneys, and all persons acting in concert or in participation with such Defendants be preliminarily and permanently enjoined from infringing or inducing infringement of United States Patent No. 6,473,973 and, specifically, from directly or indirectly making, using, selling or offering for sale, any products embodying the inventions of United States Patent No. 6,473,973 during its terms, without the express written authority of Plaintiffs;

6.    An accounting for Defendants' profits derived by reason of the acts of infringement and inducing infringement alleged in this Complaint pursuant to 35 U.S.C. §289 or, alternatively, an award of damages suffered by Plaintiffs, and the trebling thereof, pursuant to 35 U.S.C. § 284;

7.    For reasonable attorneys' fees pursuant to 35 U.S.C. § 285, prejudgment interest and costs of this action; and

8.    Such other and further relief at law or in equity, to which the Court deems just and proper;

## ON THE SECOND CLAIM FOR RELIEF

9.    That Defendants be adjudged to have infringed United States Patent No. 7,010,859 under 35 U.S.C. § 271;

10.    That Defendants be adjudged to have induced infringement of United States Patent No. 7,010,859 under 35 U.S.C. § 271;

11.    That Defendants' infringement of United States Patent No. 7,010,859 be adjudged willful and deliberate;

12.    That this case be deemed exceptional under 25 U.S.C. § 285 and that the damages for patent infringement by enhanced accordingly;

BURKHALTER KESSLER GOODMAN & GEORGE LLP
2020 MAIN STREET, SUITE 600
IRVINE, CALIFORNIA 92614

13. That Defendants, its subsidiaries, affiliates, parents, successors, assigns, officers, agents, servants, employees, attorneys, and all persons acting in concert or in participation with such Defendants be preliminarily and permanently enjoined from infringing or inducing infringement of United States Patent No. 7,010,859 and, specifically, from directly or indirectly making, using, selling or offering for sale, any products embodying the inventions of United States Patent No. 7,010,859 during its terms, without the express written authority of Plaintiffs;

14. An accounting for Defendants' profits derived by reason of the acts of infringement and inducing infringement alleged in this Complaint pursuant to 35 U.S.C. §289 or, alternatively, an award of damages suffered by Plaintiffs, and the trebling thereof, pursuant to 35 U.S.C. § 284;

15. For reasonable attorneys' fees pursuant to 35 U.S.C. § 285, prejudgment interest and costs of this action; and

16. Such other and further relief at law or in equity, to which the Court deems just and proper;

### ON THE THIRD CLAIM FOR RELIEF

17. That Plaintiffs be awarded compensatory damages in an amount according to proof at the time of trial;

18. That Plaintiffs be awarded interest on the compensatory damages in an amount according to proof at the time of trial;

19. That Plaintiffs be awarded costs of suit incurred;

20. That Plaintiffs be awarded reasonable attorneys' fees;

21. Such other and further relief at law or in equity, to which the Court deems just and proper;

### ON THE FOURTH AND FIFTH CLAIMS FOR RELIEF

22. That Defendants each be held to have misappropriated Plaintiffs' trade secrets;

/ / /

/ / /

BURKHALTER KESSLER GOODMAN & GEORGE LLP
2020 MAIN STREET, SUITE 600
IRVINE, CALIFORNIA 92614

23.     That this Court award general, special and/or consequential damages against Defendants, and each of them, in favor of Plaintiffs according to proof at the time of trial;

24.     That Plaintiffs be awarded exemplary/punitive damages against Defendants, and each of them, in favor of Plaintiffs according to proof at the time of trial;

25.     That Defendants be preliminarily and permanently enjoined from violating Plaintiffs' statutory, contractual, common law, and other rights;

26.     That Plaintiffs be awarded reasonable attorneys' fees;

27.     That Plaintiffs be awarded costs of suit incurred;

28.     Such other and further relief at law or in equity, to which the Court deems just and proper;

## ON THE SIXTH CLAIM FOR RELIEF

29.     That Plaintiffs be awarded damages in an amount according to proof at the time of trial;

30.     That Plaintiffs be awarded interest on the damages in an amount according to proof at the time of trial;

31.     That this Court award exemplary/punitive damages against Defendants, and each of them, in favor of Plaintiffs according to proof at the time of trial;

32.     That Plaintiffs be awarded costs of suit incurred; and

33.     Such other and further relief at law or in equity, to which the Court deems just and proper;

## ON THE SEVENTH CLAIM FOR RELIEF

34.     That Defendants, and each of them, be held to have conducted unfair business practices;

35.     That this Court award general, special and/or consequential damages against Defendants, and each of them, in favor of Plaintiffs according to proof at the time of trial;

///

BURKHALTER KESSLER GOODMAN & GEORGE LLP
2020 MAIN STREET, SUITE 600
IRVINE, CALIFORNIA 92614

36.     That this Court award exemplary/punitive damages against Defendants, and each of them, in favor of Plaintiffs according to proof at the time of trial;

37.     A preliminary and permanent injunction against Defendants, and each of them;

38.     That Plaintiffs be awarded restitution;

39.     That Plaintiffs be awarded its reasonable attorneys' fees;

40.     That Plaintiffs be awarded costs of suit incurred herein;

41.     Such other and further relief at law or in equity, to which the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: February 6, 2009

BURKHALTER KESSLER
GOODMAN & GEORGE LLP


By:

David A. Berstein
Attorneys for Plaintiffs
KIM LAUBE & COMPANY, INC. and
KIM LAUBE

BURKHALTER KESSLER GOODMAN & GEORGE LLP
2020 MAIN STREET, SUITE 600
IRVINE, CALIFORNIA 92614

# EXHIBIT "A"

US006473973B2

(12) **United States Patent**

Laube

(10) **Patent No.:** **US 6,473,973 B2**

(45) **Date of Patent:** **Nov. 5, 2002**

(54) **DISPOSABLE CUTTING HEAD FOR CLIPPERS**

(76) Inventor: **Kim Laube**, 537 Calle Yucca, Thousand Oaks, CA (US) 91360-2583

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/042,547**

(22) Filed: **Jan. 8, 2002**

(65) **Prior Publication Data**

US 2002/0053141 A1 May 9, 2002

**Related U.S. Application Data**

(60) Division of application No. 09/610,645, filed on Jun. 27, 2000, now Pat. No. 6,393,702, which is a continuation-in-part of application No. 09/457,454, filed on Dec. 8, 1999, now abandoned, and a continuation-in-part of application No. 09/222,049, filed on Dec. 29, 1998, now abandoned.

(51) Int. Cl.[7] ................................................ **B26B 19/04**

(52) U.S. Cl. .............................................. **30/223; 30/225**

(58) Field of Search .......................... 30/216, 223, 224, 30/210, 200, 201, 233.5

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 4,328,616 A | * | 5/1982 | Andis | ........................... | 30/216 |
| 5,970,616 A | * | 10/1999 | Wahl et al. | .................. | 30/216 |
| 6,073,350 A | * | 6/2000 | Elston et al. | ................ | 30/216 |

* cited by examiner

*Primary Examiner*—Douglas D. Watts
(74) *Attorney, Agent, or Firm*—Dennis W. Beech

(57) **ABSTRACT**

The disposable cutting head is basically a four element clip together assembly with a base, lower and upper cutting blades, and spring. The base serves as the support for the entire assembly and incorporates the attachment elements for retention to a clipper. The spring holds the elements together, forces the cutting blades together and includes the runner under which the upper blade slides. The entire assembly is such that the head assembly with blades is of the disposable type, but uses metal blades. If desired the blades alone may be disposed and the head assembly reused; however, the structure is not intended for long wear and use. The head and blades are constructed such that the common problems encountered with existing removable/disposable heads and blades as for example heat retention in the blades and head and the catching and pulling of hair are minimized. Use with clipper comb elements is also accommodated.

**7 Claims, 8 Drawing Sheets**





*FIG.1*

*FIG.2*



*FIG.3*

*FIG.12A*

*FIG.3A*





FIG.4A

FIG.5A

FIG.15

FIG.6A

FIG.17



*FIG.13*

*FIG.14*



FIG.16

FIG.18



FIG.19

FIG.19A

FIG.20

FIG.21

FIG.25

FIG.26

FIG.26



*FIG.22*

*FIG.23*

*FIG.24*

*FIG.24A*

*FIG.24A*

*FIG.27*

US 6,473,973 B2

1

## DISPOSABLE CUTTING HEAD FOR CLIPPERS

### CROSS-REFERENCE TO RELATED APPLICATIONS

This is a divisional application of U.S. patent application Ser. No. 09/610,645, filed Jun. 27, 2000, now U.S. Pat. No. 6,393,702, which is a continuation-in-part of U.S. patent applications Ser. Nos. 09/457,454 filed Dec. 8, 1999, and 09/222,049 filed Dec. 29, 1998 both abandoned. Application Ser. No. 09/610,645 is pending.

### BACKGROUND OF THE INVENTION

1. Field of the Invention

This invention relates to devices used to clip or cut hair, fur and the like of humans and animals. The new device provides for a disposable cutting head including blades to simplify in an economical manner the maintenance of a relatively sharp cutting instrument.

2. Decription of Related Art

There are currently in use a variety of devices for clipping, cutting and shearing hair and fur. These include devices commonly known as hair clippers or just clippers which in most instances modernly are powered by electric motors. Clippers as originally conceived and developed include cutting blades which are intended to be removed from the head of a clipper and sharpened to maintain the clipper device cutting performance. Such blades may be attached to the clipper head by screws and the like or may have clips, clamps or other retention means for attachment to the clipper.

More modernly clippers have incorporated heads which are designed to include replaceable blades which blades are not intended to be continually sharpened, but rather to be removed and disposed. U.S. Pat. No. 2,722,742, issued Nov. 8, 1955 is an example of such a device. Also, clipper head assemblies which are disposable have been designed for use with clippers. An example of a plastic disposable head assembly for clippers is disclosed in U.S. Pat. No. 4,563,814, issued Jan. 14, 1986.

The present invention provides an improved structure for a clipper head assembly with disposable blades. The entire assembly is such that the head assembly with blades is of the disposable type, but uses metal blades. If desired, the blades alone may be disposed and the head assembly reused; however, the structure is not intended for long wear and use. The head and blades are constructed such that the common problems encountered with existing removable/disposable heads and blades as for example heat retention in the blades and head and the catching and pulling of hair are minimized.

The support front edge of the base member of the present invention has no structure, such as comb teeth, which are under any portion of the cutting blades which comb teeth can catch and pull hair as, for example, in the U.S. Pat. No. 4,328,616, issued May 11, 1982 which has comb teeth under the cutting blade teeth such that when the two tooth elements are not in contact hair will be caught and pulled. In addition both cutting blades of the instant invention have a slightly concave shape, one relative to the other, along the entire blade longitudinal dimension to counter the tendency for blades to curl and separate which could cause the catching and pulling of hair as well as other Aid problems. U.S. Pat. No. 4,765,060, issued Aug. 23, 1988 discloses a bend in the blade ends which may cause problems of separation as a result of a lack of a continuous concave shape along the longitudinal axis.

2

The cutting blades of the instant invention have indentations in the teeth to minimize heat build up and provide structural strength for the teeth. This is accomplished without the need for cut outs in the tooth edge wall which is done for example in sheep cutting clipper blades to provide flexibility. Such cut outs can cause loss of lubricants and also serve as a point that may catch and pull hair. In general, the new structure thus provides better cutting efficiency and minimum heat transfer to the subject being trimmed. The a disposable system achieves improved performance in cutting efficiency and is constructed to be used with existing comb snap on devices.

### SUMMARY OF THE INVENTION

One object of the present invention is an improved cutting head structure for clippers which lowers friction and improves heat dissipation of the combination cutting head and blades to allow for a disposable clipper cutting head assembly. Another object is to reduce warpage of the head and/or blades during use in cutting to minimize hair pulling caused by hair becoming caught between the cutting blades rather than being cleanly cut. A further object is a disposable head and blade design which may be used with existing clip on combs. Another object is adaption of the cutting head for use with spring lock comb elements. A still further object is an upper cutting blade shoe structure for reduced friction wear of a clipper drive lug, which is usually plastic material, to which the upper blade shoe is engaged during clipper reciprocal drive operation. Another object is shielding of the clipper cavity which receives the cutting head to reduce the amount of hair or fur entering therein during a cutting operation. Yet another object is incorporation of protrusions in the base member to accommodate a variety of size of clipper blade socket mounting apparatus.

In accordance with the description presented herein, other objectives of this invention will become apparent when the description and drawings are reviewed.

### BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 illustrates a perspective view of the head assembly with blades and outline of clipper.

FIG. 2 illustrates a perspective view, exploded, of the head assembly and blades.

FIG. 3 illustrates a perspective view, exploded, of an alternate embodiment of the head assembly and blades.

FIG. 3A illustrates a perspective view of an alternate embodiment of the head assembly with a deflector plate.

FIG. 4 illustrates a bottom plan view of the upper cutting blade.

FIG. 4A illustrates a bottom plan view of an alternate embodiment of the upper cutting blade.

FIG. 5 illustrates an elevation edge view of the upper cutting blade.

FIG. 5A illustrates an elevation edge view of an alternate embodiment of the upper cutting blade.

FIG. 6 illustrates a top plan view of the upper cutting blade.

FIG. 6A illustrates a top plan view of the upper cutting blade with shoe lugs.

FIG. 7 illustrates a side elevation cross-section view of the upper cutting blade taken at line 6—6.

FIG. 8 illustrates a bottom plan view of the lower cutting blade.

FIG. 9 illustrates an elevation edge view of the lower cutting blade.

US 6,473,973 B2

3

FIG. 10 illustrates a top plan view of the lower cutting blade.

FIG. 11 illustrates a side elevation cross-section view of the lower cutting blade taken at line 10—10.

FIG. 12 illustrates a side elevation cross-section view of the head assembly with blades.

FIG. 12A illustrates a side elevation cross section view of the head assembly with blades and a spring member with a deflector plate.

FIG. 13 illustrates a perspective view of the head assembly with blades and outline of an attached large tooth comb.

FIG. 14 illustrates a perspective view of the head assembly with blades attachable to a modified tooth mounting apparatus.

FIG. 15 illustrates a perspective view of the head assembly with blades attachable to an alternate tooth comb mounting apparatus.

FIG. 16 illustrates a perspective view, exploded, of an alternate embodiment of the cutting head assembly for attachment of a comb element.

FIG. 17 illustrates a side elevation cross-section view of an alternate embodiment of the head assembly with blades and spring mounting apparatus.

FIG. 18 illustrates a bottom plan view of the alternate cutting head with spring mounting apparatus.

FIG. 19 illustrates a perspective view of the tool for use with the spring mounting apparatus.

FIG. 19A illustrates a perspective view of an alternate form of the tool.

FIG. 20 illustrates a side elevation cross-section view of an alternate embodiment of the head assembly with base cutting blade.

FIG. 21 illustrates a top plan view of the base cutting blade.

FIG. 22 illustrates a top plan view of an alternate embodiment of the base cutting edge.

FIG. 23 illustrates a side elevation cross-section view of an alternate embodiment of the head assembly with base cutting blade.

FIG. 24 illustrates a perspective view of the comb element and base member with tabs and notches.

FIG. 24A illustrates a side elevation cross-section view of a comb element tooth.

FIG. 25 illustrates a perspective view of the comb element with taper feature.

FIG. 26 illustrates a side elevation cross-section partial view of the comb element taper feature.

FIG. 27 illustrates a perspective view of a comb tooth.

DISCRIPTION OF THE PREFERRED EMBODIMENT

The disposable cutting head is basically a four element clip together assembly with a base, lower and upper cutting blades, and spring. The base serves as the support for the entire assembly and incorporates the attachment elements for retention to a clipper. The spring holds the elements together, forces the cutting blades together and includes the runner under which the upper blade slides. Attachment of a comb element may also be included. Alternate embodiments are described which use screw retention means for the spring and which use a spring lock for retention of comb elements. A plastic comb element for use with the spring lock retention means is incorporated. A deflector plate may be added to the spring structure to inhibit hair entering the clipper cavity.

4

Referring to FIGS. 1 through 15, disposable cutting head (1) has base member (2) having a rear mounting portion (3) and lower blade support portion (4). The rear mounting portion (3) has an upstanding central bridge (5) with clipper (6) attachment lugs (7). The lower blade support portion (4) has posts (8) to retain lower cutting blade (9). The lower blade support portion (4) support front edge (37) does not extend such that it protrudes under the lower cutting blade (9) lower teeth (13). This alleviates the problem with existing cutting heads wherein the blade support element tends to catch and pull hair on the support base during cutting.

The lower cutting blade (9) is placed in lower blade support portion (4) with apertures (14) receiving posts (8). The posts (8) inhibit horizontal motion of the lower cutting blade (9) relative to the lower blade support portion (4) yet allow vertical motion of the lower cutting blade (9). This provides for a vertical "floating" condition to maintain contact with the upper cutting blade (15) under conditions as for example when heating causes a blade to curl or warp. The posts (8) and apertures (14) also allow ease of blade replacement if such is desired and do not flatten the concave curvature of the blade as when fixed in place by permanent attachment in other cutting heads.

Lower cutting blade (9) has a generally planar rectangular shape with a recessed portion (10) the longitudinal length of the blade. There are ribs (11) formed in the recessed portion (10) to provide structural strength and to aid in minimizing heat build up. The lower cutting blade (9) also has indentations (12) or creases formed in the lower teeth (13) to reduce the sliding friction surface to minimize heat build up, to allow coolant flow and to provide structural strength.

The lower cutting blade (9) is placed in lower blade support portion (4) with apertures (14) receiving posts (8). Upper cutting blade (15) is placed in sliding relationship on lower cutting blade (9) with lower teeth (13) parallel to upper teeth (16). In operation the upper cutting blade (15) slides longitudinally relative to the fixed lower cutting blade (9).

Upper cutting blade (15) is a generally planar rectangular shape with a recessed portion (17) formed along the longitudinal length of the blade which as illustrated in FIG. 2 may be formed in a stamping operation to be of upwardly arched geometry in the lateral dimension. There are a plurality of upper teeth (16) forming the forward portion which may have indentations (12) similar to lower teeth (13). There is a groove (18) parallel with and spaced from the front toothed edge.

The rear edge (19) of the upper cutting blade (15) contains an enlarged recess (20) adapted to receive a drive lug (21) or other drive element of a clipper (6). There are a pair of shoes (22) formed in enlarged recess (20) to reduce friction wear caused by the reciprocal operation of clipper drive lug (21) operating to move upper cutting blade (15) in a sliding reciprocating motion across lower cutting blade (9). The shoes (22) preferably have rounded edges (38) to reduce wear of the drive lug (21). However, a suitable curved shoe lug (40) as illustrated in FIG. 5A may also be used.

The spring member (23) is generally a U-shape element of spring steel or the like having opposed arms (24) shaped to fit the back edge (25) of the mounting portion (3) of base member (2). The opposed arms (24) may be retained on the base member (2) by arm apertures (26) engaging attachment posts (27). The opposing arms (24) curve upwardly from the base member (2) and project forward in an arched manner over the upper cutting blade (15) to terminate in a downwardly manner presenting a transverse, elongated runner

US 6,473,973 B2

5

(28) to engage the upper cutting blade (15) groove (18). The runner (28) would preferably have a plastic coating, sleeve or the like surface for ease in sliding motion with the groove (18).

The spring member (23) may also be retained on the base member (2) by a thread attachment method. An example is illustrated in FIG. 3 wherein posts (27) are replaced with apertures (47) and the arm apertures (26) are threaded apertures (46) to M receive screws (48). In addition, apertures (45) are included to allow the screws to pass through the opposed arms (24) upper portion. The threading of the screws (48) into the spring member (23) provides a means to adjust the tightness by which the spring member (23) is removably attached. Thereby the tension may be loosened when cutting fine or loose hair to reduce blade wear due to friction and heat; yet the tension may be increased when thick or matted hair to be cut.

The spring member (23) may also have an extended plate element or deflector plate (55) as best illustrated in FIGS. 3A and 12A to inhibit entry of hair or fur into the clipper cavity (41) during cutting operation.

In the preferred embodiment the lower cutting blade (9) and the upper cutting blade (15) are formed with a slightly concave shape along their longitudinal dimension one to the other in a plane parallel to the rows of cutting teeth (13, 16) as in FIG. 4 and 8. This serves to counter the tendency of cutting blades to curl and partially separate from each other from the ends (29, 30) inward when there is heat build up due to sliding friction during use. This warping can occur both in manufacture and during use. The upper cutting blade (15) may be further modified by forming a generally rectangular opening to serve as a heat aperture (70) to further facilitate heat dissipation.

The blades (9, 15) may be press, cut and/or punched in manufacture. When manufactured there is a ragged edge on the side of the blade exiting the cutting tool. For the preferred embodiment the ragged mating edges are at the top edge, that is, the edge between blades. Thus the blades need only be machined smooth on the mating edges and the jagged edges remain to aid in, cutting hair, but do not touch the subjects skin to cause injury. To aid in attaching the upper cutting blade (15) to the fixturing for manufacture, fixturing holes (44) may be provided.

Referring to FIG. 13, a disposable cutting head (1) has attached a large tooth comb (31). The compact shape and the back-to-front width or lateral dimension of the assembly approximate more standard clipper heads and blades to allow attachment of standard comb attachments. Where a relatively flat comb attachment is desired, a metal or other strong structural material may be used as compared to the typical plastic comb (31). FIG. 14 illustrates an example of a thin comb element (32) with comb teeth (33) having groove notch (34) to receive the front edge (36) of the disposable cutting head (1) and spring clip (35) back edge to engage and retain the thin comb element (32). Either the plastic comb (31) or thin comb element (32) may include one or more mounting tabs (76) under which the base member (2) support front edge (37) may be placed when attaching a comb (31,32). Mounting notches (75) may be formed in the support front edge (37) to mate with the mounting tabs (76). The comb teeth (33) may include a tooth ridge element (78) attached to the tooth front edge (77). This reduces flatness of the comb teeth (33) at the front edge which is experienced in the manufacturing molding process. The tooth ridge element (77) aids in guiding the hair to be cut between the comb teeth (33).

6

The tooth comb (31), comb element (32) and comb teeth (33) may be coated with a low friction substance, as for example, that sold under the tradename TEFLON, vacuum deposited aluminum with a lacquer coating and the like coatings and sealers. The comb (31), comb element (32) and comb teeth (33) may be formed of metallic and silica additives in plastic for added strength of material as compared to plastic combs.

A variation of this spring force attachment is illustrated in FIGS. 15 through 18. In this case a back plate (51) replaces the spring clip (35) and side elements (65) are added. This provides a structure for the comb element (32) when a thin comb made of plastic or similar material is desired. A rivet indentation (66) may be provided if clearance is required when the comb element (32) is mounted. The back plate (51) has a slot (52) therein into which plate (53) protrudes by extension (56). The plate (53) has spring tabs (43) which engage springs (50) placed in spring cavities (49). The back plate (51) may be tapered ;in the portion (68) above the slot (52) for ease of inserting the extension (56) into the, slot (52). The plate (53) is attached to the base member (2) by means of a rivet (61), screw or the like passing through aperture (60) and sliding aperture (62). Pressure on push tabs (42) compresses the spring (50) as the plate (53) is pushed against the force of the spring (50). This moves extension (56) to allow comb element (32) to be removed from or mounted on the cutting head (1). When thus mounted the groove notch (34) will engage the front edge (36) of the cutting teeth and when the plate (53) is released the extension (56) will engage the slot (52). A tool (63) with posts (64) may be provided as illustrated in FIGS. 16 and 19 to aid in pushing push tabs (42). The tool (63) with posts (64) may also have a blade or hex head for use in adjusting the tension for screws (48).

An alternate configuration of the tool (63) is illustrated in FIG. 19A wherein posts (64) are round tipped and the blade or hex head (67) is located opposite the posts (64).

The base (2) may have a more exaggerated rounding of the corners (54) to aid the user in turning the clipper while cutting in confined areas such as animal limb joints and the like.

The base member (2) may also include protrusions (58) on the inside of attachment lugs (7) and in mounting cavity (57) which protrusions (58) are compressible. When the cutting head (1) is mounted to a clipper (6) a tongue is inserted in mounting cavity (57). The clipper tongues of various clippers (6) are not always of the same dimensions. The protrusions (58) accommodate a variety of sizes of tongues to reduce vibration from what otherwise would be a loose fit. The protrusions (58) on attachment lugs (7) serve a similar purpose when the cutting head (1) is attached to the clipper (6).

The base member (2) and lower cutting blade (9) may be replaced with a one piece base cutting blade (80). In this embodiment the upstanding central blade (5) and other elements are attached and supported by the base cutting blade (80). The spring clip (23) is attached on the base cutting blade (80) and the plate (53) with springs and other elements is replaced by a leaf spring (81) having a spring extension (82) for engaging slot (52).

While the invention has been particularly shown and described with respect to the illustrated and preferred embodiments thereof, it will be understood by those skilled in the art that the foregoing and other changes in form and details may be made therein without departing from the spirit and scope of the invention.

US 6,473,973 B2

7

I claim:

1. A comb element for attachment to a clipper cutting head comprising:

a support base element with a plurality of comb teeth attached at a front base edge and the comb teeth having a groove notch formed therein for engagement with a front edge of a plurality of upper teeth of a cutting head; and

a spring clip attached at a rear base edge of the support base element opposite the comb teeth.

2. The comb element as in claim 1 wherein the comb teeth are coated with a low friction substance.

3. The comb element as in claim 1 wherein the front base edge having a mounting tab and a support front edge of a base member having a mounting notch for engagement with the mounting tab.

4. A comb element for attachment to a clipper cutting head comprising:

a support base element with a plurality of comb teeth attached at a front base edge and the comb teeth having

8

a groove notch formed therein for engagement with a front edge of a plurality of upper teeth of a cutting head; and

a back plate attached at a rear base edge of the support base element opposite the comb teeth and two side elements attached there between with the back plate having a slot therein for engagement with the cutting head.

5. The comb element as in claim 4 wherein the comb teeth are coated with a low friction substance.

6. The comb element as in claim 4 wherein the back plate is tapered above the slot.

7. The comb element as in claim 4 wherein the front base edge having a mounting tab and a support front edge of a base member having a mounting notch for engagement with the mounting tab.

* * * * *

# EXHIBIT "B"



US007010859B2

(12) **United States Patent**
Laube

(10) Patent No.: **US 7,010,859 B2**
(45) Date of Patent: **Mar. 14, 2006**

(54) **DISPOSABLE CUTTING HEAD FOR CLIPPERS**

(76) Inventor: **Kim Laube**, 537 Calle Yucca, Thousand Oaks, CA (US) 91360-2583

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 270 days.

(21) Appl. No.: **10/042,546**

(22) Filed: **Jan. 8, 2002**

(65) **Prior Publication Data**

US 2002/0056199 A1    May 16, 2002

**Related U.S. Application Data**

(60) Division of application No. 09/610,645, filed on Jun. 27, 2000, now Pat. No. 6,393,702, which is a continuation of application No. 09/457,454, filed on Dec. 8, 1999, now abandoned, which is a continuation-in-part of application No. 09/222,049, filed on Dec. 29, 1998, now abandoned.

(51) Int. Cl.
*B26B 19/04* (2006.01)

(52) U.S. Cl. .......................................... **30/223; 30/225**

(58) Field of Classification Search .......... 30/223–225, 30/216, 210, 200
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,756,500 A | * | 7/1956 | Green ...................... 30/224 X |
| 3,314,149 A | * | 4/1967 | Kobler et al. ............ 30/216 X |
| 4,328,616 A | * | 5/1982 | Andis ...................... 30/216 X |

* cited by examiner

*Primary Examiner*—Douglas D Watts
(74) *Attorney, Agent, or Firm*—Dennis W. Beech

(57) **ABSTRACT**

The disposable cutting head is basically a four element clip together assembly with a base, lower and upper cutting blades, and spring. The base serves as the support for the entire assembly and incorporates the attachment elements for retention to a clipper. The spring holds the elements together, forces the cutting blades together and includes the runner under which the upper blade slides. The entire assembly is such that the head assembly with blades is of the disposable type, but uses metal blades. If desired the blades alone may be disposed and the head assembly reused; however, the structure is not intended for long wear and use. The head and blades are constructed such that the common problems encountered with existing removable/disposable heads and blades as for example heat retention in the blades and head and the catching and pulling of hair are minimized. Use with clipper comb elements is also accommodated.

2 Claims, 8 Drawing Sheets





FIG.1

FIG.2

**U.S. Patent**          Mar. 14, 2006          Sheet 2 of 8          US 7,010,859 B2



FIG.3

FIG.3A

FIG.12A





FIG.4A

FIG.5A

FIG.15

FIG.6A

FIG.17



FIG.13

FIG.14



FIG.16

FIG.18



*FIG.19*

*FIG.19A*

*FIG.20*

*FIG.21*

*FIG.25*

*FIG.26*



FIG.22

FIG.23

FIG.24

FIG.24A

FIG.27

US 7,010,859 B2

1

# DISPOSABLE CUTTING HEAD FOR CLIPPERS

## CROSS-REFERENCE TO RELATED APPLICATIONS

This is a divisional application of U.S. patent application Ser. No. 09/610,645 filed Jun. 27, 2000, now U.S. Pat. No. 6,393,702 filed Dec. 29, 1998 that is a continuation-in-part of U.S. patent applications Ser. No's. 09/457,454 filed Dec. 8, 1999 now abandoned and 09/222,049 now abandoned. application Ser. No. 09/610,645 is pending.

## BACKGROUND OF THE INVENTION

1. Field of the Invention.

This invention relates to devices used to clip or cut hair, fur and the like of humans and animals. The new device provides for a disposable cutting head including blades to simplify in an economical manner the maintenance of a relatively sharp cutting instrument.

2. Description of Related Art.

There are currently in use a variety of devices for clipping, cutting and shearing hair and fur. These include devices commonly known as hair clippers or just clippers which in most instances modernly are powered by electric motors. Clippers as originally conceived and developed include cutting blades which are intended to be removed from the head of a clipper and sharpened to maintain the clipper device cutting performance. Such blades may be attached to the clipper head by screws and the like or may have clips, clamps or other retention means for attachment to the clipper.

More modernly clippers have incorporated heads which are designed to include replaceable blades which blades are not intended to be continually sharpened, but rather to be removed and disposed. U.S. Pat. No. 2,722,742, issued Nov. 8, 1955 is an example of such a device. Also, clipper head assemblies which are disposable have been designed for use with clippers. An example of a plastic disposable head assembly for clippers is disclosed in U.S. Pat. No. 4,563,814, issued Jan. 14, 1986.

The present invention provides an improved structure for a clipper head assembly with disposable blades. The entire assembly is such that the head assembly with blades is of the disposable type, but uses metal blades. If desired, the blades alone may be disposed and the head assembly reused; however, the structure is not intended for long wear and use. The head and blades are constructed such that the common problems encountered with existing removable/disposable heads and head and the catching and pulling of hair are minimized.

The support front edge of the base member of the present invention has no structure, such as comb teeth, which are under any portion of the cutting blades which comb teeth can catch and pull hair as, for example, in the U.S. Pat. No. 4,328,616, issued May 11, 1982 which has comb teeth under the cutting blade teeth such that when the two tooth elements are not in contact hair will be caught and pulled. In addition both cutting blades of the instant invention have a slightly concave shape, one relative to the other, along the entire blade longitudinal dimension to counter the tendency for blades to curl and separate which could cause the catching and pulling of hair as well as other problems. U.S. Pat. No. 4,765,060, issued Aug. 23, 1988 discloses a bend in the

2

blade ends which may cause problems of separation as a result of a lack of a continuous concave shape along the longitudinal axis.

The cutting blades of the instant invention have indentations in the teeth to minimize heat build up and provide structural strength for the teeth. This is accomplished without the need for cut outs in the tooth edge wall which is done for example in sheep cutting clipper blades to provide flexibility. Such cut outs can cause loss of lubricants and also serve as a point that may catch and pull hair. In general, the new structure thus provides better cutting efficiency and minimum heat transfer to the subject being trimmed. The a disposable system achieves improved performance in cutting efficiency and is constructed to be used with existing comb snap on devices.

## SUMMARY OF THE INVENTION

One object of the present invention is an improved cutting head structure for clippers which lowers friction and improves heat dissipation of the combination cutting head and blades to allow for a disposable clipper cutting head assembly. Another object is to reduce warpage of the head and/or blades during use in cutting to minimize hair pulling caused by hair becoming caught between the cutting blades rather than being cleanly cut. A further object is a disposable head and blade design which may be used with existing clip on combs. Another object is adaption of the cutting head for use with spring lock comb elements. A still further object is an upper cutting blade shoe structure for reduced friction wear of a clipper drive lug, which is usually plastic material, to which the upper blade shoe is engaged during clipper reciprocal drive operation. Another object is shielding of the clipper cavity which receives the cutting head to reduce the amount of hair or fur entering therein during a cutting operation. Yet another object is incorporation of protrusions in the base member to accommodate a variety of size of clipper blade socket mounting apparatus.

In accordance with the description presented herein, other objectives of this invention will become apparent when the description and drawings are reviewed.

## BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 illustrates a perspective view of the head assembly with blades and outline of clipper.

FIG. 2 illustrates a perspective view, exploded, of the head assembly and blades.

FIG. 3 illustrates a perspective view, exploded, of an alternate embodiment of the head assembly and blades.

FIG. 3A illustrates a perspective view of an alternate embodiment of the head assembly with a deflector plate.

FIG. 4 illustrates a bottom plan view of the upper cutting blade.

FIG. 4A illustrates a bottom plan view of an alternate embodiment of the upper cutting blade.

FIG. 5 illustrates an elevation edge view of the upper cutting blade.

FIG. 5A illustrates an elevation edge view of an alternate embodiment of the upper cutting blade.

FIG. 6 illustrates a top plan view of the upper cutting blade.

FIG. 6A illustrates a top plan view of the upper cutting blade with shoe lugs.

FIG. 7 illustrates a side elevation cross-section view of the upper cutting blade taken at line 6—6.

US 7,010,859 B2

3

FIG. 8 illustrates a bottom plan view of the lower cutting blade.

FIG. 9 illustrates an elevation edge view of the lower cutting blade.

FIG. 10 illustrates a top plan view of the lower cutting blade.

FIG. 11 illustrates a side elevation cross-section view of the lower cutting blade taken at line 10—10.

FIG. 12 illustrates a side elevation cross-section view of the head assembly with blades.

FIG. 12A illustrates a side elevation cross section view of the head assembly with blades and a spring member with a deflector plate.

FIG. 13 illustrates a perspective view of the head assembly with blades and outline of an attached large tooth comb.

FIG. 14 illustrates a perspective view of the head assembly with blades attachable to a modified tooth comb mounting apparatus.

FIG. 15 illustrates a perspective view of the head assembly with blades attachable to an alternate tooth comb mounting apparatus.

FIG. 16 illustrates a perspective view, exploded, of an alternate embodiment of the cutting head assembly for attachment of a comb element.

FIG. 17 illustrates a side elevation cross-section view of an alternate embodiment of the head assembly with blades and spring mounting apparatus.

FIG. 18 illustrates a bottom plan view of the alternate cutting head with spring mounting apparatus.

FIG. 19 illustrates a perspective view of the tool for use with the spring mounting apparatus.

FIG. 19A illustrates a perspective view of an alternate form of the tool.

FIG. 20 illustrates a side elevation cross-section view of an alternate embodiment of the head assembly with base cutting blade.

FIG. 21 illustrates a top plan view of the base cutting blade.

FIG. 22 illustrates a top plan view of an alternate embodiment of the base cutting edge.

FIG. 23 illustrates a side elevation cross-section view of an alternate embodiment of the head assembly with base cutting blade.

FIG. 24 illustrates a perspective view of the comb element and base member with tabs and notches.

FIG. 24A illustrates a side elevation cross-section view of a comb element tooth.

FIG. 25 illustrates a perspective view of the comb element with taper feature.

FIG. 26 illustrates a side elevation cross-section partial view of the comb element taper feature.

FIG. 27 illustrates a perspective view of a comb tooth.

DESCRIPTION OF THE PREFERRED
EMBODIMENT

The disposable cutting head is basically a four element clip together assembly with a base, lower and upper cutting blades, and spring. The base serves as the support for the entire assembly and incorporates the attachment elements for razz retention to a clipper. The spring holds the elements together, forces the cutting blades together and includes the runner under which the upper blade slides. Attachment of a comb element may also be included. Alternate embodiments are described which use screw retention means for the spring and which use a spring lock for retention of comb elements.

4

A plastic comb element for use with the spring lock retention means is incorporated. A deflector plate may be added to the spring structure to inhibit hair entering the clipper cavity.

Referring to FIGS. 1 through 15, disposable cutting head (1) has base member (2) having a rear mounting portion (3) and lower blade support portion (4). The rear mounting portion (3) has an upstanding central bridge (5) with clipper (6) attachment lugs (7). The lower blade support portion (4) has posts (8) to retain lower cutting blade (9). The lower blade support portion (4) support front edge (37) does not extend such that it protrudes under the lower cutting blade (9) lower teeth (13). This alleviates the problem with existing cutting heads wherein the blade support element tends to catch and pull hair on the support base during cutting.

The lower cutting blade (9) is placed in lower blade support portion (4) with apertures (14) receiving posts (8). The posts (8) inhibit horizontal motion of the lower cutting blade (9) relative to the lower blade support portion (4) yet allow vertical motion of the lower cutting blade (9). This provides for a vertical "floating" condition to maintain contact with the upper cutting blade (15) under conditions as for example when heating causes a blade to curl or warp. The posts (8) and apertures (14) also allow ease of blade replacement if such is desired and do not flatten the concave curvature of the blade as when fixed in place by permanent attachment in other cutting heads.

Lower cutting blade (9) has a generally planar rectangular shape with a recessed portion (10) the longitudinal length of the blade. There are ribs (11) formed in the recessed portion (10) to provide structural strength and to aid in minimizing heat build up. The lower cutting blade (9) also has indentations (12) or creases formed in the lower teeth (13) to reduce the sliding friction surface to minimize heat build up, to allow coolant flow and to provide structural strength.

The lower cutting blade (9) is placed in lower blade support portion (4) with apertures (14) receiving posts (8). Upper cutting blade (15) is placed in sliding relationship on lower cutting blade (9) with lower teeth (13) parallel to upper teeth (16). In operation the upper cutting blade (15) slides longitudinally relative to the fixed lower cutting blade (9).

Upper cutting blade (15) is a generally planar rectangular shape with a recessed portion (17) formed along the longitudinal length of the blade which as illustrated in FIG. 2 may be formed in a stamping operation to be of upwardly arched geometry in the lateral dimension. There are a plurality of upper teeth (16) forming the forward portion which may have indentations (12) similar to lower teeth (13). There is a groove (18) parallel with and spaced from the front toothed edge.

The rear edge (19) of the upper cutting blade (15) contains an enlarged recess (20) adapted to receive a drive lug (21) or other drive element of a clipper (6). There are a pair of shoes (22) formed in enlarged recess (20) to reduce friction wear caused by the reciprocal operation of clipper drive lug (21) to move upper cutting blade (15) in a sliding reciprocating motion across lower cutting blade (9). The shoes (22) preferably have rounded edges (38) to reduce wear of the drive lug (21). However, a suitable curved shoe lug (40) as illustrated in FIG. 5A may also be used.

The spring member (23) is generally a U-shape element of spring steel or the like having opposed arms (24) shaped to fit the back edge (25) of the mounting portion (3) of base member (2). The opposed arms (24) may be retained on the base member (2) by arm apertures (26) engaging attachment posts (27). The opposing arms (24) curve upwardly from the base member (2) and project forward in an arched manner

US 7,010,859 B2

5

over the upper cutting blade (15) to terminate in a downwardly manner presenting a transverse, elongated runner (28) to engage the upper cutting blade (15) groove (18). The runner (28) would preferably have a plastic coating, sleeve or the like surface for ease in sliding motion with the groove (18).

The spring member (23) may also be retained on the base member (2) by a thread attachment method. An example is illustrated in FIG. 3 wherein posts (27) are replaced with apertures (47) and the arm apertures (26) are threaded apertures (46) to receive screws (48). In addition, apertures (45) are included to allow the screws to pass through the opposed arms (24) upper portion. The threading of the screws (48) into the spring member (23) provides a means to adjust the tightness by which the spring member (23) is removably attached. Thereby the tension may be loosened when cutting fine or loose hair to reduce blade wear due to friction and heat; yet the tension may be increased when thick or matted hair to be cut.

The spring member (23) may also have an extended plate element or deflector plate (55) as best illustrated in FIGS. 3A and 12A to inhibit entry of hair or fur into the clipper cavity (41) during cutting operation.

In the preferred embodiment the lower cutting blade (9) and the upper cutting blade (15) are formed with a slightly concave shape along their longitudinal dimension one to the other in a plane parallel to the rows of cutting teeth (13, 16) as in FIG. 4 and 8. This serves to counter the tendency of cutting blades to curl and partially separate from each other from the ends (29, 30) inward when there is heat build up due to sliding friction during use. This warping can occur both in manufacture and during use. The upper cutting blade (15) may be further modified by forming a generally rectangular opening to serve as a heat aperture (70) to further facilitate heat dissipation.

The blades (9, 15) may be press, cut and/or punched in manufacture. When manufactured there is a ragged edge on the side of the blade exiting the cutting tool. For the preferred embodiment the ragged mating edges are at the top edge, that is, the edge between blades. Thus the blades need only be machined smooth on the mating edges and the jagged edges remain to aid in, cutting hair, but do not touch the subjects skin to cause injury. To aid in attaching the upper cutting blade (15) to the fixturing for manufacture, fixturing holes (44) may be provided.

Referring to FIG. 13, a disposable cutting head (1) has attached a large tooth comb (31). The compact shape and the back-to-front width or lateral dimension of the assembly approximate more standard clipper heads and blades to allow attachment of standard comb attachments. Where a relatively flat comb attachment is desired, a metal or other strong structural material may be used as compared to the typical plastic comb (31). FIG. 14 illustrates an example of a thin comb element (32) with comb teeth (33) having a groove notch (34) to receive the front edge (36) of the disposable cutting head (1) and spring clip (35) back edge to engage and retain the thin comb element (32). Either the plastic comb (31) or thin comb element (32) may include one or more mounting tabs (76) under which the base member (2) support front edge (37) may be placed when attaching a comb (31,32). Mounting notches (75) may be formed in the support front edge (37) to mate with the mounting tabs (76). The comb teeth (33) may include a tooth ridge element (78) attached to the tooth front edge (77). This reduces flatness of the comb teeth (33) at the front edge which is experienced in the manufacturing molding process.

6

The tooth ridge element (77) aids in guiding the hair to be cut between the comb teeth (33).

The tooth comb (31), comb element (32) and comb teeth (33) may be coated with a low friction substance, as for example, that sold under the tradename TEFLON, vacuum deposited aluminum with a lacquer coating and the like coatings and sealers. The comb (31), comb element (32) and comb teeth (33) may be formed of metallic and silica additives in plastic for added strength of material as compared to plastic combs.

A variation of this spring force attachment is illustrated in FIGS. 15 through 18. In this case a back plate (51) replaces the spring clip (35) and side elements (65) are added. This provides a structure for the comb element (32) when a thin comb made of plastic or similar material is desired. A rivet indentation (66) may be provided if clearance is required when the comb element (32) is mounted. The back plate (51) has a slot (52) therein into which plate (53) protrudes by extension (56). The plate (53) has spring tabs (43) which engage springs (50) placed in spring cavities (49). The back plate (51) may be tapered in the portion (68) above the slot (52) for ease of inserting the extension (56) into the slot (52). The plate (53) is attached to the base member (2) by means of a rivet (61), screw or the like passing through aperture (60) and sliding aperture (62). Pressure on push tabs (42) compresses the spring (50) as the plate (53) is pushed against the force of the spring (50). This moves extension (56) to allow comb element (32) to be removed from or mounted on the cutting head (I). When thus mounted the groove notch (34) will engage the front edge (36) of the cutting teeth and when the plate (53) is released the extension (56) will engage the slot (52). A tool (63) with posts (64) may be provided as illustrated in FIGS. 16 and 19 to aid in pushing push tabs (42). The tool (63) with posts (64) may also have a blade or hex head for use in adjusting the tension for screws (48).

An alternate configuration of the tool (63) is illustrated in FIG. 19A wherein posts (64) are round tipped and the blade or hex head (67) is located opposite the posts (64).

The base (2) may have a more exaggerated rounding of the corners (54) to aid the user in turning the clipper while cutting in confined areas such as animal limb joints and the like.

The base member (2) may also include protrusions (58) on the inside of attachment lugs (7) and in mounting cavity (57) which protrusions (58) are compressible. When the cutting head (1) is mounted to a clipper (6) a tongue is inserted in mounting cavity (57). The clipper tongues of various clippers (6) are not always of the same dimensions. The protrusions (58) accommodate a variety of sizes of tongues to reduce vibration from what otherwise would be a loose fit. The protrusions (58) on attachment lugs (7) serve a similar purpose when the cutting head (1) is attached to the clipper (6).

The base member (2) and lower cutting blade (9) may be replaced with a one piece base cutting blade (80). In this embodiment the upstanding central bridge (5) and other elements are attached and supported by the base cutting blade (80). The spring clip (23) is attached on the base cutting blade (80) and the plate (53) with springs and other elements is replaced by a leaf spring (81) having a spring extension (82) for engaging slot (52).

While the invention has been particularly shown and described with respect to the illustrated and preferred

US 7,010,859 B2

7

embodiments thereof, it will be understood by those skilled in the art that the foregoing and other changes in form and details may be made therein without departing from the spirit and scope of the invention.

I claim:

1. A comb element for attachment to a clipper cutting head comprising:

a support base element with a plurality of comb teeth attached at a front base edge having a mounting tab and a support front edge of a base member having a mounting notch for engagement with the mounting tab;

8

the comb teeth having a groove notch formed therein to receive a front edge of a plurality of upper teeth of a cutting head; and

a back plate with a means for strengthening attached at a rear base edge of the support base element opposite the comb teeth and the back plate having a means for engagement with the cutting head.

2. The comb element as in claim 1 wherein the comb teeth are coated with a low friction substance.

*   *   *   *   *

Eric J. Goodman (State Bar No. 210694)
David A. Berstein (State Bar No. 204472)
Burkhalter Kessler Goodman & George LLP
2020 Main Street, Suite 600, Irvine, California
T: 949.975.7500
iplit@bkgglaw.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM LAUBE & COMPANY, INC., a California corporation; KIM LAUBE, an individual,<br>PLAINTIFF(S)<br><br>v.<br><br>WAHL CLIPPER CORPORATION, an Illinois Corporation; GREGORY S. WAHL, an individual; and DOES 1 to 10, Inclusive,<br>DEFENDANT(S). | CASE NUMBER<br><br>CV09 914 ◄◄ *DDW(Dtx)*<br><br><br><br><br>**SUMMONS** |

TO:   THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney
Eric J. Goodman or David A. Berstein_____ , whose address is:

Burkhalter Kessler Goodman & George LLP
2020 Main Street, Suite 600, Irvine, California
949.975.7500
iplit@bkgglaw.com

an answer to the  ☒ complaint ☐_____ amended complaint ☐ counterclaim ☐ cross-claim
which is herewith served upon you within __20__ days after service of this Summons upon you, exclusive
of the day of service. If you fail to do so, judgement by default will be taken against you for the relief
demanded in the complaint.


Dated: __2 - 6 - 09__

Clerk, U.S. District Court

By: _____
Deputy Clerk

*(Seal of the Court)*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Otis D. Wright II and the assigned discovery Magistrate Judge is Jacqueline Chooljian.

The case number on all documents filed with the Court should read as follows:

## CV09- 914 ODW (JCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)    NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| KIM LAUBE & COMPANY, INC., KIM LAUBE | WAHL CLIPPER CORPORATION, GREGORY S. WAHL |

| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): Ventura | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): Whiteside County, Illinois |
|---|---|

| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Eric J. Goodman, David A. Berstein, Nick D. Myers BURKHALTER KESSLER GOODMAN & GEORGE LLP 2020 Main Street, Suite 600, Irvine, California 92614 949.975.7500 | CV09 9144 ⬛ DDW (JCx) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☒ No   ☒ MONEY DEMANDED IN COMPLAINT: $ Undetermined amount.

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
This is a case of federal question jurisdiction, within the provisions of U.S.C. § 1331 and 1337, involving the transportation of goods under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, and under Federal common law.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities /Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☒ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☒ No   ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:** Case Number:

| CV-71 (07/05) | CIVIL COVER SHEET | Page 1 of 2 |
|---|---|---|

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

---

**VIII(b).  RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑ No   ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

---

**IX. VENUE:** List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.
    VENTURA COUNTY

List the California County, or State if other than California, in which EACH named defendant resides.  (Use an additional sheet if necessary).
☐   Check here if the U.S. government, its agencies or employees is a named defendant.
    WAHL CLIPPER CORPORATION - WHITESIDE COUNTY, ILLINOIS
    GREGORY WAHL - WHITESIDE COUNTY, ILLINOIS

List the California County, or State if other than California, in which EACH claim arose.  (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.
    VENTURA COUNTY

---

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date ___FEBRUARY 6, 2009___

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
| --- | --- | --- |
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969.  (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |