**BARNES & THORNBURG LLP**
LEVI W. HEATH (SBN 220854)
2049 Century Park East, Suite 3550
Los Angeles, California 90067-3012
Telephone: (310) 284-3880
Facsimile: (310) 284-3894
E-mail: levi.heath@btlaw.com

VALERIE B. MULLICAN
(admitted *pro hac vice*)
171 Monroe Avenue N.W., Suite 1000
Grand Rapids, Michigan 49503-2694
Telephone: (616) 742-3930
Facsimile: (616) 742-3999
E-mail: vmullican@btlaw.com

JOAN L. LONG
(admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606-2833
Telephone: (312) 214-4576
Facsimile: (312) 759-5646
E-mail: jlong@btlaw.com

Attorneys for Defendant and Counterclaimant
WAHL CLIPPER CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KIM LAUBE & COMPANY, INC., a California corporation; and KIM LAUBE, an individual,

Plaintiffs,

v.

WAHL CLIPPER CORPORATION, an Illinois corporation; and DOES 1-10, Inclusive,

Defendants.

AND RELATED COUNTERCLAIM

Case No. CV-09-914 JAK (JCx)

**DEFENDANT WAHL CLIPPER CORPORATION'S:**

**(1) NOTICE OF MOTION AND MOTION TO COMPEL; AND**

**(2) MEMORANDUM OF POINTS AND AUTHORITIES RE ISSUES IN DISPUTE**

Date: August 28, 2012
Time: 9:30 a.m.
Crtrm: 20 – Third Floor
Spring Street Courthouse
312 North Spring Street
Los Angeles, CA 90012

[Declaration of Levi W. Heath Filed Concurrently Herewith]

Fact discovery cut-off: Nov. 30, 2012
Pretrial Conference: Feb. 25, 2013
Trial: Mar. 12, 2013

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 28, 2012 at 9:30 a.m., or as soon thereafter as the matter may be heard before the Honorable Jacqueline Chooljian in Courtroom 20 of the United States District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, California 90012, Defendant Wahl Clipper Corporation ("Wahl") will and hereby does move for an order compelling Plaintiffs Kim Laube & Company, Inc. and Kim Laube (collectively, "Plaintiffs") to (1) supplement and/or respond to certain of their responses to Wahl's First Set of Interrogatories, (2) produce documents in response to Wahl's First Set of Requests for Production of Documents, and (3) supplement their Disclosure of Asserted Claims and Infringement Contentions to contain all information required by Local Patent Rules 3-1 and 3-2 for the Northern District of California, made applicable in this case by the parties' agreement contained in the Joint Status Report submitted to this Court.

PLEASE TAKE FURTHER NOTICE that, pursuant to Local Rule 37-4, Wahl will and hereby does move for an order imposing sanctions against Plaintiffs and their counsel for their collectively failure to cooperate in this matter as required by the Local Rules.

PLEASE TAKE FURTHER NOTICE that Wahl brings this motion pursuant to Local Rule 37-2.4 in the absence of a joint stipulation required by Local Rule 37-2.1 because counsel for Plaintiffs failed to confer in a timely manner in accordance with Local Rule 37-1 and failed to provide Plaintiffs' portion of the joint stipulation in accordance with Local Rule 37-2.2. *See* Declaration of Levi W. Heath, filed concurrently herewith ("Heath Decl.") at ¶¶ 2-6, Exhs. A and 1-5.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities Re Issues in Dispute, the Declaration of Levi W. Heath filed concurrently herewith, all papers and pleadings in the Court's file, and upon such argument as may be made at the hearing on this motion.

Dated: July 30, 2012

**BARNES & THORNBURG LLP**

By /s/Levi W. Heath
Levi W. Heath
Attorneys for Defendant and Counterclaimant
WAHL CLIPPER CORPORATION

# Table of Contents

**Page Number**


I. WAHL'S INTRODUCTORY STATEMENT ........ 1

II. ISSUES IN DISPUTE ........ 3

A. PLAINTIFFS' REFUSAL TO PRODUCE DOCUMENTS IN RESPONSE TO WAHL'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS ........ 3

B. PLAINTIFFS' RESPONSES TO WAHL'S FIRST INTERROGATORIES ........ 5

1. Interrogatories for Which Plaintiffs Have Refused to Provide Any Response ........ 5

2. Interrogatories for Which Wahl Contends Plaintiffs' Responses Are Inadequate ........ 38

C. PLAINTIFFS' DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS ........ 46

1. Wahl's Position on Plaintiffs' Infringement Contentions ........ 50

III. THE COURT SHOULD IMPOSE SANCTIONS ON PLAINTIFFS AND THEIR COUNSEL ........ 54

IV. CONCLUSION ........ 55

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. WAHL'S INTRODUCTORY STATEMENT

This is a motion a party to litigation should never have to bring. Plaintiffs have failed to honor their discovery obligation under the Federal Rules of Civil Procedure by flat out refusing to produce documents in response to valid document requests, refusing to respond to interrogatories, or where responses were provided, refusing to provide adequate responses, and refusing to provide all required information in connection with their patent-specific disclosures. To compound matters, Plaintiffs' counsel has refused to engage in the meet and confer process in connection with this motion, and in clear disregard for the rules, has failed to provide Plaintiffs' portion of the joint stipulation required by Local Rule 37-2.1. Wahl is left with no choice but to bring this motion.

Rather than fulfilling their discovery obligations, Plaintiffs have provided Wahl with a never-ending series of excuses and frivolous objections that demonstrate a pattern of delay, a complete disregard for the Court's schedule, and a transparent attempt to frustrate the progress of this action. Plaintiffs' refusal to comply with the discovery rules is not an isolated incident. Among other things, Plaintiffs have also failed to timely provide Wahl with their sections of the parties' Joint 16(b) Report; failed to timely serve their Initial Disclosures; failed to timely serve their Infringement Contentions; failed to timely provide Wahl with limited responses to its discovery requests prior to the parties' scheduled mediation; failed to timely respond to the remainder of Wahl's discovery requests; and failed to timely serve supplemental Infringement Contentions to remedy the defects with Plaintiffs' original disclosures. *See generally* Declaration of Levi W. Heath, filed concurrently herewith ("Heath Decl."). As Plaintiffs have ignored deadline after deadline, offering implausible excuses for their inability to comply with the Court's

schedule, they have also attempted to conceal their tardiness by misstating the date of service on no fewer than six Certificates of Service. *See* Heath Decl. ¶¶ 15, 19, 25, 28,

More importantly for the purposes of this motion, the untimely discovery responses and disclosures Plaintiffs ***have*** provided are not meaningful and do not comply with applicable rules. At issue in this Motion to Compel are: (1) Plaintiffs' responses to Wahl's First Requests for Production; (2) Plaintiffs' responses to Wahl's First Set of Interrogatories; and (3) Plaintiffs' Infringement Contentions.

On April 19, 2012, Wahl served Plaintiffs with its First Set of Interrogatories, Requests for Production and Requests for Admission. Heath Decl. at ¶ 16, Exhs. 14-16. Plaintiffs' responses to this discovery were due on May 21, 2012. *Id.* Because the parties were scheduled to engage in facilitative mediation on May 24, 2012, Wahl offered to extend the time for Plaintiffs to respond to discovery ***provided that*** Plaintiffs provided certain limited responses and documents to Wahl one week in advance of the mediation. Heath Decl. ¶ 17. Plaintiffs did not meet this deadline, nor did they provide full and complete responses to the specific requests identified by Wahl; nonetheless, Wahl chose not to pursue the issue at that time, and the parties agreed at mediation that Plaintiffs would respond fully to Wahl's discovery requests by June 6, 2012. *Id.* ¶¶ 18-20. When Plaintiffs served their written responses to the discovery (which were not received by Wahl's counsel until June 11) it became clear that Plaintiffs had failed to respond ***at all*** to the vast majority of Wahl's interrogatories, instead asserting a series of baseless and frivolous objections. Moreover, despite their repeated promises to do so, Plaintiffs still have not produced a single document to Wahl.

Likewise, nearly three months after they were due to be served under the Scheduling Order, Plaintiffs still have not provided Wahl with Infringement Contentions which comply with LPR 3-1 and 3-2, nor have they made the document production required to be served with those contentions. Heath Decl. at ¶

23-29, 41-46. Plaintiffs' only response to Wahl's requests for adequate contentions is to claim, inexplicably, that their disclosures "go well beyond" what is required by the Local Patent Rules for this District. Heath Decl. ¶ 43, Exh. 45. But there are no Local Patent Rules for this District, and Plaintiffs cannot explain why they are now refusing to comply with the Rules ***they*** agreed would govern the parties' disclosures in a submission to this Court. *Id.*, Exh. 46.

Plaintiffs' refusal to respond to discovery and to provide Wahl with meaningful disclosures has compromised Wahl's ability to prepare its defenses to Plaintiffs' claims, and to prosecute its Counterclaims against Plaintiffs. Plaintiffs must be compelled to respond to Wahl's discovery requests, and to provide Infringement Contentions that comply with LPR 3-1 and 3-2.

## II. ISSUES IN DISPUTE

### A. PLAINTIFFS' REFUSAL TO PRODUCE DOCUMENTS IN RESPONSE TO WAHL'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Wahl served document requests on plaintiffs on April 19, 2012. Heath Decl. at ¶ 16, Exhs. 14-16. Plaintiffs' responses and responsive documents were due on May 22, 2012. Before the responses and documents were due, the parties agreed to limit the scope of the requests in light of the May 24, 2012 mediation in this case, and limited responses were provided by plaintiffs before the settlement conference. Heath Decl. at ¶ 17. However, plaintiffs did not produce any documents with the responses. Heath Decl. at ¶ 20. The parties also entered into a joint stipulation regarding the confidentiality of documents in advance of the mediation, which basically provided that the protective order regarding confidential documents entered in a related action, *Wahl Clipper Corporation v. Kim Laube & Company, Inc. et al.*; Case No. CV 12-00106-JAK (JCx), when it was pending in the United States District Court for the Northern District of Illinois, would be binding upon the

parties in the instant action until a protective order was entered in this case. Heath Decl. at ¶¶ 30, Exh. 38. Based expressly upon this joint stipulation, both Wahl and plaintiffs produced certain financial documents at the mediation. The joint stipulation and a proposed protective order that mirrors the order entered in the related action were subsequently filed with the Court on June 27, 2012. Heath Decl. at ¶ 35.

Because the instant case did not settle at the mediation, counsel for the parties agreed at the settlement conference that responses to all of Wahl's discovery requests and all responsive documents would be produced by plaintiffs on June 6, 2011. Heath Decl. at ¶ 30. On June 7, 2012, counsel for Wahl informed counsel for plaintiffs that he had not yet received plaintiffs' responses and documents. Counsel for plaintiffs represented that the responses had been served on June 6, 2011 and that he was working on the production of documents and anticipated that documents would be "ready for production" that same week. Heath Decl. at ¶¶ 31-32. Counsel for Wahl eventually received the discovery responses, but to date no documents have been produced by plaintiffs. Heath Decl. at ¶ 37,

Wahl recognizes that LR 37-2.1 typically requires the parties to include the text of each discovery request at issue, the opposing party's response to that request, and each party's position with respect to the request. However, in their written responses to Wahl's First Requests for Production, Plaintiffs agreed to provide "non-privileged, reasonably responsive documents" for each request. Heath Decl. at ¶¶ 19, 22, Exhs. 21, 25. Accordingly, the parties do not seem to disagree that Wahl is entitled to all of the documents it requested.[1] However,

[1] In their written responses, Plaintiffs did interpose a number of objections which Wahl believes are improper and inapplicable. However, since Plaintiffs have agreed to produce the documents at issue, it is not necessary for the parties to address the validity of those objections. Wahl also anticipates that it may disagree with Plaintiffs' definition of what is "reasonably" responsive, but will address that point at a later time, if necessary. Should Plaintiffs later cite their objections as a basis to withhold particular documents, or should Plaintiffs' document production be insufficient when it is finally received, Wahl reserves the right to file a motion addressing the sufficiency of those objections.

despite their agreement to do so, Plaintiffs have yet to produce a single document to Wahl. Heath Decl. at ¶ 37. This motion seeks nothing more than to compel Plaintiffs to produce the very documents they have promised, on numerous occasions, would be provided.

Plaintiffs' excuses for their failure to produce documents have varied over time and have included problems locating the documents and problems scanning the documents. As all of Plaintiffs' electronic records have been downloaded into a searchable database, in connection with the related defamation case, a search of that database would have been a simple first step in gathering responsive documents. On information and belief, Plaintiffs did not search the electronic database in connection with any of the discovery served in this case. Well after the discovery responses were due, and after numerous prior excuses were given, Plaintiffs changed its excuse to a purported reluctance to produce documents in the absence of a protective order; and then, when Wahl pointed out the parties had already agreed to be bound by a Stipulated Protective Order, Plaintiffs' asserted a completely frivolous and untrue allegation that Wahl had refused to abide by the terms of that Stipulation. On June 27, Wahl filed the previously-agreed upon Protective Order with the Court. Plaintiffs have run out of excuses, and should be compelled to produce documents to Wahl without further delay.

## B. PLAINTIFFS' RESPONSES TO WAHL'S FIRST INTERROGATORIES

### 1. Interrogatories for Which Plaintiffs Have Refused to Provide Any Response

**<u>Wahl's Interrogatory No. 1</u>**

If your response to any Request for Admission propounded by Wahl is anything other than an unqualified admission, for each such response state the basis for your refusal to admit the request without qualification.

**Plaintiffs' Response to Interrogatory No. 1**

Plaintiffs object to this Interrogatory to the extent it requests information relating to "any Request for Admission propounded by Wahl is anything other than an unqualified admission" as constituting at least thirty (30) interrogatories since at least thirty (30) requests for admission were answered with something other than an unqualified admission. Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. *See Collaboration Properties, Inc. v. Polycom, Inc., 224* F.R.D. 473 (N.D.Cal. 2004*)*. Subject to such objections, see the responses to the requests for admissions previously served and the bases set forth as to each qualified response therein.

**Wahl's Position Regarding Interrogatory No. 1**

Plaintiffs have refused to respond to the vast majority of Wahl's interrogatories (24 of 32) ***at all*** on the purported ground that Wahl's Interrogatory No. 1 comprised, in and of itself, at least thirty (30) interrogatories; that Plaintiffs responded to those interrogatories; and that Plaintiffs refused to respond to any Interrogatory exceeding the number allowed by the Federal Rules. *See* Plaintiffs' responses to Interrogatory Nos. 1-4, 6-20, 22, 29-32. Plaintiffs' objection is frivolous for several reasons.

First, the parties expressly agreed in the Joint Rule 16(b) Report to expand the number of permissible interrogatories in this case to fifty (50). *See* Joint Rule 16(b) Report (Dkt. No. 124) p. 20 (Exhibit 46 to the Heath Decl.). Even if Plaintiffs' objection did not completely lack merit – which it does – Plaintiffs expressly agreed to respond to 50 interrogatories from Wahl.

Second, Wahl has not propounded more than 50 interrogatories on Plaintiffs. Wahl's interrogatory is a standard request commonly utilized by litigants in a variety of cases. Contrary to Plaintiffs' assertion, it cannot fairly be read to comprise separate inquiries for every RFA propounded upon Plaintiffs. Moreover, even if Plaintiffs were correct that the interrogatory must be counted each time

Plaintiffs "state[d] the basis for [their] refusal to admit [a] request without qualification," Plaintiffs did not respond to that request more than 30 times. In fact, they did not even respond to that request once.

In their response to Interrogatory No. 1, Plaintiffs simply referred Wahl to their responses to Wahl's RFAs. Of the 36 RFAs propounded by Wahl, Plaintiffs admitted 22 of those requests. Heath Decl. ¶ 19, Exh. 22. For those 14 requests denied by Plaintiffs, Plaintiffs simply responded "Denied." *Id.* There was no explanation for Plaintiffs' refusal to admit those requests. Accordingly, Plaintiffs did not even respond ***once*** to the Interrogatory which they argue amounts to "more than 30" interrogatories and purportedly excuses Plaintiffs from responding to the rest of Wahl's discovery requests.

Plaintiffs' objection to the number of Wahl's interrogatories is baseless and frivolous. Plaintiffs' refusal to provide ***any*** response to the vast majority of Wahl's interrogatories on that basis is equally frivolous. Plaintiffs should be compelled to provide substantive responses to Wahl's interrogatories, including Interrogatory No. 1.

**Wahl's Interrogatory No. 2**

Identify each person who participated in the preparation of the answers to these Interrogatories, and state which Interrogatories each such person participated in answering.

**Plaintiffs' Response to Interrogatory No. 2**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration*

*Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473 (N.D.Cal. 2004).

**Wahl's Position Regarding Interrogatory No. 2**

Plaintiffs' refusal to respond to this Interrogatory is based solely upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

**Wahl's Interrogatory No. 3**

Identify each affiant, declarant or witness you intend to use or may use in support of any of your claims or defenses, or may call during any hearing or trial in this action. For each individual identified, describe with specificity the subject matter on which each person is expected to testify or report, the grounds for such testimony, and the reasons Plaintiffs believe the individual is likely to possess such information. Please include in your response all individuals identified in Plaintiffs' Initial Disclosures.

**Plaintiffs' Response to Interrogatory No. 3**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

**Wahl's Position Regarding Interrogatory No. 3**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 3 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In this Interrogatory, Wahl asked Plaintiffs to identify each affiant, declarant or witness it intended to use in this matter. The identity of Plaintiffs' witnesses is not protected by any privilege. To the extent this request can be read to request information about Plaintiffs' trial strategy or other potentially privileged information, Wahl acknowledges that, as a general rule, it is not entitled to receive privileged information from Plaintiffs. Instructions 36-38 of Wahl's interrogatories made this clear. However, that does not excuse Plaintiffs from responding to this interrogatory with appropriate non-privileged information, such as the identity of witnesses Plaintiffs have identified to date. Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 4**

Describe with specificity all damages claimed by Plaintiffs in connection with Counts II, III and IV of the Second Amended Complaint, including but not limited to the type of damages sought (compensatory, consequential, exemplary, etc.); the dollar value of damages sought; the factual and legal bases for such damages; the manner in which such damages were calculated; and all evidence and documentation which supports Plaintiffs' claimed damages.

**Plaintiffs' Response to Interrogatory No. 4**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total

interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

Plaintiffs further object to this Interrogatory to the extent it requests the identity of "all damages". Discovery is just beginning and much of the evidence is still within Defendant's control and not available to Plaintiffs at this time.

**Wahl's Position Regarding Interrogatory No. 4**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 4 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 4, Wahl asked Plaintiffs to describe its alleged damages and the factual and legal bases for such damages. Plaintiffs' claimed damages are not protected by any privilege. To the extent this request can be read to request information about Plaintiffs' trial strategy or other potentially privileged information, Wahl acknowledges that as a general rule, it is not entitled to receive privileged information from Plaintiff. Instructions 36-38 of Wahl's interrogatories made this clear. However, that does not excuse Plaintiffs from responding to this interrogatory with appropriate non-

privileged information, such as a description of, or calculation of, the damages Plaintiffs claim to have suffered in this case.

Plaintiffs also object to this interrogatory on the ground that "[d]iscovery is just beginning and much of the evidence is still within Defendant's control and not available to Plaintiffs at this time." Wahl acknowledges that discovery is ongoing. Furthermore, Wahl anticipates that damages in this action will be the subject of expert testimony. If Plaintiffs object to this request as premature, or are not yet in possession of information necessary to respond to this interrogatory, Wahl requests that Plaintiffs so state. However, Plaintiffs have an obligation to provide any damages-related information or calculations currently in their possession, and also have an obligation to supplement their response to this interrogatory as discovery progresses. Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 6**

Identify each and every agreement, license, contract or other undertaking or understanding between or among KLC, Kim Laube, any KLC customer or client, or any other person which relates to the '973 patent, any related patent, the applications therefore, the related U.S. applications identified therein, and/or any of the inventions claimed or disclosed in any of the foregoing.

**Plaintiffs' Response to Interrogatory No. 6**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

Plaintiffs further object to this Interrogatory to the extent it requests the identity of "all damages". Discovery is just beginning and much of the evidence is still within Defendant's control and not available to Plaintiffs at this time.

**Wahl's Position Regarding Interrogatory No. 6**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 6 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 6, Wahl asked Plaintiffs to identify each agreement, license, contract or other understanding between KLC, Kim Laube and any third party related to the '973 patent. By its nature, information regarding KLC's or Kim Laube's agreements with third parties cannot be privileged. Plaintiffs also object to this interrogatory "to the extent it requests the identity of 'all damages.'" This interrogatory does not request any information about damages, and this objection is clearly frivolous and not applicable. Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 7**

Describe each and every instance in which Plaintiffs have alleged infringement of the '973 patent by someone other than Wahl. For each such instance of alleged infringement, identify the accused device; the alleged infringer; the claims alleged to be infringed; the manner in which the accused device was alleged to infringe the '973 patent; the manner in which Plaintiffs handled the

alleged infringement (i.e., by sending a letter to the alleged infringer or filing a lawsuit); and the ultimate disposition of such claims of infringement.

**<u>Plaintiffs' Response to Interrogatory No. 7</u>**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc., 224* F.R.D. 473 (N.D.Cal. *2004).*

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

Plaintiffs further object to this Interrogatory to the extent it requests the identity of "all damages". Discovery is just beginning and much of the evidence is still within Defendant's control and not available to Plaintiffs at this time.

**<u>Wahl's Position Regarding Interrogatory No. 7</u>**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 7 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 7, Wahl asked Plaintiffs to describe each instance in which they have alleged a third party (other than Wahl) infringed the '973 patent. By its nature, information regarding Plaintiffs' assertions of infringement against third parties cannot be privileged.

Plaintiffs also object to this interrogatory "to the extent it requests the identity of 'all damages.'" This interrogatory does not request any information about damages, and this objection is clearly frivolous and not applicable. Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 8**

Identify each sale, offer for sale, use and publication concerning comb attachments for clippers prior to December 29, 1998.

**Plaintiffs' Response to Interrogatory No. 8**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

Plaintiffs further object to this Interrogatory to the extent it requests the information about all comb attachments without regard to whether such comb attachments are commercial embodiments of the invention claimed in the patent in suit. Discovery is just beginning and much of the evidence is still within Defendant's control and not available to Plaintiffs at this time.

**Wahl's Position Regarding Interrogatory No. 8**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be

compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 8 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 8, Wahl asked Plaintiffs to identify each sale, offer for sale, use and publication concerning comb attachments for clippers prior to the claimed priority date of December 29, 1998. By its nature, factual information regarding public sales and publications related to comb attachments for clippers cannot be privileged. Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 9**

Describe the date of conception and reduction to practice for each and every invention claimed in the '973 patent, and identify all documents which corroborate those dates. Include in your description the date on which the first conception occurred; the date on which reduction to practice occurred; an identification of each person who participated in or has knowledge of such conception and reduction to practice, and their role; the identity of the first written description evidencing conception of the invention(s); the identification of the first publication describing the invention(s); and the date and location of the first use of the invention(s); the date of first sale, offer for sale, or license for the invention(s).

**Plaintiffs' Response to Interrogatory No. 9**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to

over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

**Wahl's Position Regarding Interrogatory No. 9**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 9 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 9, Wahl asked Plaintiffs to describe the date of conception and reduction to practice for each invention claimed in the '973 patent, and to identify documents which corroborated those dates. By its nature, this factual information cannot be privileged. Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 10**

Identify every person responsible, in whole or in part, for the development of the invention(s) claimed in the '973 patent, including, but not limited to the conception, design, research and product development, and for each such person identify their responsibility and role with respect to the conception, stating the date of conception and identifying all facts and documents relating to, supporting or refuting such date as the date of conception.

**Plaintiffs' Response to Interrogatory No. 10**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory

to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

**Wahl's Position Regarding Interrogatory No. 10**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 10 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 10, Wahl asked Plaintiffs to identify every person responsible for the development of the invention(s) claimed in the '973 patent and to describe their role in such development. By its nature, this factual information cannot be privileged. Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 11**

Identify each product or design (whether or not offered for sale) that was considered, evaluated, consulted, referred to reviewed or analyzed in connection with the conception, design or development of any invention claimed in the '973 patent, or the preparation, filing or prosecution of the applications therefore, including but not limited to any service, product or design from which the claimed

invention(s) were developed or evolved.

**Plaintiffs' Response to Interrogatory No. 11**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein). Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

**Wahl's Position Regarding Interrogatory No. 11**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 11 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 11, Wahl asked Plaintiffs to identify each product or design that was considered or analyzed in connection with the conception, design or development of any invention claimed in the '973 patent or in the prosecution of the applications for that patent. To the extent this request can be read to request potentially privileged information or implicate the advice of counsel during the patent application process, Plaintiffs' response may be appropriately limited (so long as Plaintiffs do not intend to rely upon an advice-of-counsel defense). However, that does not excuse Plaintiffs from

responding to this interrogatory with non-privileged information, such as factual information concerning products or designs considered during the conception, design or development of the inventions described in the '973 patent. Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 12**

For each of the following products, identify the date the product was first sold or offered for sale in the United States and, if applicable, the date Plaintiffs stopped selling the product: (i) The Big K Comb Kit; (ii) the Deluxe Blade Comb Kit; and (iii) Laube Snap-On Combs.

**Plaintiffs' Response to Interrogatory No. 12**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

Plaintiffs further object to this Interrogatory to the extent it requests the information about comb attachments that are irrelevant to any issue in this case. Moreover, discovery is just beginning and much of the evidence is still within Defendant's control and not available to Plaintiffs at this time.

**Wahl's Position Regarding Interrogatory No. 12**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This

objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 12 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 12, Wahl asked Plaintiffs to identify the dates of first and last sale for three Laube products. By its nature, this factual information cannot be privileged.

Plaintiffs also objected to this interrogatory "to the extent it requests the information about comb attachments at are irrelevant to any issue in this case." Wahl has identified the three products listed in this interrogatory as prior art to the inventions described in the '973 patent, which is directly relevant to Wahl's defenses and counterclaims of invalidity and unenforceability due to Kim Laube's inequitable conduct before the United States Patent and Trademark Office ("PTO"). Laube has admitted the prior art nature of the Laube products. *See*, Defendant Wahl Clipper Corporation's Amended Counterclaims Against Kim Laube & Company, Inc., Kim Laube and Jacqueline Laube, ¶¶51-62 (CM/ECF Doc. 127); Plaintiffs' Answer to Wahl's Amended Counterclaims, ¶¶51-62 (CM/ECF Doc. 130). Claim 1 of the '973 Patent was rejected in the reexamination over the Laube Brochure and the related Big K Comb Kit and Deluxe Blade Comb Kit. They are clearly relevant to this proceeding. Finally, Plaintiffs objected to this discovery on the ground that "much of the evidence is still within Defendant's control and not available to Plaintiffs at this time." Plaintiffs cannot explain why information concerning ***Plaintiffs'*** prior sale of products manufactured by ***Plaintiffs*** would be uniquely within Wahl's control and/or unavailable to Plaintiffs. Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 13**

Describe with specificity the reasons that Plaintiffs did not disclose sales of the Big K Comb Kit, the Deluxe Blade Comb Kit, the Laube Snap-On Combs, or the existence of the Laube Brochure (as that term is used in Wahl's Counterclaim), to the USPTO during the prosecution of the '973 patent application.

**Plaintiffs' Response to Interrogatory No. 13**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

Plaintiffs further object to this Interrogatory to the extent it requests the information about comb attachments that are irrelevant to any issue in this case.

**Wahl's Position Regarding Interrogatory No. 13**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 13 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 13, Wahl asked Plaintiffs to describe the reasons that Plaintiffs did not disclose sales of three

Laube products, or the existence of a Laube advertisement, to the PTO during prosecution of the '973 patent application. To the extent this request can be read to request potentially privileged information or implicate the advice of counsel during the patent application process, Plaintiffs' response may be appropriately limited (so long as Plaintiffs do not intend to rely upon an advice-of-counsel defense). However, that does not excuse Plaintiffs from responding to this interrogatory with non-privileged information, such factual information concerning the reasons for their decision not to disclose sales of those products.

Plaintiffs also objected to this interrogatory "to the extent it requests the information about comb attachments at are irrelevant to any issue in this case." Wahl has identified the three products listed in this interrogatory that are admittedly prior art to the inventions described in the '973 patent, and which are directly relevant to Wahl's defenses and counterclaims of invalidity and unenforceability due to Kim Laube's inequitable conduct before the United States Patent and Trademark Office ("PTO"). They are clearly relevant to this proceeding. Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 14**

Identify and describe with specificity all opinions given or received by Plaintiffs concerning the validity, infringement and/or enforceability of the '973 patent or any related patent.

**Plaintiffs' Response to Interrogatory No. 14**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to

over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

**Wahl's Position Regarding Interrogatory No. 14**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 14 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 14, Wahl asked Plaintiffs describe all opinions given or received by Plaintiffs concerning the validity, infringement or enforceability of the '973 patent. To the extent this request can be read to request potentially privileged information or implicate the advice of counsel , Plaintiffs' response may be appropriately limited (so long as Plaintiffs do not intend to rely upon an advice-of-counsel defense). However, that does not excuse Plaintiffs from responding to this interrogatory with non-privileged information, such factual information concerning the non-privileged opinions they have given, been given, or expressed concerning these issues. Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 15**

State all facts and legal bases presently known to you supporting the allegations in the Second Amended Complaint that Plaintiffs are entitled to damages from Wahl for any act of infringement (whether direct, induced or contributory), including but not limited to stating with specificity the type of

damages that you claim to have suffered (e.g., lost profits, the loss of a reasonable royalty, etc.); and, separately for each type of claimed damage, state the amount of your dollar injury, a detailed explanation of the formula or method used to calculate the amount of your damages, and each document that supports your response.

**Plaintiffs' Response to Interrogatory No. 15**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

Plaintiffs further object to this interrogatory as duplicative of the previously served disclosures of relating to the calculation and theories of damages.

**Wahl's Position Regarding Interrogatory No. 15**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 15 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 15, Wahl asked Plaintiffs to state facts and legal bases presently known to them which support the allegation that they are entitled to recover damages from Wahl,

including the type of damages they claimed to suffer and the manner in which those damages were calculated. Plaintiffs' claimed damages are not protected by any privilege. To the extent this request can be read to request information about Plaintiffs' trial strategy or other potentially privileged information, Wahl acknowledges that as a general rule, it is not entitled to receive privileged information from Plaintiff. Instructions 36-38 of Wahl's interrogatories made this clear. However, that does not excuse Plaintiffs from responding to this interrogatory with appropriate non-privileged information, such as a description of, or calculation of, the damages Plaintiffs claim to have suffered in this case.

Plaintiffs also object to this interrogatory on the ground that it is duplicative of previously-served disclosures relating to the calculation and theories of damages. Plaintiffs have not yet served any disclosures upon Wahl which calculate or explain their theory of damages with any specificity and which are verified by the Plaintiffs. For the same reason, Plaintiffs must provide a response to Interrogatory No. 4 (to which Plaintiffs also did not provide a response), Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 16**

State all facts and legal bases presently known to you which support your allegation in Paragraph 23 of the Second Amended Complaint that Wahl "had actual knowledge of the '973 patent before the filing of this action and [its] infringement of the '973 patent has been, and continues to be, willful and deliberate."

**Plaintiffs' Response to Interrogatory No. 16**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are

combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

Moreover, discovery is just beginning and much of the evidence is still within Defendant's control.

**Wahl's Position Regarding Interrogatory No. 16**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 16 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 16, Wahl asked Plaintiffs to state all facts and legal bases presently known to them which support an allegation that Wahl had actual notice of the '973 patent before the filing of this action. By its nature, this factual information cannot be privileged. Plaintiffs must provide a substantive response to this interrogatory. Plaintiffs also object to this interrogatory on the ground that much of the evidence is within Wahl's control. However, prior to making an allegation of willful infringement in this lawsuit, Plaintiffs presumably conducted some investigation to determine whether there was a good faith basis for that allegation. Wahl is entitled to discover the facts upon which Plaintiffs rely to support their allegation that Wahl had knowledge of the '973 patent and that its infringement of that patent was willful. Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 17**

Describe in detail the manner in which Plaintiffs first learned of Wahl's alleged infringement of the '973 patent, including the individual who learned of the alleged infringement; the manner in which that individual learned of the alleged infringement; the date that individual learned of the alleged infringement; and all actions Plaintiffs took upon learning of the alleged infringement.

**Plaintiffs' Response to Interrogatory No. 17**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

**Wahl's Position Regarding Interrogatory No. 17**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 17 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 17, Wahl asked Plaintiffs to describe the manner in which Plaintiffs first learned of Wahl's

alleged infringement of the '973 patent, including the identity of the individual who received that information and the date it was received. By its nature, this factual information cannot be privileged. Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 18**

State all facts and legal bases presently known to you supporting the allegations in paragraphs 24 and 29 of the Second Amended Complaint that Wahl has "irreparably injured Plaintiffs," or Plaintiffs "have and will suffer great irreparable harm and damage," including but not limited to stating all reasons such damages or injuries are claimed to be irreparable.

**Plaintiffs' Response to Interrogatory No. 18**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

Plaintiffs further object to this interrogatory as duplicative of the previously served disclosures of relating to the calculation and theories of damages.

**Wahl's Position Regarding Interrogatory No. 18**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be

compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 18 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 18, Wahl asked Plaintiffs to state facts and legal bases presently known to them which support the allegation that they have been irreparably injured or harmed by Wahl. Plaintiffs' claims of irreparable harm are not protected by any privilege. To the extent this request can be read to request information about Plaintiffs' trial strategy or other potentially privileged information, Instructions 36-38 of Wahl's interrogatories made this clear. Wahl acknowledges that as a general rule, it is not entitled to receive privileged information from Plaintiff. However, that does not excuse Plaintiffs from responding to this interrogatory with appropriate non-privileged information, such as a description of facts Plaintiffs contend support their claim of irreparable harm.

Plaintiffs also object to this interrogatory on the ground that it is duplicative of previously-served disclosures relating to the calculation and theories of damages. As an initial matter, Wahl did not request information in Interrogatory No. 18 relating to calculation of Plaintiffs' damages; it requested information regarding Plaintiffs' alleged irreparable harm. Plaintiffs' objection is not applicable. In any event, Plaintiffs have not yet served any disclosures upon Wahl which explain how or why they have been irreparably harmed by Wahl with any specificity and which are verified by Plaintiffs. Plaintiffs should be compelled to respond to this interrogatory.

**<u>Wahl's Interrogatory No. 19</u>**

Describe with specificity all evidence in Plaintiffs' possession that Wahl was aware during the Ownership Period that Kim Laube had filed the '973 patent

application in his own name and had not assigned that invention to Wahl or KLC, or was aware of the scope or subject of that patent application.

**Plaintiffs' Response to Interrogatory No. 19**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

Plaintiffs further object to this interrogatory as presuming facts which are not in evidence and not factually correct.

**Wahl's Position Regarding Interrogatory No. 19**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 19 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 19, Wahl asked Plaintiffs to describe all evidence in Plaintiffs' possession which demonstrates that Wahl was aware during the Ownership Period that Kim Laube had filed the '973 patent application in his own name, or was aware of the subject or scope of that application. By its nature, this factual information cannot be

privileged. Plaintiffs also object to this interrogatory as "presuming facts which are not in evidence and are not factually correct." While Wahl agrees it is "not factually correct" to assume that Wahl was aware of Kim Laube's actions concerning the '973 patent during the Ownership Period, that is not a basis upon which Plaintiffs can refuse to respond to this interrogatory. If Plaintiffs are not in possession of any evidence to suggest Wahl was aware of those activities, which Wahl fully expects and anticipates is the case, Plaintiffs should so state. Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 20**

Identify each and every patent application filed by Kim Laube, KLC, or any employee of KLC during the Ownership Period. For each such application, identify the application number; the title; the named inventors; the assignee, if any; the date any patent arising from such application(s) issued; and the patent number and title.

**Plaintiffs' Response to Interrogatory No. 20**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

Plaintiffs further object to this interrogatory as irrelevant and immaterial to any issue in this suit.

**Wahl's Position Regarding Interrogatory No. 20**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 20 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 20, Wahl asked Plaintiffs to identify every patent application filed by Kim Laube, KLC or any employee of KLC during the Ownership Period, and to provide details related to those applications. By its nature, this factual information cannot be privileged. Plaintiffs also object to this interrogatory as "irrelevant and immaterial to any issue in this suit." Wahl disagrees. Pursuant to the various agreements between the parties during the Ownership Period, Plaintiffs were obligated to assign patents and patent applications to Wahl and/or KLC. Wahl has asserted counterclaims in this action which assert that Plaintiffs breached the agreements by failing to assign patents to Wahl and/or KLC as required. Information about patent applications filed by Plaintiffs during the Ownership Period is directly relevant to those claims. Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 22**

Identify with specificity all documents and tangible things which describe or memorialize the PII, including the dates such documents and tangible things were created, and the identity of the individual(s) who created them.

**Plaintiffs' Response to Interrogatory No. 22**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory

to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc., 224* F.R.D. *473* (N.D.Cal. *2004).*

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

**Wahl's Position Regarding Interrogatory No. 22**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 22 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 22, Wahl asked Plaintiffs to identify all documents and tangible things which describe or memorialize the PII, including the dates they were created and the identity of the individuals who created them. By its nature, this factual information cannot be privileged. Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 29**

Describe in detail the manner in which Plaintiffs first learned of Wahl's alleged misappropriation of the PII, including the individual who learned of the alleged misappropriation; the manner in which that individual learned of the alleged misappropriation; and the date that individual learned of the alleged misappropriation; and all actions Plaintiffs took upon learning of the alleged misappropriation.

**Plaintiffs' Response to Interrogatory No. 29**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

**Wahl's Position Regarding Interrogatory No. 29**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 29 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 29, Wahl asked Plaintiffs to describe the manner in which Plaintiffs first learned of Wahl's alleged misappropriation of the PII, including the identify of the individual who received that information and the date it was received. By its nature, this factual information cannot be privileged. Plaintiffs should be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 30**

For each of the following events, identify the date Plaintiffs learned of the event; the manner in which Plaintiffs learned of the event; the identity of the individual(s) who learned of such event: (i) Wahl's filing of the '506 patent application; (ii) Wahl's filing the '990 patent application; the issuance of the '506 patent to Wahl; the issuance of the '990 patent to Wahl.

**Plaintiffs' Response to Interrogatory No. 30**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

**Wahl's Position Regarding Interrogatory No. 30**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 30 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 30, Wahl asked Plaintiffs to describe the dates and manner in which Plaintiffs first learned of Wahl's filing of the '990 and '506 patent applications, and the issuance of those

patents. By its nature, this factual information cannot be privileged. Plaintiffs should be compelled to respond to this interrogatory.

**<u>Wahl's Interrogatory No. 31</u>**

Identify all documents in which Plaintiffs allege that Wahl misappropriated the PII, including but not limited to challenges filed with the U.S. Patent and Trademark Office, letters from Plaintiffs to Wahl, or assertions made to third parties, and the date of such documents.

**<u>Plaintiffs' Response to Interrogatory No. 31</u>**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

Plaintiffs further object to this interrogatory as duplicative of the previously served disclosures of relating to the calculation and theories of damages.

**<u>Wahl's Position Regarding Interrogatory No. 31</u>**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to

respond to Interrogatory No. 31 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 31, Wahl asked Plaintiffs to identify all documents in which Plaintiffs allege that Wahl misappropriated the PII. To the extent this request can be read to request information about Plaintiffs' trial strategy or communications between Plaintiffs and its attorneys, Wahl acknowledges that as a general rule, it is not entitled to receive privileged information from Plaintiff. Instructions 36-38 of Wahl's interrogatories made this clear. However, Wahl specifically asked in this interrogatory for information that, by its nature cannot be privileged – including documents filed with public agencies, letters from Plaintiffs to Wahl, and communications between Plaintiffs and third parties. Plaintiffs must provide this non-privileged information.

Plaintiffs also object to this interrogatory on the ground that it is duplicative of previously-served disclosures relating to the calculation and theories of damages. This interrogatory does not request any information about damages, and this objection is clearly frivolous and not applicable. Plaintiffs must be compelled to respond to this interrogatory.

**Wahl's Interrogatory No. 32**

Describe with specificity all evidence Plaintiffs possess to support their allegation that Wahl had a "secret intention" not to comply with the Stock Transfer Agreement at the time that agreement was executed.

**Plaintiffs' Response to Interrogatory No. 32**

Plaintiffs object to answering any Interrogatory that exceeds the 30 total interrogatories allowed by the Federal Rules. Plaintiffs object to this Interrogatory to the extent it Wahl it has already responded substantively to more than thirty (30) interrogatories. When the at least thirty interrogatories in interrogatory 1 are combined with the seven interrogatories previously answered by agreement of the

parties (and repeated herein), Plaintiffs have already responded substantively to over thirty interrogatories and thus decline to respond to more. *See Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D.Cal. 2004).

Plaintiffs further object to this interrogatory as seeking information that is protected under the attorney-client and/or work product privileges.

**<u>Wahl's Position Regarding Interrogatory No. 32</u>**

Plaintiffs' refusal to respond to this Interrogatory is based, in part, upon the purported number of interrogatories Wahl has propounded on Plaintiffs. This objection is baseless and frivolous. For the same reasons Plaintiffs should be compelled to respond to Interrogatory No. 1, they should be compelled to respond to this interrogatory. *See* Wahl's Position Regarding Interrogatory No. 1.

In addition to the alleged number of interrogatories, Plaintiffs refused to respond to Interrogatory No. 32 on the ground that it seeks information protected by the attorney-client and/or work product privileges. In Interrogatory No. 32, Wahl asked Plaintiffs to describe all evidence they possess to support the allegation that Wahl had a "secret intention" not to comply with the Stock Transfer Agreement when it was signed. By its nature, this factual information about Plaintiffs' evidence cannot be privileged. Plaintiffs must be compelled to respond to this interrogatory.

### 2. Interrogatories for Which Wahl Contends Plaintiffs' Responses Are Inadequate

**<u>Wahl's Interrogatory No. 5</u>**

Identify every product (whether provided by Wahl or any other person or entity) that Plaintiffs believe is within or covered by any claim of the '973 patent. Include in your response the identity of any person(s) who use, manufacture, sell or offer for sale such product; whether each such person is authorized by Plaintiffs to use, manufacture, sell or offer for sale such product; and a description of each

agreement, contract, license or other undertaking or understanding related to each such use, manufacture, sale or offer for sale of such product.

**Plaintiffs' Response to Interrogatory No. 5**

Plaintiffs object to this Interrogatory to the extent it requests the identity of "every product." Discovery is just beginning and much of the evidence is still within Defendant's control.

Subject to this and the general objections, Wahl's Stainless Steel Attachment Guide Combs, Model No. 3390-100 infringe. On information and belief, such combs are identified by various model numbers by Wahl, Wahl's subsidiaries and related international companies and Wahl's distribution chain. For example, without limitation, PetEdge advertises "Wahl Stainless Steel Attachment Clipper Comb Sets#WA33900," which is clearly essentially the same, if not identical, product and infringes. Cherrybrook Premium Pet Supplies similarly advertises "Wahl Stainless Steel Attachment Guide Combs" with product identification number 09-251-01," which is clearly essentially the same, if not identical, product and infringes. Amazon.com advertises "Wahl 3390-100 Stainless Steel Attachment Combs for Detachable Blades," which is clearly the same product and infringes as well. Groomer's Mall advertises several infringing options, including a kit labeled "Wahl Stainless Steel Attachment Guide Combs" containing 8 combs and single combs identified as "Wahl P/N 3371," "Wahl P/N 3372," "Wahl P/N 3373," "Wahl P/N 3374," "Wahl P/N 3375," "Wahl P/N X376," "Wahl P/N 3377," and "Wahl P/N 3378." The EBay Seller known as "davidndeb55" are offering the same, infringing "Wahl Stainless-Steel UNIVERSAL GUIDE Clipper Comb Set" which "Contains eight sizes: 1/8", 1/4", 3/8", 1/2", 5/8", 3/4", 7/8", and 1", but does not include an identifying model number. Another EBay Seller, Shaver_Outlet_Inc. offers what appears to be the same infringing kit of 8 blades and identifies it as "MPN: WH-3390-100." Petco offers at least "Wahl Stainless Steel Attachment Guide Combs" in eight sizes identified as "Model #0 SKU: 1342070," "Model #1

SKU: 1342088," "Model #2 SKU: 1342096," "Model #4 SKU: 1342100," "Model #5 SKU: 1342118," "Model #A SKU: 1342134," "Model #C SKU: 1342142," and "Model #E SKU: 1342150." PetSmart identifies the infringing kit as "Wahl Stainless Steel Attachment Combs for Detach Blades, Item: 2751977."

It is also clear that Wahl and its distribution chain offers certain clippers in packaging that includes combs. It is clear that at least some of such combined offerings of clippers with comb attachments do not include the infringing combs, but it has not been determined whether Wahl offers clippers with the infringing combs or only clippers with combs that are not at issue in this case in such packages.

Wahl also sells Wahl Sterling Stinger Detachable Blade Clipper #8233 which includes a clipper and the infringing combs. Additionally Wahl sells the Wahl Five Star Rapid Fire clipper with a set of infringing combs. It is not certain what other clippers Wahl may package with the infringing comb sets.

It is further believed that Wahl identifies combs that clip on four sides by a myriad of other identifying numbers, but discovery has not progressed sufficiently to identify all of them at this time. This answer will be supplemented following further discovery.

On information and belief, there are others in Wahl's distribution chain that have not yet been identified so that this answer will be supplemented as discovery progresses.

Plaintiffs have not authorized any person or entity other than Plaintiffs to use, manufacture, sell or offer for sale the patented product. Plaintiffs manufacture and sell the patented product and those purchasing the product from Plaintiffs have a clear implied license to resell or use the product.

**Wahl's Position Regarding Interrogatory No. 5**

In this interrogatory, Wahl asked Plaintiffs to identify ***every product*** which Plaintiffs believe is within or covered by any claim of the '973 patent, as well as the

identity of any person(s) who use, manufacture or sell that product. Wahl specifically included in its request products sold by third parties other than Wahl. In its response to this interrogatory, Plaintiffs identified certain Wahl products which they contend are covered by a claim of the '973 patent. Plaintiffs did not identify products made by any other manufacturer, including Plaintiff KLC, which they believed practiced the invention described in the '973 patent. While Plaintiffs objected to this interrogatory on the ground that discovery is just beginning and much of the evidence is within Wahl's control, Plaintiffs cannot explain why any evidence concerning other manufacturers' products – and specifically, ***Plaintiff KLC's*** products – would be outside of Plaintiffs' knowledge or uniquely within Wahl's control. Plaintiffs should be compelled to provide a full and complete response to this interrogatory.

**Wahl's Interrogatory No. 21**

Describe with specificity Plaintiffs' "proprietary inventions and ideas regarding lever mechanism technology and variable speed technology," as described in Paragraphs 26-28 of the Second Amended Complaint ("PII"). Include in your response a detailed description of the specific technology or features which are encompassed by "lever mechanism technology," and "variable speed technology," as those terms are used in the Second Amended Complaint.

**Plaintiffs' Response to Interrogatory No. 21**

Plaintiffs object to this Interrogatory to the extent it requests that Plaintiff divulge its trade secrets without the benefit of a protective order. Subject to this and the general objections, the "lever mechanism technology" is generally referred to as the "replaceable tip" technology which allows quick replacement and repair of the drive mechanism that is subject to wear. The "variable speed technology" refers generally to what is also known internally as "pulse technology" to differentiate it from the resistor type speed variance scheme of other manufacturers. This response

will be supplemented with greater detail after a protective order is in place and shall be considered to be answered under an attorney's eyes only designation.

**Wahl's Position Regarding Interrogatory No. 21**

In this interrogatory, Wahl asked Plaintiffs to describe their "proprietary inventions and ideas regarding lever mechanism technology and variable speed technology" (the "PII"). The interrogatory specifically requested that Plaintiffs provide a detailed description of the specific technology or features which are encompassed by "lever mechanism technology" and "variable speed technology." In their response, Plaintiffs provided precisely two sentences describing the nature of the allegedly misappropriated technology. Plaintiffs indicated that more detail would be provided after entry of an appropriate protective order, and pursuant to an attorneys' eyes only designation.

As an initial matter, Plaintiffs have no basis to demand "attorneys' eyes only" treatment of technology which they: (i) fully admit is currently being used in products that are publicly sold by Wahl; (ii) allege is described in patents issued to Wahl; and (iii) allege was misappropriated by Wahl, and so ***necessarily would already be within Wahl's possession***. Even if Plaintiffs' purported desire to protect this information was legitimate (which it is not), the parties previously stipulated to abide by the terms of an agreed-upon Protective Order even before such Order was formally entered in this case. In fact, Wahl provided highly confidential financial information to Plaintiffs in advance of the mediation relying upon that Stipulated Protective Order. Finally, the Protective Order has been presented to the Court for entry, which Wahl believes should be imminent. Plaintiffs should be compelled to provide a full and complete response to this interrogatory.

**Wahl's Interrogatory No. 23**

Describe with specificity all efforts made and measures taken by Plaintiffs to maintain the confidentiality or secrecy of the PII, to safeguard the PII, and to

prevent disclosure of the PII to the general public.

**Plaintiffs' Response to Interrogatory No. 23**

Plaintiffs maintain confidentiality agreements with all of its employees and additionally took steps to mask the PII so that it is not readily apparent to any person without specific knowledge of what to look for to identify the PII.

Subject to the general objections, to the extent that the interrogatory seeks information regarding how Plaintiffs protect its trade secrets without the benefit of a protective order, Plaintiffs object to a detailed or specific description of the measures taken to protect such trade secrets prior to issuance of a protective order. It is not believed possible to describe the measures taken with specificity without divulging the trade secrets. This answer will be supplemented following entry of an appropriate protective order.

**Wahl's Position Regarding Interrogatory No. 23**

In this interrogatory, Wahl asked Plaintiffs to describe all measures they took to maintain the confidentiality of the PII and to prevent disclosure of that information to the general public. In their response, Plaintiffs stated vaguely that they "took steps to mask the PII." Plaintiffs further claimed that they could not describe the measures taken to protect their trade secrets without divulging those trade secrets, and that more detail would be provided after entry of an appropriate protective order, and pursuant to an attorneys' eyes only designation.

As an initial matter, Plaintiffs have no basis to demand confidential treatment of technology which they: (i) fully admit is currently being used in products that are publicly sold by Wahl; (ii) allege is described in patents issued to Wahl; and (iii) allege was misappropriated by Wahl, and so ***necessarily would already be within Wahl's possession***. Even if Plaintiffs' purported desire to protect this information was legitimate (which it is not), the parties previously stipulated to abide by the terms of an agreed-upon Protective Order even before such Order was formally entered in this case. In fact, Wahl provided highly confidential financial

information to Plaintiffs in advance of the mediation relying upon that Stipulated Protective Order. Finally, the Protective Order has been presented to the Court for entry, which Wahl believes should be imminent. Plaintiffs should be compelled to provide a full and complete response to this interrogatory.

**Wahl's Interrogatory No. 25**

Identify all products offered for sale by Wahl or any other competitor of KLC which incorporate any aspect of the PII. For each such product, identify the specific PII incorporated, the date the competitor began manufacturing and/or selling the product, and the date the PII was first incorporated into the product.

**Plaintiffs' Response to Interrogatory No. 25**

Plaintiffs object to this Interrogatory to the extent it requests information regarding third parties who may or may not be incorporating Plaintiffs' trade secrets in the third party products, if any, who are unrelated to Wahl. Discovery is just beginning and much of the evidence is still within Plaintiff's control.

Subject to this and the general objections, at least Wahl's Stinger, Storm and Storm II, Switchblade and Rapidfire clippers include Plaintiffs' variable speed technology. At least Wahl's Storm, Storm II, Switchblade, Rapidfire, Stinger and KM2 Professional Clippers utilize Plaintiffs' lever mechanism technology. It is not known specifically when Wahl began using Plaintiffs' technology, but it is believed that Wahl began to use such technology at some time after separating from Plaintiffs on December 24, 2002. Before such time, the clippers that Plaintiffs manufactured for Wahl included the variable speed technology, but not the lever mechanism technology.

**Wahl's Position Regarding Interrogatory No. 25**

In this interrogatory, Wahl asked Plaintiffs to identify all products offered by sale for Wahl ***or any other competitor of KLC*** which incorporates any aspect of the PII, and to provide specific information about those products. In response to this

interrogatory, Plaintiffs identified only Wahl products, and objected to the interrogatory "to the extent it requests information regarding third parties who may or may not be incorporating Plaintiffs' trade secrets in the third party products, if any, who are unrelated to Wahl." If Plaintiffs are aware of third party products which incorporate the PII, that information is directly relevant to Plaintiffs' allegation that the PII amounts to Plaintiffs' protectable "trade secrets." Plaintiffs should be compelled to provide a full and complete response to this interrogatory.

**Wahl's Interrogatory No. 26**

Describe all economic value (including but not limited to earnings) derived by Plaintiffs from the PII, including the identity of any products incorporating the PII and all documents which substantiate those earnings.

**Plaintiffs' Response to Interrogatory No. 26**

Subject to the general objections, to the extent that the interrogatory seeks information regarding Plaintiffs' earnings from the products that include Plaintiffs' patented features and trade secrets without the benefit of a protective order, Plaintiffs objects to the lack of a protective order.

To the extent that the interrogatory seeks to determine which of Plaintiffs' products include the trade secrets referenced in the PII, see Answer to Interrogatory No. 24.

**Wahl's Position Regarding Interrogatory No. 26**

In this interrogatory, Wahl asked Plaintiffs to describe all economic value derived by Plaintiffs from the PII, and to provide additional information about that economic value. In response, Plaintiffs: (i) refused to respond to the interrogatory without a protective order, and (ii) referred Plaintiffs to another interrogatory response which purportedly identified those products which incorporate the PII. The parties previously stipulated to abide by the terms of an agreed-upon Protective Order even before such Order was formally entered in this case. In fact, Wahl

provided highly confidential financial information to Plaintiffs in advance of the mediation relying upon that Stipulated Protective Order. Finally, the Protective Order has been presented to the Court for entry, which Wahl believes should be imminent. Plaintiffs should be compelled to provide a full and complete response to this interrogatory.

### C. PLAINTIFFS' DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS

**Plaintiffs' Infringement Contentions read, in their entirety, as follows:**

Pursuant to Local Patent Rule 3.1, and to the extent that the information has not already been provided in a less formal manner, Plaintiffs KIM LAUBE & COMPANY, INC. and KIM LAUBE ( hereinafter "Plaintiffs" or "KLC" unless otherwise identified ), by their counsel, Kent A. Rowald, P.C., hereby provide the following supplemental disclosure of asserted claims and infringement contentions to Defendant Wahl Clipper Corporation ("Defendants" or "Wahl") based upon information that is presently available to them following an inquiry reasonable under the circumstances:

Local Patent Rule 3.1 (a) Defendants have infringed 35 USC §271(a), (b) and (f) by manufacturing, using, distributing, selling and offering for sale and importing into the United States a product that infringes claims 1 through 7, inclusively, of U.S. Patent 6,473,973 in this judicial district and elsewhere in the United States. Said infringing product is identified by Defendant WAHL and some related parties as, among other designations used domestically and abroad, the "Wahl Clipper Stainless Steel Attachment Guide Combs," Model No. 3390-100. In addition, such combs are identified by various model numbers by Wahl, Wahl's subsidiaries and related international companies and Wahl's distribution chain. For example, without limitation, PetEdge advertises "Wahl Stainless Steel Attachment Clipper Comb Sets#WA33900", which is clearly essentially the same, if not identical, product and infringes. Cherrybrook Premium Pet Supplies similarly

advertises “Wahl Stainless Steel Attachment Guide Combs” with product identification number 09-251-01”, which is clearly essentially the same, if not identical, product and infringes. Amazon.com advertises “Wahl 3390-100 Stainless Steel Attachment Combs for Detachable Blades”, which is clearly the same product and infringes as well. Groomer’s Mall advertises several infringing options, including a kit labeled “Wahl Stainless Steel Attachment Guide Combs” containing 8 combs and single combs identified as “Wahl P/N 3371”, “Wahl P/N 3372”, “Wahl P/N 3373”, “Wahl P/N 3374”, “Wahl P/N 3375”, “Wahl P/N 3376”, “Wahl P/N 3377”, and “Wahl P/N 3378”. The EBay Seller known as “davidndeb55” are offering the same, infringing “Wahl Stainless-Steel UNIVERSAL GUIDE Clipper Comb Set” which “Contains eight sizes: 1/8", 1/4", 3/8", 1/2", 5/8", 3/4", 7/8", and 1".” but does not include an identifying model number. Another EBay Seller, Shaver_Outlet_Inc. offers what appears to be the same infringing kit of 8 blades and identifies it as “MPN: WH-3390-100”. Petco offers at least “Wahl Stainless Steel Attachment Guide Combs” in eight sizes identified as “Model #0 SKU: 1342070”, “Model #1 SKU: 1342088”, “Model #2 SKU: 1342096”, “Model #4 SKU: 1342100”, “Model #5 SKU: 1342118”, Model #A SKU: 1342134”, “Model #C SKU: 1342142”, and “Model #E SKU: 1342150”. PetSmart identifies the infringing kit as “Wahl Stainless Steel Attachment Combs for Detach Blades, Item: 2751977”.

It is also clear that Wahl and its distribution chain offers certain clippers in packaging that includes combs. It is clear that at least some of such combined offerings of clippers with comb attachments do not include the infringing combs, but it has not been determined whether Wahl offers clippers with the infringing combs or only clippers with combs that are not at issue in this case in such packages.

Wahl also sells the Wahl Sterling Stinger Detachable Blade Clipper #8233 which includes a clipper and the infringing combs. Additionally Wahl sells the

Wahl Five Star Rapid Fire clipper with a set of infringing combs. It is not certain what other clippers Wahl may package with the infringing comb sets.

It is further believed that Wahl identifies combs that clip on four sides and engage with the upper clipper blade by a myriad of other identifying numbers, but discovery has not progressed sufficiently to identify all of them at this time. This answer will be supplemented following further discovery.

On information and belief, there are others in Wahl's distribution chain that have not yet been identified so that this answer will be supplemented as discovery progresses.

Local Patent Rule 3.1 (b) and (d): Defendant WAHL has further induced others to infringe the '973 patent by encouraging and promoting the manufacture, use, distribution, sale and/or offer for sale by others of products that infringe the '973 patent, including the products designated by Defendant WAHL as the "Wahl Clipper Stainless Steel Attachment Guide Combs," Model No. 3390-100 and the other products listed above. It is not known specifically what all of the designations the related parties use to identify this product and products that include this product as a subpart, but it is clear that they are private labeling the combs purchased from WAHL. Examples of such model number variances are reflected above.

Local Patent Rule 3.1(c): A supplemental chart of the infringed claims is attached hereto, showing where the element in each claim (elements in boxes) is literally found in the Model No. 3390-100.

Local Patent Rule 3.1(f): Each element of each claim is supported by disclosure in the original application in the family and thus is entitled to the priority date of December 29, 1998.

Local Patent Rule 3.1(g): Plaintiffs affirmatively state that the combs manufactured and sold by Kim Laube & Co., Inc. and designated "Clipper Blade Combs, NEW patented side rails for a tight non shift fit" incorporate each element

of each asserted claim.

Local Patent Rule 3.1 (h): Wahl's infringement is willful in that Defendant WAHL had actual knowledge of the '973 patent before the filing of this action and prior to commencement of its infringement of the '973 patent. Moreover, Wahl has continued to manufacture and sell the infringing product since this suit was filed. Additionally, Wahl clearly was aware that at least some of the claims of the patent in suit are valid and enforceable as shown by Wahl's failure to seek reexamination of all of the claims in the patent.

Plaintiffs reserve the right to supplement this disclosure should the claims in the patent in suit ultimately change in the reexamination proceeding or should the Court authorize the filing of the Third Amended Complaint, which asserts additional claims against the same products, or should the Court adopt a claim construction that differs from the claim construction that Plaintiff believes is proper, as reflected in the claim chart reading on Wahl Model No. 3390-100.

**With their Infringement Contentions, Plaintiffs served the following "Clam Chart":**




### 1. Wahl's Position on Plaintiffs' Infringement Contentions

In accordance with the Court's March 5, 2012 Scheduling Order, Plaintiffs were required to serve their Infringement Contentions on or before April 27, 2012. Plaintiffs failed to meet this deadline. Heath Decl. ¶ 9, Exh. 6. More importantly, the Infringement Contentions served by Plaintiffs were inadequate and failed to comply with the Local Patent Rules – namely, LPR 3-1 and 3-2 for the Northern District of California – which both Plaintiffs and Wahl agreed should be applicable in this case. Heath Decl. at ¶ 43; Exh. 46.

LPR 3-1 provides as follows:

> **3-1. Disclosure of Asserted Claims and Infringement Contentions**
> Not later than 14 days after the Initial Case Management Conference, a party claiming patent infringement shall serve on all parties a "Disclosure of Asserted Claims and Infringement Contentions."

Separately for each opposing party, the "Disclosure of Asserted Claims and Infringement Contentions" shall contain the following information:

**(a)** Each claim of each patent in suit that is allegedly infringed by each opposing party, including for each claim the applicable statutory subsections of 35 U.S.C. §271 asserted;

**(b)** Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;

**(c)** A chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

**(d)** For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.

**(e)** Whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality;

**(f)** For any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled; and

**(g)** If a party claiming patent infringement wishes to preserve the right to rely, for any purpose, on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention, the party shall identify, separately for each asserted claim, each such apparatus, product, device, process, method, act, or other instrumentality that incorporates or reflects that particular claim.

**(h)** If a party claiming patent infringement alleges willful infringement, the basis for such allegation.

LPR 3-2, which defines the parameters of the document production to be included with a party's Infringement Contentions, provides as follows:

**3-2. Document Production Accompanying Disclosure**

With the "Disclosure of Asserted Claims and Infringement Contentions," the party claiming patent infringement shall produce to each opposing party or make available for inspection and copying: USDC Patent Local Rules – Revised December 1, 2009 PAT-5

**(a)** Documents (e.g., contracts, purchase orders, invoices, advertisements, marketing materials, offer letters, beta site testing agreements, and third party or joint development agreements) sufficient to evidence each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell, or any public use of, the claimed invention prior to the date of application for the patent in suit. A party's production of a document as required herein shall not constitute an admission that such document evidences or is prior art under 35 U.S.C. § 102;

**(b)** All documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to Patent L.R. 3-1(f), whichever is earlier;

**(c)** A copy of the file history for each patent in suit; and

**(d)** All documents evidencing ownership of the patent rights by the party asserting patent infringement.

**(e)** If a party identifies instrumentalities pursuant to Patent L.R. 3-1(g), documents sufficient to show the operation of any aspects or elements of such instrumentalities the patent claimant relies upon as embodying any asserted claims.

The producing party shall separately identify by production number which documents correspond to each category.

Plaintiffs' original Infringement Contentions (served four days after the deadline) did not meet these requirements and were not accompanied by any documents. Wahl attempted to confer with Plaintiffs repeatedly regarding the inadequate Infringement Contentions. Plaintiffs eventually agreed to provide amended Infringement Contentions which complied with LPR 3-1 and 3-2, including the document production required by LPR 3-2, by Thursday May 17, 2012. Heath Decl. at ¶ 27, Exh. 31.

Once again, Plaintiffs failed to timely serve their supplemental Infringement Contentions (which were served two days after the agreed upon deadline). *Id.* at ¶ 28. More importantly, the supplemental Infringement Contentions did virtually

nothing to remedy the vast majority of the defects with the prior disclosures, and did not include the document production required by LPR 3-2. Heath Decl. at ¶ 28. Exh. 33.

The specific deficiencies with Plaintiffs' Infringement Contentions include:

- Plaintiffs' updated schematic titled "Infringing Wahl Comb" does not even come close to satisfying the requirement in LPR 3-1(c) that Plaintiff produce a "chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality."

- Plaintiffs have not identified whether each limitation is alleged to be literally present or present under the doctrine of equivalents, as required by LPR 3-1(e).

- Plaintiffs have not performed a good faith review of their assertion that every claim in the '973 patent is entitled to claim priority from December 29, 1998, as a simple review of the application filed on that date reveals that at least claims 2-7 are not supported in that application, and thus are not entitled to priority based upon that date.

- Plaintiffs still have not made the document production required by LPR 3-2, including documents related to Laube's own prior art sales; documents evidencing the conception and reduction to practice of each claimed invention; a copy of the file history; documents evidencing ownership; and documents sufficient to show the operation of any instrumentality upon which Plaintiffs rely as embodying the asserted claims.

When Wahl requested that Plaintiffs provide adequate Infringement Contentions, Plaintiffs responded that their disclosures "[went] well beyond" what is required by the Local Patent Rules applicable in the Central District of California, and that Plaintiffs were not required to comply with the Northern District of California LPRs. Heath Decl. at ¶ 43, Exh. 45. Plaintiffs' response was difficult to understand because Plaintiffs had previously agreed with Wahl – in a submission to the Court – that the Northern District Local Patent Rules would apply, (ii) there are no Local Patent Rules for the Central District of California; and (iii) Plaintiffs referenced the LPRs in their Infringement Contentions.

Plaintiffs' failure to provide this information, as required by the LPRs and as specifically agreed upon by Plaintiffs, has severely impacted Wahl's ability to prepare its defenses to Plaintiffs' claims of patent infringement. Despite Plaintiffs' refusal to honor their own obligations, Wahl has done its best and has served

Plaintiffs with thorough and detailed Invalidity Contentions which fully comply with the LPRs. Wahl's careful compliance with the LPRs, while Plaintiffs have repeatedly flouted their discovery and disclosure obligations, has put Wahl at an unfair disadvantage in this litigation.

There can be no dispute that Plaintiffs' Supplemental Infringement Contentions do not comply with LPR 3-1, and that Plaintiffs are required to provide Wahl with the documents required by LPR 3-2. Plaintiffs should be compelled to provide Wahl with fully adequate Infringement Contentions and the required document production – which Plaintiffs previously agreed, but failed again to do – so that Wahl can prepare its defenses to Plaintiffs' claims.

## III. THE COURT SHOULD IMPOSE SANCTIONS ON PLAINTIFFS AND THEIR COUNSEL

Local Rule 37-4 provides that "[t]he failure of any counsel to comply with or cooperate in the foregoing procedures [L.R. 37-2] may result in the imposition of sanctions." Here, there is no question that Plaintiffs and their counsel failed to comply with the local rules or otherwise cooperate in regards to this matter. Plaintiffs' counsel failed to cooperate in the meet and confer process, failed to engage in the required "conference of counsel," and failed to provide plaintiffs' portion of the required joint stipulation. Heath Decl. at ¶¶ 2-6. This lack of cooperation on the part of plaintiffs' counsel has caused Wahl to incur unnecessary attorney fees and costs. It also demonstrates a total disregard for court rules and procedures.[2] As such, the Court should impose monetary sanctions on plaintiffs

[2] Wahl notes that Plaintiffs' counsel has demonstrated a prior lack of compliance in connection with discovery in another action. In *Furminator, Inc. v. PetVac Group LLC*, Civil Action No. 2-08-cv-338-TJW, currently pending before the United States District Court for the Eastern District of Texas, Plaintiff's counsel and his client were sanctioned for willfully violating the Court's Discovery Order, which resulted in an order striking Mr. Rowald's client's invalidity contentions. *See* Heath Decl. at ¶ 47, Exh. 47 (Memorandum Opinion and Order, p. 9). Mr. Rowald himself was sanctioned for failing to produce documents and for misrepresentations regarding a responsive e-mail. *Id.* (Memorandum Opinion and Order, p. 9). Indeed, the Court found that an e-mail allegedly sent by counsel was "fraudulent."

and their counsel in an amount to be determined by the Court.

## IV. CONCLUSION

For the foregoing reasons, Wahl respectfully requests that the Court enter an order compelling Plaintiffs to produce documents responsive to Wahl's document requests, respond to all of Wahl's interrogatories, or in the case where responses were given, supplement those responses to provide adequate responses, and provide Ingringement Contentions that comply with the LPRs. Wahl further requests that the Court impose monetary sanctions against Plaintiffs and their counsel as provided for in Local Rule 37-4.

Dated: July 30, 2012

**BARNES & THORNBURG LLP**

By /s/Levi W. Heath

Levi W. Heath
Attorneys for Defendant and Counterclaimant
WAHL CLIPPER CORPORATION

---

*Id.* Tellingly, neither Mr. Rowald nor his client has complied with the sanction orders and an order to show cause hearing is currently scheduled for August 7, 2012. *Id.* (Order, dated June 26, 2012).