**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

Present: The Honorable     JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings:          **(IN CHAMBERS) DECISION FOLLOWING BENCH TRIAL ON**
**INEQUITABLE CONDUCT**

## I.     Introduction

Plaintiffs Kim Laube & Co. and Kim Laube (collectively, "KLC" or "Plaintiffs") brought this action against Defendant Wahl Clipper Corp. ("Wahl" or "Defendant") for, *inter alia*, infringement of U.S. Patent No. 6,473,973 ("the '973 Patent"), titled "Disposable Cutting Head for Clippers." Subsequently, Wahl brought a counterclaim for inequitable conduct in the prosecution of the '973 Patent. A bench trial on the counterclaim was conducted on June 18, 2013. This Order sets forth the decisions on the issues raised at that trial.

## II.     Procedural Background

After Laube brought its claims, Wahl requested *inter partes* reexamination of claims 1-5 on the basis of prior art references that were not considered during the prosecution of the '973 Patent. The United States Patent and Trademark Office ("PTO") granted reexamination, and the examiner issued a final rejection of claims 1-5. The Board of Patent Appeals and Interferences ("BPAI") affirmed that rejection. Laube's appeal from the BPAI's affirmance is currently pending before the Federal Circuit. Case No. 13-1048 (filed Oct. 31, 2012).

On October 15, 2012, the Court held a *Markman* hearing to construe certain terms and phrases from the '973 Patent's claims. On March 8, 2013, the Court granted Wahl's motion for partial summary judgment of non-infringement and invalidity of the '973 Patent. Order Granting Patent

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

Portions of Mot. for Summ. J., Dkt. No. 314 at 1.

The case proceeded to a jury trial on certain non-patent claims; the trial concluded on May 2, 2013. The jury rendered a verdict adverse to Plaintiffs.

On May 7, 2013, the Court set the procedure for the bench trial on Wahl's counterclaim. Order Setting Inequitable Conduct Trial Procedure ("Bench Trial Procedure Order"), Dkt. No. 369. During the one-day bench trial, Wahl called as witnesses the patentee, Kim Laube ("Laube"), and the patent prosecutor, Dennis Beech ("Beech"). KLC called Scott Melton ("Melton"), whose direct testimony Wahl submitted in declaration form pursuant to the Court's instructions. Notice of Prior Test. Designation and Direct Test. for Inequitable Conduct Trial ("Wahl Designation"), Dkt. No. 371.

### III.   Resolution of Disputed Evidentiary Issues

#### A.   The Certified Prosecution History

KLC objects to the admission of the certified prosecution history from the reexamination of the '973 Patent ("'973 Reexam"), Trial Exhibit 2262, on the ground that it was not filed by Wahl before the December 29, 2012 discovery deadline. June 18, 2013 Bench Trial Tr. ("Bench Trial Tr."), Dkt. No. 417 at 120:2-8; Def.'s Br. in Supp. of Admis. of Trial Ex. 2262, Dkt. No. 415-6 at 1. KLC's objection is Overruled.

On April 19, 2012, Wahl served requests for production on KLC. Dkt. No. 415 at 2. Request No. 8 sought "[a]ll documents relating to the reexamination of the '973 patent." Dkt. No. 415-1 at 7. On June 6, 2012, KLC responded, referring Wahl to "the publicly available patent office records which reflect the prosecution of the '973 reexamination." Dkt. No. 415-2 at 8. Subsequently, Wahl obtained the "PTO database downloaded file for the reexamination prosecution history of the '973 Patent," Bates-labeled WAHL_PAT002208-3120. Dkt. No. 415 at 3. Wahl served that copy of the reexamination prosecution history with its Invalidity Contentions on June 20, 2012, and filed it in connection with the claim construction proceedings on September 17, 2012. *Id.*; Dkt. No. 415-3 at 1. In addition, Wahl listed the reexamination prosecution history, Bates-labeled WAHL_PAT002208-3120, on the Joint Exhibit List on April 1, 2013. Dkt. No. 415 at 3; Dkt No. 326 at 34-35.

On April 16, 2013, KLC "objected to and would not stipulate to [the] admissibility" of the version of the reexamination prosecution history that had been used in this litigation up until that date. Dkt. No. 415 at 3. KLC raised the following question: "Are these certified copies? If so, we will stipulate to them. If they are not certified, we will NOT stipulate to them." Dkt. No. 415-4 at 1 (emphasis in original). KLC reiterated this objection in an April 22, 2013 email to Defendant's

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

counsel: "ALL government documents must be certified to be in, regardless of who offers them."
Dkt. No. 415-5 at 1 (emphasis in original).

After Wahl obtained the certified copy of the '973 reexamination prosecution history (Trial Exhibit 2262), it forwarded that copy to KLC on May 30, 2013 with a proposed exhibit list for use at the bench trial. Dkt. No. 415-6 at 3. KLC objected to this list on June 5, 2013. *Id.* at 1. On June 12, 2013, Wahl filed its Notice of Disputed Exhibits and Request for Judicial Notice, in which it asked for judicial notice of Trial Exhibit 2262 pursuant to Fed. R. Evid. 201 and 902. Dkt. No. 402 at 3. At trial, the Court provisionally overruled KLC's objection and admitted Trial Exhibit 2262 subject to further briefing; that briefing has now been submitted. Bench Trial Tr., Dkt. No. 417 at 122:5-8.

The Court overrules KLC's objection to Trial Exhibit 2262. The requirements for judicial notice are satisfied. *See e.g.*, *Interstate Natural Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953) ("We may take judicial notice of records and reports of administrative bodies."); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 514 n.3 (Fed. Cir. 1990) (taking judicial notice of a PTO Office Action) (citing 37 C.F.R. § 1.11(d) (1989) ("All papers or copies thereof relating to a reexamination proceeding which have been entered of record in the patent or reexamination file are open to inspection by the general public . . . .")). Further, the Court overrules KLC's objection based on Wahl's late production of the document for two reasons. First, Wahl produced the document in discovery in the non-certified form Wahl then possessed. Dkt. No. 160-9 through 106-12. Thus, there was no prejudice to KLC when a certified copy, which was identical in all material respects, was produced at a later time; KLC had ample opportunity to consider the document and prepare for its potential admission as a trial exhibit. Second, KLC represented that it would withdraw the objection if Wahl used a certified copy. Dkt. No. 415-4 at 1. It now attempts to retract that representation without any good or sufficient reason. For the reasons just stated, there is no justification for this change in position. Thus, there is no dispute as to the authenticity of the document, and KLC has articulated no reason that it would be prejudiced by its admission.

## B.    Wahl's Deposition Designations

KLC objects to Wahl's designation of deposition testimony of both Laube and Beech for the inequitable conduct bench trial. Pls.' Objections to Dep. Designations, Dkt. No. 408 at 2-4; Bench Trial Tr., Dkt. No. 417 at 177:3-12. KLC objects to Laube's deposition testimony, on the ground that Wahl failed to follow the Bench Trial Procedure Order, which directed that direct testimony be presented in the form of a declaration*, i.e.,* not through deposition testimony. Pls.' Objections to Dep. Designations, Dkt. No. 408 at 2. KLC objects to Beech's deposition testimony, on the ground that he is a non-party witness who is available to provide live testimony, and that no exceptions to Fed. R. Civ. P. 32(a) apply. *Id.* at 3.

On May 7, 2013, the Court ordered Wahl to "file a designation of the prior testimony upon which

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

it relies" by May 17, 2013. Bench Trial Procedure Order, Dkt. No. 369 at 1. The Court also ordered that, by May 24, 2013, KLC was to "submit declarations of the direct testimony it will present, objections to the consideration of any prior testimony of non-party witnesses who are available to testify at trial . . . [and] any cross designations of any prior testimony that has been designated by Wahl, to the extent it is not stricken as being a non-party, available witness's testimony." *Id.* On May 17, 2013, Wahl designated specific portions of Laube's and Beech's depositions. Wahl Designation, Dkt. No. 371 at 1-6. KLC failed to file its declarations, objections or cross-designations by May 24, 2013. On June 6, 2013, in an order requiring Wahl to file marked compilations of the testimony it designated by June 10, 2013, the Court provided that "[s]hould any other party elect to make a designation prior to the time of trial, it shall be presented in this same format." Order re Submission of Highlighted Test. Excerpts for Bench Trial on Inequitable Conduct, Dkt. No. 395. On June 17, 2013 -- more than three weeks after the deadline and the day before trial -- KLC filed its objections and cross-designations to Wahl's designations. Pls.' Objections to Dep. Designations, Dkt. No. 408.

The Court overrules KLC's objections to Laube's prior deposition testimony. Fed. R. Civ. P. 32(a)(1) provides that a deposition may be used against a party at trial if:

> (A) the party was present or represented at the taking of the deposition or had reasonable notice of it;
> (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and
> (C) the use is allowed by Rule 32(a)(2) through (8).

Pursuant to Fed. R. Civ. P. 32(a)(3), Wahl may use, "for any purpose[,]" the deposition of a party or anyone who, "when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)." Laube is the President of Kim Laube & Co., and is himself a party to the action. Decl. of Kim Laube In Supp. of Mot. To Disqualify, Dkt No. 32-2 at 1.

The Court sustains KLC's objections to the admission of Beech's deposition testimony. Its use is not allowed by Fed. R. Civ. P. 32(a)(2)-(8).

### C.    KLC's Cross-Designations

Wahl objected to KLC's cross-designations under Fed. R. Civ. P. 32, as untimely, vague and irrelevant. Notice of Wahl's Objections to Pls.' Belated Cross-Designations, Dkt. No. 413 at 2-3. The Court sustains Wahl's objection and strikes KLC's cross-designations. Because they do not provide context for Wahl's designations, they are improper cross-designations. KLC designated the balance of the depositions in their entirety and made no attempt to limit the cross-designations to the relevant issues. Pls.' Objections to Dep. Designations, Dkt. No. 408 at 2-4.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

## IV.   Factual Background

### A.   The '973 Patent

The '973 Patent is titled "Disposable Cutting Head for Clippers." It has a total of seven claims (two independent and five dependent), all of which are directed to a comb element. However, the abstract, summary of the invention, and majority of the drawings and specification of the '973 Patent are directed to the cutting head, not the comb element. A comb element is illustrated in dashed lines below in Figure 13:[1]



*FIG.13*

The '973 Patent claims two categories of comb elements: Claims 1-3 cover a comb element with a spring clip in the back, whereas Claims 4-7 cover a comb element using a back plate with a slot instead of a spring clip.

Claim 1 is independent, and Claims 2-3 depend from Claim 1. Claim 1 recites:

> A comb element for attachment to a clipper cutting head comprising:
>
> a support base element with a plurality of comb teeth attached at a front base edge and the comb teeth having a groove notch formed therein for engagement with a front edge of a plurality of upper teeth of a cutting head; and

---

[1]  The Court has annotated the drawings with the descriptions from the specification.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

a spring clip attached at a rear base edge of the support base element opposite the comb teeth.

Figure 14 below shows a comb element with a spring clip:



In this embodiment, the spring force from the spring clip (35) holds the comb in place on the cutting head (1).

Claim 4 is independent, and Claims 5-7 depend from Claim 4. Claim 4 recites:

A comb element for attachment to a clipper cutting head comprising:

a support base element with a plurality of comb teeth attached at a front base edge and the comb teeth having a groove notch formed therein for engagement with a front edge of a plurality of upper teeth of a cutting head; and

a back plate attached at a rear base edge of the support base element opposite the comb teeth and two side elements attached there between with the back plate having a slot therein for engagement with the cutting head.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

Figure 15 shows an example of a comb element with a back plate and slot:



*FIG. 15*

Figures 22 and 23 further illustrate the back plate embodiment, in which the spring force from the leaf spring (81) works to hold the comb in place on the cutting head. This pushes the spring extension (82) into the slot (52).

///

///

///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |



FIG.22   FIG.23

Figure 12A shows that the lower, or stationary, blade teeth protrude farther than the upper, or moving, blade teeth:



FIG.12A

### B.    The Prosecution History of the '973 Patent

U.S. Patent Application Serial No. 09/222,049 ("the '049 Application"), the original application in the chain that eventually yielded the '973 Patent, was filed on December 29, 1998. Dkt. No. 402-4, Trial Ex. 2257 at 0005. In the '049 Application, claim 8 was the only claim regarding a comb element. It read as follows:

> 8.    A thin comb element for attachment to a clipper cutting head comprising a support base element with comb teeth having a groove notch therein attached at an edge of the support base element and a spring clip attached at an edge of the support base element opposite the comb teeth.

*Id.* at 0016. The examiner rejected claim 8 under 35 U.S.C. § 102(b) as being anticipated by U.S.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

Patent No. 4,328,616, to Andis ("Andis '616"). *Id.* at 0027. Andis '616 discloses a blade carrier with a front portion resembling a comb and "means for securing together said blade carrier with said blade member in assembled relation." Andis '616 at 10:26-27. The blade carrier is depicted in Figures 5 and 6 of Andis '616 as being attached with screws.

Instead of responding to the Office Action in the '049 Application, Laube filed a continuation-in-part application, No. 09/457,454, on December 8, 1999 ("the '454 Application"). Dkt. No. 402-5, Trial Ex. 2258 at 0004. Claims 20 and 21, which read as follows, were added in the '454 Application:

> 20. A comb element for attachment to a clipper cutting head comprising:
>
> a support base element with a plurality of comb teeth attached at a front base edge and the comb teeth having a groove notch formed therein for engagement with a front edge of a plurality of upper teeth of a cutting head; and
>
> a spring clip attached at a rear base edge of the support base element opposite the comb teeth.
>
> 21. A comb element for attachment to a clipper cutting head comprising:
>
> a support base element with a plurality of comb teeth attached at a front base edge and the comb teeth having a groove notch formed therein for engagement with a front edge of a plurality of upper teeth of a cutting head; and
>
> a back plate attached at a rear base edge of the support base element opposite the comb teeth and two side elements attached there between with the back plate having a slot therein for engagement with the cutting head.

*Id.* at 0022-23. Claims 20 and 21 in the '454 Application ultimately issued as claims 1 and 4 of the '973 Patent. Laube also filed an Information Disclosure Statement with the '454 Application, disclosing seven U.S. patents "related to disposable shaver heads." *Id.* at 0036. KLC's publicly-sold combs were not among the prior art disclosed, and were not previously or subsequently disclosed during prosecution of the family of applications leading to the '973 Patent.

In an Office Action dated January 31, 2001, the Examiner rejected claim 20 under 35 U.S.C. § 102(b) as being anticipated by Andis '616. *Id.* at 0084. Laube responded to the Office Action on April 25, 2001, attempting to distinguish Andis '616 as lacking a groove notch and spring clip. *Id.* at 0105. A subsequent Office Action was issued on July 10, 2001, rejecting claim 20 again as anticipated by Andis '616 pursuant to 35 U.S.C. § 102(b). *Id.* at 0113. The Examiner stated:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

"Note that as broadly as claimed the spring clip is shown by Andis." *Id.*

Laube did not substantively respond to the July 10, 2001 Office Action, and instead pursued another continuation-in-part application, No. 09/610,645, that it had previously filed on June 27, 2000 ("the '645 Application"). Dkt. No. 402-7, Trial Ex. 2259 at 0003. Claims 20-26 and 33-35 of the '645 Application were directed to comb elements for attachment to a clipper cutting head. *Id.* at 0024-27. In an October 11, 2001 Office Action, the examiner provisionally rejected claims 1-20, 21, and 23 for double patenting in view of the earlier-filed '454 Application. *Id.* at 0050.

Laube responded on January 8, 2002, canceling, *inter alia*, claims 20-26 in the '645 Application, *id.* at 0066, and incorporating claims 20-26 into a new divisional application, No. 10/042,547 ("the '547 Application). Dkt. No. 402-11 and -12, Trial Ex. 2261 at 0044-45. On March 1, 2002, the PTO issued a non-final Office Action, rejecting, *inter alia*, claim 20 (issued claim 1) as anticipated by or as obvious over U.S. Patent No. 5,970,616, to Wahl ("Wahl '616"), noting that Wahl '616 disclosed a comb having "a spring portion on the end opposite from the teeth which is used fo[r] attaching the assembly to the clipper." Dkt. No. 402-13, Trial Ex. 2261 at 0081.

On May 30, 2002, Laube responded to the March 1, 2002 Office Action. *Id.* at 0086. There, Laube argued that Wahl '616 did not "illustrate in the Figures nor describe in the specification the use of a groove notch in the comb teeth." *Id.* at 0084. In addition, Laube argued that Wahl '616 and other prior art, such as Andis '616, did not "disclose [or] anticipate the use of a groove notch 34 as illustrated in the instant application, Figures 24, 24A and 27, for retention of the comb to a cutting head."[2] *Id.* Subsequently, the '973 F

Figure 7 of Wahl '616 is shown below:



FIG. 7

---

[2] The meaning of the phrase "groove notch for engagement" was the subject of controversy in this case and was construed by the Court. However, that controversy and construction do not control the inquiry here, which focuses on the applicant's representation that the prior art did not disclose the use of a groove notch "for retention of the comb to a cutting head."

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

### C.   The Withheld Prior Art

Wahl presented the direct testimony of Scott Melton by declaration ("Melton Decl."). Dkt. No. 371-2. Melton has been the Manager of Wahl's Innovation Center since October 2007, and has been employed by Wahl since January 1986. *Id.* at 2. He received an Associate's Degree in Mechanical Design from Morrison Institute of Technology in 1986 and has at least 25 years of cumulative working experience in the hair trimmer/clipper and accessories field. *Id.* Melton is also the named inventor on twenty-eight utility and design patents directed to hair clipper technology and accessories. *Id.* at 2-3.

Melton testified that, after reviewing the withheld prior art references -- the Laube Brochure, "Deluxe," "Big K," or "Laube Snap-On Combs" products or Laube and/or KLC's sales and offers for sale of those products (collectively, "Laube Prior Art") -- he determined that the Laube Prior Art was more relevant to the '973 Patent than the Wahl '616 patent was. The examiner had relied on the Wahl '616 patent during the course of prosecution, Dkt. No. 402-13, Trial Ex. 2261 at 0081; Laube distinguished that patent by pointing out that it did not "disclose a groove notch for engagement of teeth." Melton Decl., Dkt. No. 371-2 at 9. Melton stated that "[u]nlike Wahl '616, the Laube prior art combs include notches that engage with the cutting teeth of typical clipper cutting heads . . . for retention of the comb element to the clipper" and that "retention requires contact." *Id.*

In addition, Melton found that in the Laube Prior Art, the notch in the comb teeth and the way it engaged the clipper cutting head was "substantially identical" to the notch in the '973 Patent. *Id.* He pointed to Figures 12, 12A, 17, 20, and 23 of the '973 Patent, which disclosed that the lower (fixed) blade extended further than the upper (moving) blade. *Id.* at 5. Melton concluded that a person of ordinary skill would understand that lower blade teeth would come in contact with the groove notch and the upper blade teeth would "work together with the comb in a non-contacting fashion as found in the prior art combs." *Id.* Melton testified that the '973 Patent does not disclose, describe or teach to one skilled in the art how to construct a "groove notch" distinguishable from the Laube Prior Art. *Id.* at 6.

Because Figure 7 of Wahl '616, reproduced above, does not demonstrate that the front edge of the comb is in contact with the cutting teeth, the Laube Prior Art was more pertinent than Wahl '616 to the prosecution of the '973 Patent.

//

//

//

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

The Laube Big K Comb, which is part of the Laube Prior Art, is shown below in Figures 1 and 2,
together with Melton's annotations.



**Figure 1: Angled side view of the Laube Big K Comb**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|----------|--------------------------|------|---------------|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |



**Figure 2: Angled top view of the Laube Big K Comb**.

The groove notches depicted in Figures 1 and 2 above appear to be very similar to the groove notch (34) depicted in Figures 24A and 27 of the '973 Patent, and Laube himself cannot distinguish them via visual inspection. Bench Trial Tr., Dkt. No. 417 at 42:17-24.

///

///

///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

### D.   Overview of the Testimony Presented

####    1.   Laube Deposition

Laube testified at a deposition on November 27, 2010. Dkt. No. 196. During his testimony, he distinguished the '973 Patent from the Laube Prior Art by stating that the '973 Patent claimed a "four-sided comb" (with side elements), rather than a two-sided one.[3] *Id.* at 68:16-22. Laube testified that there was a difference in size and material between the prior art Laube comb and the comb claimed in the '973 Patent.[4] *Id.* at 169:13-19. Laube also testified that the prior art Laube comb "was designed for the groove notch to clamp onto the lower blade without consideration of the relationship to the upper cutting blade," whereas the groove notch in claim 1 needed "a close working relationship" that "allow[ed] the upper blade to work in combination with the hair being fed through the comb teeth to the upper blade . . . ."[5] *Id.* at 127:1-4, 10-11, 128:7-9. Laube was unable to distinguish the '973 Patent from the prior art by describing any differences in size and dimensions. Laube confirmed that his comb attachments did not touch the upper (moving) blade, and conceded that there was no difference with respect to the manner in which the '973 Patent and the prior art Laube comb touched the lower fixed blade. *Id.* at 123:8-9, 174:7-13.

####    2.   Beech Declaration

KLC filed an unsigned draft of the Declaration of Dennis W. Beech, Esq. as an attachment to Plaintiffs' Objections to Wahl's Proffer and Plaintiffs' Provisional Tender. Dkt. No. 387-2. At the beginning of the bench trial, Wahl objected to the unsigned declaration. Bench Trial Tr., Dkt. No. 417 at 7:3-9. At that point, Beech then amended and executed the declaration ("Beech Declaration"). The Beech Declaration states that Beech has written and prosecuted "hundreds, if not thousands of patent applications" as a patent attorney. Beech Decl., Dkt. No. 412 at 2. Beech also declared that Laube would provide him with "information regarding clipper combs" so that he "could prepare and prosecute the application." *Id.* Beech also declares that it was his intention throughout the prosecution of the '973 Patent and reexamination "to provide the Patent office with full disclosure of all pertinent and prior art that was pertinent to the prosecution without being duplicative." *Id.*

---

[3] This distinction does not apply to claim 1, which does not include side elements.

[4] These distinctions do not appear relevant to any of the claims of the '973 Patent.

[5] Laube first presented the argument that "engagement" referred to something other than retaining the comb on the cutting head after the '973 Patent issued. '973 Reexam, Dkt. No. 422-2, Trial Ex. 2262 at 0681. There is no reference to this position in the specification or original prosecution history.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

3.   <u>Laube's Live Testimony</u>

During cross-examination, Laube testified that he would have shown Beech everything relevant to the '973 Patent application in his possession because "[t]hat's the way [he] worked with Mr. Beech for years." Bench Trial Tr., Dkt. No. 417 at 27:7-10, 5-6. Laube testified that he would have provided to Beech a Laube blade comb advertisement (Trial Exhibit 39), the KLC 1996 brochure (Trial Exhibit 40), the KLC 1997 brochure (Trial Exhibit 41), and the KLC January 1996 distributor price schedule (Trial Exhibit 42) prior to December 29, 1998, when the original application was filed. *Id.* at 27:21-29:11. Laube conceded that he had no documents showing what prior art he had actually provided Beech, but asserted that the presence of the ghosted comb in Figure 13 of the '973 Patent indicated that Beech must have seen the prior art Laube provided. *Id.* at 34:25-35:4, 41:1-10. Although he could not specifically recall his first meeting with Beech with respect to the '973 Patent, Laube maintained that he gave physical exemplars to, and had discussions about his invention with, Beech. *Id.* at 35:5-36:1. When pressed about the differences between his prior art combs and his patented invention, Laube stated that there was "a deeper[]groove notch" which allowed the "upper[]moveable blade to engage closer with the fixed-comb teeth to provide a better feed for the hair to go into the cutter blade." *Id.* at 38:2-15. Laube also pointed to the side elements as a distinguishing feature. *Id.* at 38:16-21. When asked to compare the groove notch of his prior art Laube comb and his patented invention, Laube admitted that he would not be able to distinguish them dimensionally without calipers. *Id.* at 42:17-24.

Laube testified that the '973 Patent differed from Wahl '616 because the latter is "a little beard trimmer" and that there is a gap in Wahl '616 between the notch and the two blades and no side elements. *Id.* at 55:1-10. When asked whether the prior art Laube combs were closer to the '973 Patent claims than Andis '616, Laube did not answer directly, but admitted that Andis '616 did not disclose a spring clip (which was present in the Laube Prior Art) and claimed that he could not be sure whether Andis '616 disclosed a groove notch without reading the entire patent. *Id.* at 59:21-60:16.

On redirect, Laube stated a position, which is discussed below in greater detail, that the withheld prior art was cumulative because U.S. Patent No. 2,718,696 to Green ("Green '696"),[6] although

---

[6]  The examiner considered Green '696 for the first time after Wahl filed for reexamination, not during the prosecution of the '973 Patent. Dkt. No. 420-2, Trial Ex. 2262 at 0116. In the reexamination, claim 1 was rejected under 35 U.S.C. § 102(b) as being anticipated by Green '696. Dkt. No. 421-1, Trial Ex. 2262 at 0272. The examiner noted that the Green '696 comb is "capable of engaging with a clipper head having a cutter blade that is substantially as blade 19, but further having teeth and being somewhat longer so as to be within the inclined notches 17." *Id.* at 0272-73. Laube momentarily overcame this rejection in the reexamination by amending claim 1 to include side elements. Dkt. No. 421-2, Trial Ex. 2262 at 0390.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

not cited by either the applicant or examiner in the original prosecution, was within the relevant search subclass and disclosed a spring clip and groove notch, like the Millers Forge and Dubl Duck combs.[7] *Id.* at 68:10-18. Further, Laube maintained that none of Green '696, the Millers Forge comb, the ghosted comb in Figure 13 or any of the Laube Prior Art "engaged" with the upper teeth of a cutting head in the way that he intends "engaged" to be understood. *Id.* at 70:9-25. Laube testified that the term "engagement" means "a close interaction" and stated that the interaction is derived from having either the side elements or a deeper groove notch. *Id.* at 71:4-6, 73:11-14.[8] He also testified that the Dubl Duck, Millers Forge, Green '696 and his own prior art "did not have the extension of the teeth over the upper blade[] [a]nd they did not have the side elements." *Id.* at 73:18-74:3.

On re-cross, Laube admitted that a groove notch was not specifically labeled in Figure 13 of the '973 Patent*, i.e.*, KLC's position was that Figure 13 was itself an adequate disclosure of the prior art to the PTO, although Figure 13 did not, in fact, specifically disclose the feature of primary concern. *Id.* at 79:23-80:1. Laube maintained that Figure 13 disclosed a spring clip because the mention of "standard comb attachments" in the '973 Patent in reference to Figure 13 was intended to identify, for instance, the Laube Prior Art and the Dubl Duck comb, both of which had a "spring clip style mechanism." *Id.* at 82:13-83:4.[9]

### 3.   Beech's Live Testimony

On cross-examination, Beech testified that he did not remember whether Laube provided him with prior art Laube combs. He also testified that he did not have any documents that might refresh his recollection on this issue. *Id.* at 97:21-98:2. However, he admitted that if Laube told him that "engagement with the upper teeth" and side elements were distinguishing features of his invention, he "would have put that in the specification and described it . . . ." *Id.* at 104:17-22. Beech also confirmed that there was no visual difference between the notches of the patented comb and the prior art Laube comb. *Id.* at 111:13-15. When asked whether he recalled Laube ever being upset with him for not disclosing "critical features[,]" Beech replied: "No." *Id.* at

---

[7]  Millers Forge and Dubl Duck are prior art combs that existed at the time of the invention of Laube's patented comb. Laube was aware of them at the time of invention. Laube Dep., Dkt. No. 196 at 149:20-22.

[8]  This is a different meaning than that which Laube used to support the argument in the original prosecution that "groove notch 34 as illustrated in the instant application, Figures 24, 24A and 27 [is] for retention of the comb to a cutting head." Dkt. No. 402-13, Trial Ex. 2261 at 0084.

[9]  It is very significant that Laube disclosed neither the Laube Prior Art nor the Dubl Duck comb to the PTO during the prosecution of the '973 Patent. Therefore, it is of no help for Plaintiffs to argue that the PTO should have known that Figure 13 was intended to convey a spring clip simply because it referred to "standard comb attachments" such as the Dubl Duck, because the Dubl Duck was not provided. This is particularly so where, as was the case, Laube was arguing to the PTO that prior art **lacked** a spring clip. As explained below, this testimony substantially undermined Plaintiffs' overall position.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

114:10-13.

On redirect, Beech said that he would withhold information from the PTO that he felt was not necessary for the prosecution of the application and "look for what needs to be really included in the application . . . ." *Id.* at 130:12-14, 136:19-21. On re-cross, Beech confirmed that Green '696 was never mentioned during prosecution of the '973 Patent. *Id.* at 147:15-21.

## V.   <u>Analysis</u>

### A.   **Legal Standard**

#### 1.   <u>Duty to Disclose</u>

Every person who is associated with the prosecution of a patent application "has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability . . . ." 37 C.F.R. § 1.56; *See Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1351 (Fed. Cir. 2005).

#### 2.   <u>Inequitable Conduct</u>

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). The question of inequitable conduct in the procurement of the patent is relevant even after a patent is found invalid, because it bears on the question whether the case is "exceptional" for purposes of attorney fees under 35 U.S.C. § 285. *Buildex, Inc. v. Kason Industries, Inc.*, 849 F.2d 1461, 1466 (Fed. Cir. 1988) (remanding for a redetermination of inequitable conduct and for consideration of attorney fees). In response to its concern about the overuse of inequitable conduct allegations, the Federal Circuit in *Therasense* restricted the availability of an inequitable conduct charge. Thus, it held that the intent and materiality prongs of the defense must each be separately proven by clear and convincing evidence. *Therasense*, 649 F.3d at 1288-90.

To prove intent, the accuser must show that the patentee acted with the specific intent to deceive the PTO by proving that the patentee: (1) knew of the reference; (2) knew the reference was material; and (3) made a deliberate decision to withhold the reference from the PTO. *Id.* at 1290. A district court may only infer intent from indirect and circumstantial evidence if it is "the single most reasonable inference able to be drawn from the evidence" and is "sufficient to *require* a finding of deceitful intent in the light of all the circumstances." *Id.* (citing *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008); *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 873 (Fed. Cir. 1988)) (emphasis in *Therasense*).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

To prove materiality, the accuser must show that, but for the omission of the prior art, the patent would not have issued. *Id.* at 1291. Thus, a patentee's misrepresentation to the PTO that does not affect the issuance of the patent does not satisfy the materiality requirement. *Id.* at 1292. An exception to this standard is made for affirmative acts of egregious misconduct. Actions such as filing "an unmistakably false affidavit" would be considered material misconduct, whether or not but-for materiality can be shown. *Id.*

3.    Attorney Fees Under § 285 of the Patent Act

35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The purpose of § 285 is "to defend the court and the judicial system against abuse" by rectifying "the injustice done to the defendant caused by litigation brought in bad faith." *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988); *ICU Med., Inc., v. Alaris Med. Sys., Inc.*, 2007 U.S. Dist. LEXIS 34467, at *4-*5 (C.D. Cal., Apr. 16, 2007), *aff'd*, 558 F.3d 1368, 1380 (Fed. Cir. 2009). "Such fees are awarded when: 1) a court finds that there is clear and convincing evidence that the case is exceptional; and 2) the court then exercises its discretion to award fees to the prevailing party." *ICU Med.*, 2007 U.S. Dist. LEXIS 34467, at *3. "A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or **inequitable conduct in procuring the patent**, misconduct during litigation, vexatious or unjustified litigation, conduct that violates [Fed. R. Civ. P.] 11, or like infractions." *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) (emphasis added). "Absent misconduct in conduct of the litigation or **in securing the patent**, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Id.* (citing *Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60-61 (1993)) (emphasis added).

Whether a case is exceptional is "a factual determination reviewed for clear error[,]" and a district court's determination of whether attorney fees are warranted is reviewed for abuse of discretion. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc). "Once the court finds a case exceptional, it may award fees based on 'the relevant considerations, such as the closeness of the case, the tactics of counsel, the flagrant or good faith character of the parties' conduct, and any other factors contributing to imposition of punitive sanctions or to fair allocation of the burdens of litigation.'" *ICU Med.*, 2007 U.S. Dist. LEXIS 34467, at *8 (quoting *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1380-81 (Fed. Cir. 2005)). Should an exceptional case be found, the prevailing party is entitled to "the portion of its attorney fees which related to the vexatious litigation strategy and other misconduct." *Id.* (quoting *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553 (Fed. Cir. 1989)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

**B.    Application**

1.    <u>Inequitable Conduct - Intent</u>

a.    *Laube Knew of the Reference; Beech Did Not*

Wahl has established Laube's knowledge of the Laube Prior Art. Laube admitted his familiarity with it, and it originated from Laube and KLC. Laube Dep., Dkt. No. 196 at 86:7-92:9. Laube also testified that he gave Beech the prior art Laube combs, along with the Laube brochure. *Id.* at 154:6-11, 163:3-6.

Beech declared that he did not specifically remember what relevant art he had in his possession other than the art cited in the patent application file and issued patent. Beech Decl., Dkt. No. 412 at 3. Beech further testified that he did not include references that he determined to be duplicative, in accordance with his understanding of PTO practices and procedures and Federal Circuit cases. *Id.* at 2.

Based on its observation of Beech's demeanor and testimony at trial, the Court finds him credible and draws the reasonable inference from his testimony that Beech would have provided the Laube Prior Art to the PTO if Laube had given it to him. Thus, the Court is persuaded by Beech's overall presentation that he would have acted in conformance with his professional obligations. The Laube Prior Art bore directly on the question of whether prior art combs had spring clips and groove notches for retaining the comb on the cutting head. Again, nothing in Beech's demeanor or testimony suggested that he would have knowingly withheld that art from the PTO, with the attendant professional consequences such withholding could entail. To the contrary, the proper inference to be drawn from his testimony is that he would have disclosed such information. The Court, therefore, concludes that Beech did not have knowledge of the reference. KLC's contention that Beech must have known about the Laube Prior Art because Figure 13 was included in the patent is unpersuasive, because neither Figure 13 nor the corresponding text illustrates or otherwise discloses the relevant aspects of the spring clip and groove notch. These are features that were central to the prosecution; Beech argued to the PTO that they were not contained in the prior art.

b.    *Laube Knew that the Reference was Material and Made a Deliberate Decision to Withhold It*

Conversely, the Court concludes, based on the content of Laube's testimony as well as his demeanor and the tone and manner in which it was presented, that Laube deliberately withheld the Laube Prior Art from Beech. Thus, unlike Beech, Laube was not a credible witness on this issue. Indeed, throughout his testimony, Laube sought to provide evasive answers to direct

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

questions by referring to his unfamiliarity with, and lack of understanding of, patents and the prosecution process. This was unconvincing both in its substance and in the manner in which it was stated. Thus, at other times Laube demonstrated a substantial knowledge of patents and presented sophisticated arguments about disclosure and materiality based, *inter alia*, on PTO search practices. This testimony included assertions about what prior art the examiner reviewed based on the content of the PTO sub-classifications listed on the patent.

At many times throughout his testimony, Laube professed a lack of sophistication concerning patents. This was unconvincing. Together with the Court's observation of Laube's demeanor during his examination, these assertions appeared to have been an attempt to evade questions. Some examples follow:

1. When asked whether he had any record of providing the Laube Prior Art to Beech, Laube said, "I don't know what you mean, 'Record'," and then launched into his explanation for why he believes that he provided the prior art to Beech."[10] Bench Trial Tr., Dkt. No. 417 at 26:22-27:5.

2. When asked whether there was anything that would confirm that he provided his prior art to Beech, *id.* at 34:9-11, Laube responded: "The patent itself," referring to the convoluted and unpersuasive argument that Figure 13 was an adequate disclosure of the Laube Prior Art.[11] *Id.* at 34:12.

3. When asked why the "important distinctions" of his invention were not found in the patent if he had met and explained these distinctions to Beech, Laube replied that he was not a patent attorney and that patent attorneys have "very different

---

[10] Laube also expressed confusion about the word "interpret" when asked how he understood claims 1-7 of the '973 Patent. Laube Dep., Dkt. No. 196 at 54:5-14. He asked, "Are you saying do I understand, do I understand law or do I understand what a judge defines it as or do I understand it the way the patent office defines it as? I don't understand those things. I'm not an attorney." *Id.* at 54:9-14. Even when the question was re-framed to ask how he interpreted the claims from the perspective of a person of ordinary skill in the art, Laube continued to evade question by saying that it was legal language. *Id.* at 54:19-56:2.

[11] Similarly, when asked during his deposition to describe the differences between the prior art Laube comb and his patented comb, Laube answered, "It's listed in the patent itself. The differences would be in the patent itself." Laube Dep., Dkt. No. 196 at 45:4-9. Laube was also asked to distinguish between the way the comb attached to the front edge of the cutting head in the prior art Laube combs and his patented invention. *Id.* at 85:11-14. He responded, "Well, it's defined in my patent. It's defined in my patent for you." *Id.* at 85:15-16. When asked where specifically, Laube said, "You have to look in the claims. You're the patent attorney. You are the patent expert. You know what that says. I'm not an attorney." *Id.* at 85:23-86:3.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

ways of thinking and different language . . . that [they] utilize."[12]  *Id.* at 47:2-11.

4. When asked whether he expected the important distinctions of his invention over the prior art to appear in the claims, Laube replied, "I'm sure I had expectations about things; but . . . the patent office . . . makes up their mind about what's inventive or what's not, and then they let you have it or they don't let you have it." *Id.* at 49:18-50:1. He further noted that he was not "involved"[13] in the communications between his patent attorney and the USPTO. *Id.* at 50:3.

5. When asked whether he intended the PTO to believe the statements made in response to the Office Actions, Laube evaded the question, instead answering that his attorney puts what Laube tells him about his invention into "the legal language that comports with what the patent rules are." *Id.* at 64:24-65:9.

6. When asked whether, if "engagement with the upper teeth was an important feature," Laube "would have clearly described [it] in the patent specification to distinguish over the prior art," Laube said that "the patent attorney writes that for you." *Id.* at 88:16-89:5.

7. In response to the question of whether he believed that the claims outlined his invention, Laube said, "I don't write claim language, so I don't really understand all of the finite definitions that patent attorneys and the courts put on claim language." Laube Dep., Dkt No. 196 at 50:22-51:5. He further stated that Beech explained what those claims meant 15 years ago and "understood exactly what was . . . explained to [him] at the time[,]" but did not "recall the specificity of it." *Id.* at 53:11-20.

All of these statements reflect only one aspect of Laube's testimony. At other times, it was clear that Laube possessed a greater degree of sophistication with regard to patents. This

---

[12] Laube also demurred on the ground that claim language was "big language" and that he "didn't get [a] privileged education . . . ." Laube Dep., Dkt. No. 196 at 55:3-6. When asked whether he was prepared to testify to any terms in claims 1-7, he stated, "That's not within my scope, no. I wouldn't do that." *Id.* at 61:14-18. In response to being asked what his definition of a spring clip was, Laube said, "I don't have a definition of a spring clip. The definition would be what's put in my patent by my patent attorneys." *Id.* at 62:16-19. Although he admitted that he did have an understanding of what a spring clip was, Laube stated that "as an inventor, I would go to a patent attorney, to help put that in the proper format and the proper language. That's the American way." *Id.* at 62:20-63:8. Laube also refused to characterize the notch in his prior art Laube comb as a groove notch because he did not know that "the legal definitions and what [his] understanding would necessarily be aligned the same way." *Id.* at 121:1-15.

[13] Laube was here apparently using a narrow meaning of the word "involved," since both he and Beech testified that they would work through the Office Actions together. Laube Dep., Dkt. No. 196 at 176:10-177:9; Bench Trial Tr., Dkt. No. 417 at 116:23-117:8.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

inconsistency had a significant, adverse effect on Laube's overall credibility.

For example, Laube was asked whether the examiner would have found "means for retention of the comb using a notch" in the Laube Prior Art if the examiner had it before him. *Id.* at 55:19-22. Instead of answering the question, Laube delivered what looked and sounded like a rehearsed argument: that the examiner had seen prior art equivalent to the Laube combs because the examiner listed the same class and subclass in his field of search as Green '696, which Laube considers to be similar to the prior art Laube combs, Millers Forge combs, and Dubl Duck combs. *Id.* at 55:23-56:3. Therefore, Laube argued, the examiner had seen his invention as an improvement "over the two side clamp on combs" represented by that prior art and "issued [the '973 patent] over that prior art." *Id.* at 56:3-5.

Laube was then asked whether listing a class and subclass in the field of search meant that the examiner considered every patent within the class and subclass. *Id.* at 56:20-23. Laube responded, "Well, he listed the field of search[] [a]nd I can't imagine that a person working in that capacity would be deceptive and say that he searched that and then not do that." *Id.* at 56:24-57:2. He further testified that the examiner "picked out the [patents] that he felt were relevant . . . [and] would have had [an] impact on my patent." *Id.* at 58:3-5. Laube even specifically opined that Green '696 was not cited by the examiner because "[the examiner] looked at that field, and then he picked out the ones that he felt that he wanted to have comments about and send back to my attorney saying, you know, you need to look at this patent here and how does this interact or how does this differ from what you have."[14] *Id.* at 58:13-18. Further, Laube advanced the argument that anyone who thought the Laube Prior Art was material would be "disagreeing, **obviously**, with the examiner who issued over the exhibit 37 [a prior art Laube comb] with the Green ['696] patent." *Id.* at 86:2-3 (emphasis added).

In short, when advantageous, Laube was savvy enough about patent prosecution to articulate the argument that: (1) the Laube Prior Art is equivalent to the Green '696 patent, (2) while never cited anywhere in the '973 Patent prosecution history, the Green '696 patent must have been considered by the examiner because it is in the subclass that the examiner searched, so, (3) the Laube Prior Art was cumulative and Laube need not have submitted it. That argument requires not only at least a professed knowledge about how examiners conduct searches, but also a comparison of Green '696 to Laube's own prior art, which is a bit of a surprising comparison to be made by Laube, who professes to be unable to compare his own prior art to the claims of his own patent.

---

[14] Laube made similar arguments in his deposition testimony, where he directed the deposing attorney to the field of search to prove that the examiner had examined expired patents as prior art. Laube Dep., Dkt. No. 196 at 161:12-162:1. In addition, he authoritatively stated that "[t]he examiner that issued the patent looked at [Wahl '616] and said, it means nothing." *Id.* at 186:7-9.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

Beech's amended paragraph 5 of his draft declaration by hand at the bench trial as follows:

> 5.    As has always been my practice, once the patent application has been filed, *and the patent has issued the provided art was* I returned the ~~duplicative art~~ to my client since there would be no need to refer to it further ~~during prosecution of the patent.~~  Therefore, it is not possible for me to determine precisely what *relevant* ~~prior~~ art I determined was duplicative.

Beech Decl., Dkt. No. 412 at 2. The changes highlight an important distinction that provides further support for the inference that Laube did not disclose the Laube Prior Art to Beech. Thus, it could be deemed reasonable for Beech to have made a determination early in the prosecution -- before the prosecution turned specifically to the question of how the claimed combs were distinguishable from the prior art combs -- that, because the Laube Prior Art was duplicative, he would return it to Laube. In contrast, if Beech had the Laube Prior Art in front of him later in the prosecution, when he was making arguments that were directly contrary to that prior art, it would not have been reasonable or ethical for him to have done so. Based on the testimony of Beech, which as noted above was very credible, the Court finds it extremely unlikely that Beech would have acted improperly in the prosecution process. Thus, the Court finds that the evidence shows that, if Beech had the prior art before him during that process, he would have disclosed it to the PTO and would have attempted to make different arguments, if possible, to overcome the prior art. *Id.* Therefore, the Court concludes that Laube withheld the Laube Prior Art.

Even assuming, contrary to the Court's finding, that Laube initially provided his prior art combs to Beech and that Beech evaluated them, determined that they were cumulative, returned them, and forgot about them, the result would be the same. Thus, it is difficult to fathom how Laube, collaborating with Beech to distinguish the Wahl reference by arguing that it lacked a groove notch to retain the comb on the clipper head, Dkt. No. 402-13, Trial Ex. 2261 at 0084, at a time that Laube knew of the Laube Prior Art, which contained that precise feature, did something other than deliberately withhold it from the PTO.

Beech testified that he informed Laube of his duty of disclosure to the PTO. Bench Trial Tr., Dkt. No. 417 at 98:9-11. Furthermore, both Beech and Laube confirmed that they would work through the Office Actions together. Laube Dep., Dkt. No. 196 at 176:10-177:9; Bench Trial Tr., Dkt. No. 417 at 116:23-117:8. Laube would review the prior art cited by the PTO and provide Beech with his technical input. Laube Dep., Dkt. No. 196 at 176:10-177:9; Bench Trial Tr., Dkt. No. 417 at 116:23-117:8. There were at least three occasions during the prosecution of the '973 Patent when Laube should have been reminded to disclose his own prior art: when Laube was collaborating with Beech regarding their responses to the PTO's Office Actions of January 31, 2001, July 10, 2001, and March 1, 2002. In considering these events, it is relevant that Laube

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|----------|--------------------------|------|----------------|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

had continuing involvement in responding to each Office Action. Laube Dep., Dkt. No. 196 at 176:10-177:9; Bench Trial Tr., Dkt. No. 417 at 116:23-117:8. The details of these three actions are as follows:

*January 31, 2001 Office Action:* On January 31, 2001, the PTO issued an Office Action in the '454 Application, rejecting claim 20 (issued claim 1) under 35 U.S.C. § 102(b) as anticipated by Andis '616.[15] Dkt. No. 402-6, Trial Ex. 2258 at 0084. Laube's response was to distinguish Andis '616 by arguing that it lacked a groove notch and spring clip. *Id.* at 0105. Because the Laube Prior Art does have a groove notch and spring clip, Laube should have been reminded to disclose the Laube Prior Art to Beech when preparing the response that distinguished claim 20 over Andis '616. Instead, Laube pointed out that, instead of a spring clip, the blade carrier in Andis '616 "is attached by means of screws and is intended to support the cutting teeth." *Id.* Laube's response did not disclose that the Laube Prior Art had a spring clip for attachment. In addition, Laube's response stated that "the [Andis '616] blade carrier does not have a notch that engages the blade cutting teeth to retain the blade carrier on the blades." *Id.* Laube's response did not disclose that the Laube Prior Art had such a notch.

*July 10, 2001 Office Action:* On July 10, 2001, the examiner issued a second Office Action in the '454 Application that again rejected claim 20 pursuant to 35 U.S.C. § 102(b) as anticipated by Andis '616. *Id.* at 0113. The examiner stated "that as broadly as claimed[,] the spring clip is shown by Andis." *Id.* Laube did not substantively respond to this Office Action. In working with Beech to determine how they would respond, and given his later-professed belief that the ghosted comb in Figure 13 disclosed a spring clip, Bench Trial Tr., Dkt. No. 417 at 82:16-83:4, Laube again had a clear opportunity to disclose the Laube Prior Art, even if the disclosure were as limited as "Andis does not have a spring clip, but that is immaterial, because Figure 13, which applicant intends as a disclosure of the prior art, itself has a spring clip (even though the specification does not say so) and is intended to be a disclosure equivalent to the Laube Prior Art, Dubl Duck comb, and Millers Forge comb (which applicant has not disclosed)." Laube made

---

[15] The examiner had previously relied on Andis '616 to reject Laube's original comb claim. That action, however, did not as clearly require Laube to disclose the Laube Prior Art. Thus, the details of that prior action are as follows: On September 9, 2009, the examiner issued an Office Action in the original application in the chain, the '049 Application. Dkt. No. 402-4, Trial Ex. 2257 at 0024. That Office Action, *inter alia*, rejected original claim 8, which was the only claim directed to a comb element. *Id.* at 0027. The rejection was made pursuant to 35 U.S.C. § 102(b) on the grounds that "Andis ['616] shows the claimed thin blade." *Id.* Although the rejection of the comb claim might have focused Laube on his own prior art combs, the claims were mostly directed to the clipper blades. Claim 8 did not describe the interaction of the clipper head with the comb other than to say that they were to be attached to each other. *Id.* at 0016. Laube did not respond to the Office Action and instead filed a continuation-in-part application (the '454 Application) that did not use the language of claim 8. Dkt. No. 402-5, Trial Ex. 2258 at 0004. Although the rejection provided an opportunity to reflect on how the comb claims differed from the Laube Prior Art, the path pursued -- redrafting of the claims for the '454 Application -- did not place that question into the same sharp relief that resulted from later developments.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

no such disclosure.

**March 1, 2002 Office Action:** Instead of responding to the July 10, 2001 Office Action in the '454 Application, Laube pursued another continuation-in-part application -- the '645 Application -- that he had previously filed on June 27, 2000. Dkt. No. 402-7, Trial Ex. 2259 at 0003. The comb claims in that application were eventually pursued in a divisional application -- the '547 Application -- which led directly to the issuance of the '973 Patent. Dkt. No. 402-11 and -12, Trial Ex. 2261 at 0044-45. On March 1, 2002, the examiner issued an Office Action rejecting claim 20 (issued claim 1) over Wahl '616. Dkt. No. 402-13, Trial Ex. 2261 at 0081. The examiner found that Wahl '616 disclosed a comb having "a spring portion on the end opposite from the teeth which is used fo[r] attaching the assembly to the clipper." *Id.*

Laube's response to this Office Action argued that "[Wahl '616] as well as the **other art** such as Andis ['616] does not disclose nor anticipate the use of a groove notch 34 as illustrated in the instant application, Figures 24, 24A and 27, for retention of the comb to a cutting head." *Id.* at 0084 (emphasis added). Of course, the Laube Prior Art does have a groove notch for retention of the comb to a cutting head, so it is hard to see how Laube could have overlooked that there was an obligation to disclose it at that time.[16]

> 2. <u>Inequitable Conduct - Materiality</u>

The Laube Prior Art fulfills the materiality requirement. It demonstrates the precise feature that Laube argued was missing from the Wahl reference (groove notch for retention of the comb to a cutting head), the absence of which convinced the examiner to issue the '973 Patent. Dkt. No. 421-1, Trial Ex. 2262 at 0280.

Laube argues that the Laube Prior Art is not material because Green '696, although not cited by the examiner, disclosed by the applicant, or discussed in the prosecution history, is within one of the subclasses searched by the examiner. Pl.'s Addendum to Proposed Findings of Fact and Conclusions of Law, Dkt. 407 at 2. Therefore it should be presumed to have been reviewed.[17]  *Id.*

---

[16] Wahl also urged additional bases for finding inequitable conduct, such as the nondisclosure of the Laube "Dr. Slick" lubricant in relation to claim 2 of the '973 Patent. Def.'s Post-Trial Br. on Inequitable Conduct, Dkt. 416 at 2. However, it is unnecessary to reach such issues.

[17] Much of the case law on the question of the effect of an examiner's consideration of a reference concerns the presumption of validity and predates the Supreme Court's clarification of that question in *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238 (2011) (holding that the presumption of validity and the clear and convincing evidence standard applies regardless of whether the PTO considered a reference, but noting that a challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain where the PTO has not considered a reference). The Federal Circuit has held that it "treat[s] the issued patent as having a presumption of validity that must be overcome by clear and convincing evidence" but declines to defer to the examiner's findings, stating that there is no additional burden "to overcome PTO findings in district court

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|---|---|---|---|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

In the context of inequitable conduct, an examiner's "search of an art class containing a certain reference," does not "as a matter of law, [lead] to the presumption that the reference was discarded by the examiner as irrelevant." *Driscoll v. Cebalo*, 731 F.2d 878, 885 (Fed. Cir. 1984), disapproved of on other grounds by *Kingsdown*, 863 F.2d at 867, and abrogated as to the applicable standard by *Therasense*, 649 F.3d at 1276. "It cannot be presumed, where fraud or other egregious conduct is alleged, that the PTO considered prior art of particular relevance if it was not cited." *Id.*; *see also FMC Corp. v. Hennessy Indus., Inc.*, 836 F.2d 521, 526 (Fed. Cir. 1987) (holding that where examiner conducted a search of the class and subclass which contained the omitted prior art, "[t]hat indication of a generalized search would not of itself relieve [the patentee] from the duty of candor.")

2.    Attorney Fees Under § 285 of the Patent Act

When a party has engaged in "inequitable conduct in procuring the patent," the matter may be deemed exceptional. *Brooks*, 393 F.3d at 1381. Here, the trial evidence showed that Laube deliberately withheld the Laube Prior Art from the PTO in order to obtain the '973 Patent. Laube's testimony revealed that he knew a great deal more about patents and patent prosecution than he was willing to admit in response to straightforward questions. For this reason, and those stated earlier, Laube's testimony -- that he provided the Laube Prior Art to Beech -- was not credible. As noted above, both Laube and Beech testified that they would review Office Actions together. This shows that Laube should have been reminded to disclose the Laube Prior Art at least three times throughout the prosecution of the '973 Patent.

Because Laube engaged in inequitable conduct, this case is exceptional, and the Court may award "reasonable attorney fees" to Wahl, the prevailing party. *Brooks*, 393 F.3d at 1381; 35 U.S.C. § 285. Thus, Wahl is entitled to "the portion of its attorney fees which related to the . . . misconduct." *ICU Med.*, 2007 U.S. Dist. LEXIS 34467, at *8 (C.D. Cal., Apr. 16, 2007).

**VI.    Conclusion**

For the foregoing reasons, Wahl is entitled to the recovery of attorney fees. Therefore, Wahl is ordered to submit a request for the award of its relevant attorney fees. They are to be limited to the patent aspect of the case and must be identified with specificity for ease of review. Wahl's attorney fees request shall be submitted on or before July 29, 2013. Laube's objections to the general request and to any particular fee items shall be submitted by August 12, 2013. Wahl's reply to Laube's objections shall be submitted by August 19, 2013. Thereafter, the Court will determine whether a hearing is necessary as to the request and objections. Upon the completion

---

infringement proceedings . . . ." *Novo Nordisk A/S v. Caraco Pharm.*, No. 2011-1223, 2013 U.S. App. LEXIS 12251, at *26, *27 (Fed. Cir. June 18, 2013). In addition, "[n]either [is the Federal Circuit] persuaded that the presence or absence of PTO findings on particular issues affects the basic presumption of validity." *Id.* at *27.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | July 18, 2013 |
|----------|-------------------------|------|---------------|
| Title | Kim Laube & Co. v. Wahl Clipper Corp. | | |

of the process, Wahl shall submit a proposed judgment, with any objections to its substantive content to be filed by Plaintiffs within 10 days of service of the proposed judgment.

Counsel shall contact the Court's Clerk by July 19, 2013 to make arrangements to have all exhibits returned.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    ak