1  **Daniel J Kessler, Esq.**
Burkhalter Kessler Clement & George LLP
2  2020 Main Street Suite 600
Irvine, CA 92614
3  T: 949-975-7500
F: 949-975-7501
4  Email: dkessler@bkcglaw.com

5  Kent A. Rowald, Esq. *admitted Pro Hac Vice*
**LAW OFFICES OF KENT A. ROWALD, P.C.**
6  20333 State Hwy 249, Suite 200
Houston, Texas 77070
7  Telephone: (281) 516-3844
Facsimile: (281) 516-3845
8  Email:  KRowald@PatentLawyers.com

9  Attorneys for Plaintiffs
KIM LAUBE & COMPANY, INC.
10  and KIM LAUBE

11
            UNITED STATES DISTRICT COURT
12
    CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
13

14  KIM LAUBE & COMPANY, INC., a        Case No.  CV09-914 JAK(JC)
    California corporation;  KIM
15  LAUBE, an individual,                **PLAINTIFFS' RESPONSE AND
                                         OPPOSITION TO DEFENDANT'S
16         Plaintiffs,                    MOTION FOR ATTORNEYS FEES,
                                         COSTS AND EXPENSES (DKT. 481)**
17         v.

18  WAHL CLIPPER CORPORATION,
    an Illinois Corporation; and DOES 1
19  to 10, Inclusive,

20         Wahl.

21        COMES  NOW,  Plaintiffs  KIM  LAUBE  &  COMPANY,  INC.  and  KIM

22  LAUBE (hereinafter collectively referred to as "Laube" unless otherwise identified)

23  and submit this Response and Opposition to Wahl's Motion For Attorney's Fees,

24  Costs and Expenses (Dkt 481) and would show as follows:

25
26
27
28

## I.   Wahl's Motion is Untimely

### A.   Wahl's motion was not filed within the statutory time.

Initially, Wahl's Motion is premised upon a claim that "Wahl was prepared to file this Motion by November 21, 2013, within 14 days of the entry of judgment as required by FRCP 54 and LR 54-10, but was unable to do so in light of the automatic stay imposed by Plaintiffs' bankruptcy filings, effective November 20, 2013." Motion, Pg. 1, ll. 12-15. See also FRCP Rule 54(d)(2)(B) ("*Timing and Contents of the Motion.* Unless a statute or a court order provides otherwise, the motion <u>must</u>: (i) be filed no later than 14 days after the entry of judgment."). Wahl's premise is simply not cognizable as a matter of law.

Here there is no statute or court order which provides otherwise, making the 14 days a mandatory deadline, which Wahl admits it failed to meet. Moreover, Wahl has not requested an extension of that deadline and they are too late to do so now.

Wahl admits that the Motion was due on or before November 21, 2013 pursuant to FRCP Rule 54(d)(2)(B). However, Wahl did not file the Motion until December 12, 2013, ostensibly relying on Laube's filing for bankruptcy to be a tolling event. However, Laube's bankruptcy did not prevent the judgment from becoming final.

A "judgment," for purpose of the Federal Rules of Civil Procedure, is defined to "include[] a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a). There is no question here that the judgment was final – an appeal was in fact timely filed and briefing has commenced!  The filing for bankruptcy did not affect the mandatory timing provision of FRCP Rule 54(d)(2)(B) and Wahl's application for additional attorney's fees should be denied as untimely. *Weyant v. Okst*, 198 F.3D. 311 (2d Cir. 1999); *Bailey v. County of Riverside*, 414 F.3d 1023 (9th Cir. 2005).

## II.     Laube's Bankruptcy Did Not Prevent Timely Filing

Wahl seeks to have the fact that both Kim Laube and Kim Laube & Co, Inc. filed for bankruptcy somehow excuse timely filing of the application for additional attorney's fees to be awarded.  However, the bankruptcies did not affect the filing of the application or stay consideration of such an application.  In this case, Wahl seeks to have all claims in this case treated as though they were subject to the automatic stay in bankruptcy such that the stay would have prevented Wahl from filing its supplemental attorney's fees claim in a timely fashion.  As Wahl knew from its research on this very issue in this case, Wahl is simply wrong as a matter of law.

It is disingenuous for Wahl to now argue that the stay applied in an attempt to excuse its clearly missed mandatory deadline when its own billing summaries, sworn to be accurate by Joan Long, counsel for Wahl, notes (among many other entries noting bankruptcy matters) two entries on August 16, 2010, "Confer with Joan Long on various bankruptcy issues raised in IP case and bankruptcy filing by Laube & Co. (.40); **review Bankruptcy Code on tolling of claims and relief from the stay** (.40); review and revise e-mail on bankruptcy issues; confer with Joan Long on same (.40)." (entry by Peter A. Clark) and "Correspondence with bankruptcy counsel re effect of bk stay in bringing counterclaims and options for filing in bk action. (entry by Joan Long), two separate entries by two different attorneys on October 13, 2010 stating   "Correspondance (*sic*) with bankruptcy counsel and **research to support BK stay inapplicable and revise argument.**" (entry by Joan L. Long) and "Researched cases regarding **applicability of automatic stay, under Bankruptcy Code to actions brought by debtor prepetition** and drafted summary of cases." (entry by Timothy S. McFadden); and on August 21, 2013, "Telephone conference with team and P. Clark regarding **possible implications of anticipated KLC bankruptcy filing on judgment**

OPPOSITION TO MOTION FOR ATTORNEYS FEES (DKT 481)                    PAGE 3

**entered in favor of Wahl**;" (Entry by Valerie B. Mullican).   Dkt 482-17, pg. 139, pg. 24, 134.

In fact, Wahl's time entries correctly reflect that the automatic stay does NOT apply to the claims at issue here.  The basis is relatively straightforward:

> All proceedings in a single case are not lumped together for purposes of automatic stay analysis. ... Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, cross claims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay.

*Parker v. Bain,* 68 F.3d 1131, 1137 (9th Cir.1995)**.**

Wahl cannot even suggest that its attorney's fees application arises from its counterclaims, which arguably could have been stayed.  Rather, the motion leaves no doubt that the application arises from solely from Laube's claims.   Wahl apparently knew, but chose to ignore and hope the Court likewise ignored, that:

> The automatic stay is applicable only to proceedings against the debtor. *See Parker,* 68 F.3d at 1136 ("`[S]ection 362 should be read to stay all appeals in proceedings that were originally brought 730*730 against the debtor ....'") (emphasis omitted) (alteration in original) (parallel citation omitted) (quoting *Ingersoll-Rand Fin. Corp. v. Miller Mining Co.,* 817 F.2d 1424, 1426 (9th Cir.1987)). "This rule finds its source in the language of section 362, which extends the automatic stay to the *continuation,* as well as the *commencement,* of an action against the debtor." *Id.* (emphasis in the original).

*In re Miller*, 397 F. 3d 726, 729-30 (9th Cir. 2005).

As in this case, in *In re Miller*, a fee application was at issue.  In *Miller*, the fee application was based upon the <u>creditor's</u> claims and was thus stayed. However, as noted above, Wahl's fee application here is clearly based solely on <u>debtors'</u> claims, which are clearly <u>not</u> stayed.

Simply put, when Wahl's counterclaims are disaggregated from Laube's claims (as they must be under prevailing jurisprudence), Wahl's counterclaims were stayed while Laube's claims were not. Consequently, Wahl's reliance on the automatic stay in bankruptcy is clearly misplaced and improper. As a result, Wahl's supplemental claim for attorney's fees is simply late due to its own clearly researched choice. Thus Wahl's reliance on that excuse must fail as a matter of law and the motion should be dismissed as untimely.

### III.    Even with no stay, Wahl's motion could not be filed timely without violating local rules and even now Wahl violated those rules.

Not only is the bankruptcy stay a red herring, but Wahl did not meet and confer in a timely fashion so that they could have met the deadline and followed the local meet and confer rules. Wahl did not even seek to set up a meet and confer until sending an email on November 14, 2013, seeking to set up a "conference of counsel pursuant to Local Rule 7-3 …on either Friday, November 15 or Monday, November 18." See Mark Hagedorn email dated November 14, 2013, **Exhibit A** hereto.

Local rule 7-3 states in pertinent part:

> ***L.R. 7-3 Conference of Counsel Prior to Filing of Motions***.
> …counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, *preferably in person,* the substance of the contemplated motion and any potential resolution. If the proposed motion is one which under the F.R.Civ.P. must be filed within a specified period of time (*e.g.*, a motion to dismiss pursuant to F.R.Civ.P. 12(b), or a new trial motion pursuant to F.R.Civ.P. 59(a)), then **this conference shall take place at least five (5) days prior to the last day for filing the motion**; otherwise, the conference shall take place at least ten (10) days prior to the filing of the motion. If the parties are unable to reach a resolution which eliminates the necessity for a hearing, counsel for the moving party shall include in the notice of motion a statement to the following effect:

"This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date)."

With a November 21, 2013 deadline to file the motion, a conference on November 18, 2013 (when the early meeting of counsel in fact occurred) simply means that due to its own delay, Wahl could not comply with Local Rule 7-3 and meet the FRCP Rule 54(d)(2)(B) deadline.   Thus, even without the bankruptcy filing, Wahl's motion would have been subject to dismissal as untimely or as violating the timing rules in the Local Rules.

Clearly Wahl was not prevented from filing by the bankruptcy filing and could not have timely filed without violating the local rules.  Even now, Wahl has failed to make the mandatory statement that an early meeting of counsel was had, leaving Wahl out of compliance with the local rules.   Wahl simply missed its known deadline and is trying to create confusion to avoid the consequences.  Such gamesmanship should not prevail and the motion should be denied as untimely and as failing to meet the local rules.

## IV.    Even If Considered, Wahl's Proffer Wholly Fails

Even if the Court does not dismiss the late fee application as it should, Wahl has in any event wholly failed to meet their burden to show that Laube acted in bad faith or pursued this action for any improper purpose.

As an initial matter, Wahl improperly relies upon Laube's settlement offers to impute bad faith and liability.  While Laube's offers were based on the reports of their expert reports and Laube's good faith belief that Wahl was liable on each of the bases set forth in the complaint, they are clearly inadmissible to prove liability. F.R.E. Rule 408.  As such, all of Wahl's citations and arguments regarding Laube's settlement posture should be striken and disregarded.  In the unlikely event that Wahl's arguments are improvidently considered, then the Court should likewise

consider Wahl's repeatedly requesting mediation and abject refusal to make even a single offer.  It was Wahl that negotiated in bad faith, not Laube.

Quite the opposite, Laube pursued this action to protect and enforce its patent rights and trade secrets against willful copying by Wahl.  While Laube' claim for patent infringement was ultimately dismissed on summary judgment based in large part on the Markman decision interpreting the claims differently than Laube consistently had and some of the trade secrets claims were dismissed based upon a finding that Laube had not done enough to maintain secrecy (an issue that is still contested and is subject to appeal), nothing in the decisions of the district court even remotely suggests that Laube' claims were brought in bad faith.  In fact, the Court has already found that Laube had sufficient bases to survive summary judgment and a directed verdict on the very issues Wahl now calls "baseless".  Failing to convince a jury is clearly not the same thing as having no reasonable basis to bring the suit.  The so-called "evidence" cited by Wahl in support of their fee application is nothing more than a recirculation of highly-contested arguments previously advanced by Wahl on summary judgment before the district court and transparent, self-serving testimony from one of the Wahl's counsel as to her "perception" of Laube' motives in filing suit.  Such "evidence" falls far short of Wahl' burden.

Initially, Wahl relies on Laube's settlement offer in a letter accompanying service of the initial complaint.  Seeking to settle is not indicative of bad faith and is in any event not proper to consider.  F.R.E. Rule 408.

Next in time, Wahl complains that Laube initially named Greg Wahl as a defendant and later amended to drop him in his personal capacity.  A simple check of the docket and a review of the pleadings and testimony at trial reflects Greg Wahl is the individual who Laube continues to assert visited Laube's plant, looked at all of the trade secrets and directed to have them sent to Wahl's corporate offices.

In short, Greg Wahl was personally involved.  However, there was some question regarding whether Greg Wahl was subject to personal jurisdiction and, rather than fight that issue, Laube filed an agreed amendment to drop him from the case.  That is clearly NOT indicative of bad faith, but rather good faith assertions and good faith attempts to streamline the case.

Next Wahl complains that the case was stayed beginning in February 2010.  Dkt 481, p 4, l 8.  What Wahl ignores is that the case was stayed because WAHL moved to have it stayed and Laube did not oppose that motion.  Wahl later moved to lift the stay, but as has been fully briefed several times in this case, Laube opposed since allowing the Reexamination proceeding to continue to conclusion was the most expeditious and least costly option for all concerned.  In that, that was Wahl's basis for its original motion to stay!  Again, seeking to avoid having to brief the various patent related issues in this case when the inter partes reexamination was ongoing is not bad faith, but rather a good faith attempt to reach resolution as efficiently as possible.  As noted by the Court in denying Laube's final motion to stay this case pending finalization of the reexamination proceeding or to treat the decision of the Federal Circuit Court of Appeals in the reexamination as final even though it had not (at that time) resulted in the issuance of the reexamination certificate, the issuance of that certificate should make consideration of the patent issues very abbreviated for the Court of Appeals.

Wahl next complains that the Complaint did not spell out Laube's "lever mechanism" technology and "variable speed" technology in excruciating detail.  Of course they were trade secrets and to do so would publicly disclose them.  Wahl's complaint is really thus seen as belittling Laube for disclosing the details of his trade secrets in discovery rather than in the pleadings, thereby maintaining them in secret.  Notably, Wahl continues to claim that the "variable speed" technology is nothing more than a reference to "pulse width modulation".  Wahl is simply wrong.

The trade secret includes not only what the circuitry does, but how Laube was able to shrink that circuitry to the point that it would fit in a hand held clipper. And the Court was misled by Wahl on precisely that point on summary judgment. That does not make Laube's "how it is done on the requisite small scale" any less of a trade secret. Asserting that Laube, the only party prior to Wahl who had done so on that small scale, could not possibly have believed that to be a trade secret in good faith is simply wrong. It was a trade secret at the time Wahl stole it and that is precisely why the issue is on appeal now.

Regarding the comb elements, Laube has always maintained that the combs were disclosed and claimed in Laube's patent. Only when the Court found that Laube's assertions regarding the disclosure of the patent were incorrect, in effect ruling that the comb elements that Laube believed were covered by the claims were not disclosed, did Laube accept that finding as the law of the case and assert that if they were not disclosed in the patent, they were not disclosed anywhere else prior to Wahl's taking of them, making them a trade secret at the time they were taken. In short, Wahl is seeking to put Laube to a Hobson's choice: disagree with the Court's finding that the comb elements were not disclosed in the patent or ignore that if that were true, then Wahl had stolen trade secret elements rather than patented elements. Wahl overstates its case by asserting that the Court held that the comb elements were "publicly disclosed"; instead the Court held that they were not trade secrets "because Plaintiffs had claimed all along that comb design was disclosed in the '973 patent." Dkt. 481, p. 6, l 2. Notably, the Court did NOT find that the comb elements were publicly disclosed, only that Laube contended that they were disclosed in the patent, a contention that the Court had already rejected. Either the elements were disclosed, as Laube contended and the patent findings were clearly erroneous or they were not disclosed and were thus secret. That

assertion is not indicative of bad faith, but rather of alternative pleadings based upon the Court's rejection of one theory.

Next is a long section (Dkt. 481, p. 6-8) of more improper argument regarding Laube's settlement demands. Once again, Wahl ignores that Laube's demands were consistent with the expert reports in the case and consistent with the evidence of record in the various motions. Making demands leading up to a mediation are <u>expected</u>, not an indication of bad faith. By contrast, Wahl's refusal to make any offers of any kind despite having asked for the mediations shows Wahl's bad faith litigation tactics designed to insure that Laube had no choice but to spend money responding to Wahl's meritless and outrageous conduct.

Wahl next moves to its motions for sanctions. Wahl's first motion was filed seeking confidential information prior to entry of a protective order. That order was entered before the ruling on the motion and set the tone for Wahl's later straw man motions:   See an objection, file a motion to compel, address the objection, have the motion ruled upon after the objection has been addressed. In short, Wahl filed motions that were simply unwarranted!  The third such motion was an exception: Laube asserted the attorney-client privilege as he was obligated to do to avoid a global waiver of the privilege under prevailing 9th Circuit law. When a limited waiver relating to the patent prosecution matters was accepted by the Court with the proviso that it did not waive the privilege as to the litigation matters, (Laube's proposed solution!), Wahl claimed victory. Instead, regardless of whether the order is styled as granting in limited part or denying except as to limited part offered by Laube, it is clear that Wahl did NOT get the global waiver they sought. In short, Wahl got only what Laube had volunteered before the motion was ever filed!  That is, once again, simply not bad faith on Laube's part, but rather shows Wahl's clear intent to multiply the litigation and run up costs for Laube.

Wahl next claims Laube's building of its record at trial for an appeal if necessary somehow shows bad faith.  That assertion is not explained in any fashion but rather is dealt with only in Wahl's false conclusory statement that "Plaintiffs' (have) utter lack of respect for the Court's ruling and the judicial process" and suggests that shows bad faith.  In fact, Plaintiffs continue to believe that, given all of the evidence, the jury would have found in Plaintiffs' favor, and building a record for appeal was warranted in light of the Court's rulings which excluded evidence that Plaintiffs believe should not have been excluded.  That is not bad faith; that IS the litigation process.

Wahl next turns to the jury finding that Plaintiff had not proven by a preponderance of the evidence that Kim Laube had created "the replaceable tip".  Dkt. 481, p. 12, l 18.  What Wahl ignores is that Kim Laube's claim was that he created a replaceable tip in 1989 and shared it with Greg Wahl in November 2000.  The jury apparently believed the concocted at trial story that Wahl's engineers had a round table engineering think tank charged with fixing the problem that Wahl didn't have and happened upon a remarkably similar design without considering Laube's design.  It was the Wahl design, not the Laube design on which it was based, that the jury found Laube had not created.  In short, the finding has nothing to do with Laube's assertion that he created the initial design in 1989!  Nonetheless, seizing upon the Court's later finding that there was "very little credible evidence" that Plaintiffs had created "the replaceable tip", Wahl argues that Laube's assertion that Laube created his replaceable tip and that Wahl had access to it and from the information gleaned from that access created its own ("the replaceable tip").  Wahl's initial claim that Larry Parry, a third party salesman, had created the tip and given it to Wahl was repudiated when Mr. Parry got on the witness stand and admitted that "the replaceable tip" that Wahl was making was NOT the design he had ostensibly come up with.  That led to Wahl's modified story that Wahl's

engineers brainstormed and came up with the idea independently of Laube or Larry Parry.  In short, it was Wahl who in bad faith asserted concocted stories about the origin of the replaceable tip design, not Laube.  Even Wahl's own draftsman admitted that the two designs were remarkably similar!  To assert that Wahl had access and made a replaceable tip that is remarkably similar is simply not bad faith!

On this record, it cannot be said that Laube brought meritless, groundless, or unreasonable claims against Wahl.  See *Applied Info. Scis. Corp. v. eBay, Inc*., 511 F.3d 966 (9th Cir. 2007) (attorneys' fees not warranted because there was no "compelling proof" that vendor acted capriciously or pursued litigation to harass, or that vendor intended to bring meritless or unreasonable litigation).  Where, as here, a plaintiff sues under colorable, yet ultimately losing, arguments, an award of attorneys' fees to a prevailing defendant is entirely inappropriate.  See *American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606 (6th Cir. 1999).  Plainly, the litigation brought by Laube is not based on controversial claims, and does not constitute an attempt to expand or extend the reach of existing authority.  *Fetzer*, 381 F.3d at 490-91.  Wahl fail to cite a single case where a court awarded a prevailing defendant attorneys' fees on analogous facts or circumstances.

Wahl seek attorneys' fees solely on the misguided notion that they are somehow entitled to fees simply because the Court adopted their position on Laube's claims and Laube's position on Wahl's claims.  See *Frazier v. Board of Trustees of Northwest Mississippi Reg'l Medical Center*, 765 F.2d 1278, 1293-95 (5th Cir. 1985) (discouraging use of "hindsight logic," holding party's loss on merits does not undermine validity of claims).  The imposition of fees, however, is not to be determined on a "loser pays" standard as suggested by Wahl.  See *Revlon, Inc. v. Carson Products Co.,* 803 F.2d 676, 679 (Fed. Cir. 1986) (attorney's fees are not to be used to penalize a party for "merely defending or prosecuting a lawsuit.").

OPPOSITION TO MOTION FOR ATTORNEYS FEES (DKT 481)                                    PAGE 12

It is for this reason the test requires facts, not rhetoric, to support an exceptional case.

The district court's dismissal of Laube' claims is not, without more, clear and convincing evidence that the lawsuit was brought in bad faith. *Procter & Gamble Co* , 280 F.3d at 528  *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.,* 966 F. Supp. 718, 719 (N.D. Ill. 1997); *Sunmark, Inc. v. Ocean Spray Cranberries,* 40 U.S.P.Q.2d 1213 (N.D. Ill. 1996).   Nor can Wahl show that Plaintiff's arguments were so "implausible" as to necessitate an inference of bad faith.  See *Robin Singh Educ. Serv. v. Excel Test Prep.*, 2008 U.S. App. LEXIS 18847 (5th Cir. 2008).  As the Fifth Circuit recognized in *Fetzer*, simply because a plaintiff did not prevail on its theory of the case does not give rise to an award of attorneys' fees to a prevailing defendant:

> [Plaintiff's] claims do not withstand careful scrutiny, but they are not so implausible as to necessitate an inference of bad faith. Likewise, [plaintiff's] dilution claims are novel and expansive but not so outlandish that they could not have been brought in good faith.

*Fetzer*, supra, at 490-91.

## V.    The Amount of Wahl's Claim Is Deficient in Proof

Apparently Wahl did not learn from the Court's requiring Wahl to segregate its bills in considering the Patent related fee application. Here, Wahl has presumed that everything that was not patent related is related to Laube's misappropriation of trade secrets.  Dkt 481, p 24, l 1-2.  Wahl has not appropriated even a penny to (a) Laube's breach of contract claims (which are up on appeal); or (b) Any of Wahl's claims[1], including Wahl's breach of contract claims against Laube and Wahl's breach of contract claims against Jacqueline Laube, where on each of Wahl's claims, Wahl was expressly found to have NOT prevailed on either summary

---

[1] Wahl's patent related claims are not included in this discussion since they were already dealt with by this Court and are not believed to be subject to this request for fees.

judgment (where most of the claims were dismissed) or in the jury's findings. In short, Wahl would have the Court believe either (i) that there were no claims other than Laube's patent infringement claims or Laube's trade secrets claims or (ii) that Wahl expended no time or money defending or prosecuting any other claims. That is simply preposterous!

Not only does Wahl seek to recover attorney's fees for claims other than misappropriation of trade secrets, including specifically breach of contract claims for which Wahl has acknowledged there is an express provision that the parties shall bear their own costs in the contract!

Moreover, Wahl is clearly seeking fees for claims Wahl lost in total on both summary judgment and at trial.

Additionally, Wahl seeks reimbursement for fees which are not related to the claims in this case and which have been expressly waived! For example, Wahl includes in its billing records entries that clearly relate to Wahl's claims for libel in Laube's "advertisements" (actually catalogs given to Laube dealers). Not only were those fees not even in this case,[2] they are the subject of a settlement agreement in which Wahl's claims to such fees in excess of the amount paid were expressly waived! In other words, they have already been recovered or been waived or both!

Finally, Wahl seeks to recover the costs and expenses for which Wahl acknowledges it "has not submitted a Bill of Costs to the Clerk since it is seeking recovery of the same costs from the Court in this Motion." (Dkt 481, p. 25, l. 27). However, as with this Motion, Wahl has completely missed its deadlines, even if this Motion were construed to be a Bill of Costs. Local Rule L.R. 54-3 expressly states that "Within fifteen (15) days after the entry of judgment, the party entitled to

---

[2] The Chicago case was transferred to this Court and then settled.

costs shall electronically file a Notice of Application to the Clerk to Tax Costs and shall attach a proposed Bill of Costs on Form CV-59.".  Wahl has not only let the fifteen days lapse many times over, but has not filed it as required or on the form set forth.  Simply put, Wahl has wholly failed in its basic filing requirements for the costs it now seeks.

To the extent that further objections to the form and substance of Wahl's attorney's fees claims were set forth in Laube's oppositions thereto in the briefing relating to the patent related fee award, Laube incorporates by reference such objections herein as fully as if they were set forth herein verbatim.  Moreover, even if Wahl were entitled to a fee, the infirmities in their application preclude an award of the fees sought.  Notwithstanding Wahl' efforts to recoup nearly 100 cents on the dollar, in truth, an award of attorneys' fees "is not intended to make either the client or the attorney whole, nor by any means fully compensate counsel for the time expended."  *Sierra Club, et al. v. Lynn, et al*., 364 F.Supp. 834, 851 (W.D. Tex. 1973).

Additionally, Wahl' Application is not based on community rates.  In this case, the bulk of Wahl' support for their claim of fees are the affidavits of counsel which purport to set forth the prevailing rates for lawyers nationally and those in the State of Illinois.  "[M]ere testimony that a given fee is reasonable is not satisfactory evidence of a market rate."  *Abbott v. Graves*, 2009 U.S. Dist. LEXIS 39783 at *2 (E.D. La. Mar. 31, 2009).  Moreover, to determine the reasonable hourly rate, the Court "must select an appropriate hourly rate based on prevailing community standards for attorneys of similar experience in similar cases."  *Shipes v. Trinity Indus,*. 987 F.2d 311, 319 (5th Cir. 1993).  The relevant community is that in which the court sits.  *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).  Accordingly, the appropriate hourly rates are those of attorneys practicing in the city of Los Angeles.  For that reason, Attorney Joan Long's reliance on her

own experience is not sufficiently probative of an appropriate hourly rate.  Where, as here, all Wahl has done is rely on self-serving testimony of counsel, they have not provided sufficient probative evidence of a reasonable hourly rate in the relevant "community," to wit, the City of Los Angeles.

Additionally, in determining whether the amount of time expended on a matter is reasonable, courts are to review time records supplied by the movant and "determine the compensable hours from the attorneys' time records, including only hours reasonably spent." *Shipes*, supra, at 319.  The Court should exclude from the lodestar calculation all time that is "excessive, duplicative, or inadequately documented." *Mid-Continent Cas. Co. v. Chevron Pipe Line Co*., 205 F.3d 222, 234 (5th Cir. 2000).  Likewise, the Court should exclude any hours that it determines are "unnecessary." *Hensley*, supra, at 434.  In that vein, Wahl must detail the work performed with enough specificity to permit a court to determine the reasonableness of the hours claimed, and hours not adequately detailed, vague or incomplete may be stricken or reduced.  *Id* at 433; *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).  In this case, even a cursory review of the time records submitted to the Court shows that a significant amount of time should be excluded from the lodestar based on these same infirmities:

### 1.    Block Billing

In this case, Wahl' ability to demonstrate the reasonableness of the time spent is made impossible by their use of block billing.  Defense counsel recorded their total daily time spent rather than itemizing the time expended on specific tasks.  This "block billing" method, not invalid per se, must be construed against Wahl whenever the time entries are insufficiently specific or clear to determine what time was reasonable and necessary. See *Broekelschen v. Sec'y of Health & Human Servs.*, 2008 WL 5456319, at *5 (Fed. Cl. Dec. 17, 2008) ("[T]o the extent that [Plaintiff's] records do not permit an examination of the reasonableness of the

activity being performed, the lack of more specific information will be considered in evaluating the time requested."); *Kimberly-Clark Corp. v. Factory Mut. Ins. Co.*, 2008 WL 1958998, at *7 (N.D. Tex. Apr. 30, 2008) (reducing lodestar where legal work was block-billed with clerical work making it impossible to determine how much time was spent on legal versus non-legal tasks").  The block billing in this case lumps several discrete tasks into, for example, a single seven (7), eight (8), or nine (9) hour block of time.  Wahl cannot meet its burden of demonstrating the reasonableness of their fees with this type of vague documentation.  See *Leroy*, 906 F.2d at 1080 (striking hours as "not illuminating as to subject matter" or "vague as to precisely what was done").

### 2.     Failure To Appropriately Delegate Tasks

Wahl's fees are also inflated by the fact that the majority of the work was done by partners in a law firm, rather than delegated to a capable associate with a lower billing rate.  Many of the tasks recorded by those partners are administrative and ministerial.  These are not tasks for which a client should pay a partner's billing rate—accordingly, those costs should not fall to Laube should this Court determine that Wahl are entitled to a fee.  See *Hilton v. Exec. Self Storage Assoc.*, 2009 U.S. Dist. LEXIS 51417, at *32 (S.D. Tex. June 18, 2009) (quoting *Hensley*) ("[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.")

### 3.     Lack of Billing Judgment

Further, there is no indication that Wahl' attorneys exercised what is known as "billing judgment" in submitting their time to the Court.  The party requesting an award of attorneys' fees bears the burden of demonstrating the reasonableness of the hours billed and must prove that billing judgment was exercised in reaching this figure. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006).

"Billing judgment requires documentation of hours written off as unproductive, excessive, or redundant." Id.    All "excessive, duplicative, or inadequately documented" time should be eliminated from an attorney's fee award.  *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). "The hours surviving this vetting process are those reasonably expended on the litigation." Id.    "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Walker v. HUD*, 99 F.3d 761, 770 (5th Cir. 1996).   See also *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990) ("Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but also hours written off.").  Wahl's invoices show no write-offs or deductions to support the exercise of any billing judgment.

### 5.    Failure to Segregate

The general rule regarding the recovery of fees "is that fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not.'" *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007). The party seeking attorneys' fees carries the burden of proof, which includes the duty to segregate recoverable fees from those that are not recoverable. See *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991).  When a party, such as Wahl in this case, seek to recover fees in a case involving multiple claims, only one/some of which support a fee award, the plaintiff must offer evidence segregating the hours worked among the various claims.  *Tony Gullo* at 310-14.   The failure to segregate fees in a case containing multiple causes of action and defenses by both parties, only some of which permit the recovery of fees, can defeat a fee recovery or lead the court to reduce the amount of the fee award if the documentation is vague or incomplete. See *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997); *La. Power & Light*

*co., v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).  In this case, Wahl has made no such effort to segregate.  Accordingly, further reduction should be made of any fee award based on the misappropriation of trade secrets claims.

Wahl bears the burden of establishing their entitlement to the award sought, and for all of the reasons set forth above, their application simply cannot support the fees sought.  See *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates").

## VI.   CONCLUSION

Wahl wholly failed to meet its requisite deadline for applying for additional attorney's fees and has offered no viable explanation for that failure.  Nor has Wahl sought an extension of its original deadline.   Wahl has so clearly missed its deadline that the Court should not even entertain the motion, but dismiss it as untimely instead.   Additionally, Wahl has failed to comply with the local rules regarding timing of the early meeting of counsel and notice in the motion that the early meeting occurred.  Thus the Court should alternatively dismiss the application for additional fees based on Wahl's failure to comply with the local rules.  In the unlikely event that the Court considers the substance of the application, it is clear that Laube has not pursued a course that was groundless, unreasonable, vexatious, or in bad faith—this case is not exceptional in any way which would warrant the imposition of attorneys' fees under F.R.C.P. Rule 54, Local Rule 54-10 or Cal. Civil Code section 3426.4.  Laube in good faith believed that Wahl stole his trade secrets and violated his patent rights and Wahl's contractual obligations.  Laube revisited those beliefs throughout this case and acted when those beliefs changed, i.e., moving to dismiss the patent claims following the Markman decision and thereafter moving to have summary judgment entered against plaintiffs based on that decision.

As the Court noted in its post-trial motions, there was some evidence to support Laube's legal theories, even if described as "thin" or "minimal".  There was clearly enough evidence to survive summary judgment on several claims as well as a motion for directed verdict.  Wahl's self-serving claim now that there was no evidence simply does not change that there was some evidence and that Laube acted in good faith in pursuing his claims.

Wahl's Motion for fees should be denied for each of these reasons.

Dated:  <u>January 28, 2014</u>          KENT A. ROWALD, P.C.


By:    <u>/s/ Kent A. Rowald /s/</u>          .
       Kent A. Rowald
       Attorney for Plaintiffs
       KIM LAUBE & COMPANY, INC.
       and KIM LAUBE

OPPOSITION TO MOTION FOR ATTORNEYS FEES (DKT 481)                                    PAGE 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# DECLARATION OF ELECTRONIC SERVICE

## Central District of California Case No. CV09-914 JAK(JC)

Service of the attached document was completed pursuant to Central District of California, Order Authorizing Electronic Filing, General Order No. 08-02, Section VII.A., which provides in part: "Upon the electronic filing of a document, a NEF is automatically generated by the CM/ECF system and sent by e-mail to all attorneys in the case who are registered CM/ECF Users and have consented to electronic service. Service of an electronically filed document upon a CM/ECF User who has consented to electronic service is deemed complete upon the transmission of the NEF."

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on January 28, 2014, at Houston, Texas.

By: /s/ Kent A. Rowald
Kent A. Rowald