**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | March 17, 2014 |
|---|---|---|---|
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Andrea Keifer | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**  (IN CHAMBERS) ORDER RE DEFENDANT'S MOTION FOR ATTORNEY FEES AND COSTS (DKT. 481)

**I.   Introduction**

Kim Laube & Co. ("KLC") and Kim Laube ("Laube") (collectively, "Plaintiffs") brought this action against Wahl Clipper Corporation ("Wahl" or "Defendant"). Plaintiffs alleged that Defendant's sales of certain products constituted infringement of U.S. Patent No. 6,473,973 (the "'973 Patent") and reflected a misappropriation of trade secrets, breach of contract and fraud. Dkt. 50, ¶¶ 17, 28. Defendant's motion for summary judgment was granted as to Plaintiffs' patent claims and certain others. Dkts. 313, 314. A jury trial was held on Plaintiffs' remaining non-patent claims. The jury returned a verdict for Defendant. Dkt. 362.

On November 6, 2013, the Court awarded Defendant attorneys' fees with respect to the litigation of the patent claims. Dkt. 467. On December 12, 2013, Defendant filed a "Motion for Recovery of Reasonable Attorneys' Fees, Costs and Expenses" (the "Motion"). Dkt. 481. The Motion seeks to recover attorneys' fees, costs and expenses incurred in the litigation of the trade secret claims. A hearing on the Motion was conducted on February 24, 2014. Dkt. 496. The Court ordered Defendant to submit supplemental briefing, which it filed on February 28, 2014. Dkt. 497. Plaintiffs submitted their responsive brief on March 7, 2014. Dkt. 499. For the reasons set forth in this Order, the Motion is GRANTED IN PART. Defendant is awarded attorneys' fees in the amount of $474,160.68, and costs and expenses in the amount of $58,046.74.

**II.   Factual and Procedural Background**

Plaintiffs and Wahl compete in the market for animal care products. Dkt. 50, ¶ 15. This market includes pet hair clippers, blades, guide combs, shampoos and other grooming products for pets. *Id.* From September 17, 1998 until December 24, 2002, Wahl held a 75 percent interest in KLC. Dkt. 218, ¶¶ 1, 10-11. During that time, Plaintiffs contend they "shared certain proprietary inventions and ideas regarding lever mechanism technology and variable speed technology" with Defendant, "in furtherance of [their]

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | March 17, 2014 |
|---|---|---|---|
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | |

fiduciary relationship." Dkt. 50, ¶ 26. Plaintiffs contend that these "inventions and ideas" were trade secrets. *Id.* at ¶ 28.

On December 24, 2002, Defendant transferred all of its stock in KLC to Laube. Dkt. 218, ¶ 10. In late 2005 or early 2006, Wahl began selling the "Wahl Switchblade Clipper." Dkt. 245-1, ¶ 6. That product contains a "variable speed feature" and a "removable drive tip." *Id.* at ¶¶ 14, 16; Dkt. 218, ¶ 14. In January 2006, Wahl began selling the "Stainless Steel Attachment Guide Comb." *Id.* at ¶ 18.

The operative Second Amended Complaint ("SAC") alleged, *inter alia*, that the Wahl Switchblade Clipper misappropriated two of KLC's trade secrets: (i) "variable speed technology"; and (ii) "lever mechanism technology." Dkt. 50, ¶ 27. The Complaint and the First Amended Complaint each also alleged that the "Stainless Steel Attachment Guide Comb" misappropriated KLC's trade secrets. Compl., Dkt. 1, ¶ 37; First Amended Complaint, Dkt. 8, ¶ 31. The SAC does not include an allegation with respect to the "Stainless Steel Attachment Guide Comb."

### A. Litigation of the Patent Claims

On October 15, 2012, the Court held a *Markman* hearing to construe certain claims in the '973 Patent. Dkt. 169. On March 8, 2013, the Court granted Wahl's motion for partial summary judgment of non-infringement and invalidity of the '973 Patent. Dkt. 314. Wahl brought a counterclaim in which it alleged that Plaintiff had engaged in inequitable conduct in the prosecution of the '973 Patent. A bench trial on Wahl's counterclaim was conducted on June 18, 2013. Dkt. 410. The Court concluded that Plaintiffs had engaged in inequitable conduct, and that Wahl was entitled to the recovery of attorneys' fees incurred in the litigation of the patent claims in this action. Dkt. 425. Following briefing and other proceedings, on November 6, 2013, the Court awarded Wahl $1,129,311.71 in attorneys' fees and $84,689.59 in costs and expenses.

### B. Litigation of the Non-Patent Claims

On March 8, 2013, the Court granted Defendant's motion for partial summary judgment with respect to the trade secret and breach of contract claims. Dkt. 313. The Court found that Plaintiffs' trade secret claim with respect to the "variable speed technology" failed because the technology had been publicly disclosed. *Id.* at 5-6. The Court found that the trade secret claim with respect to the "Stainless Steel Attachment Guide Comb" failed both because that claim had not been included in the SAC, and its relevant design features had been publicly disclosed. *Id.* at 5. The Court denied summary judgment as to the trade secret and breach of contract claims with respect to the "lever mechanism technology," also known as the "replaceable tip," because genuine issues of material fact were presented as to such claims. *Id.* at 6-9.

A jury trial was held on Plaintiffs' trade secret and breach of contract claims with respect to the "replaceable tip" technology. At the conclusion of the presentation of evidence at the trial, the Court denied Defendant's motion for judgment as a matter of law. Trial Tr., Mar 1, 2013, Dkt. 384, at 53. On May 3, 2013, the jury returned a verdict for Defendant on both claims. Dkt. 362. The jury found that Plaintiffs

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | March 17, 2014 |
|---|---|---|---|
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | |

had not proven by a preponderance of the evidence that Laube created the replaceable tip. *Id.* at 8. The jury also found that Wahl did not "do something that the Stock Transfer Agreement prohibited it from doing." *Id.* at 3.

On May 30, 2013, Plaintiffs moved for judgment as a matter of law, or in the alternative, for a new trial. Dkt. 391. On August 19, 2013, the Court denied the motion. Dkt. 436. The Court found that there was "sufficient evidence in the trial record to support a conclusion that Plaintiffs did not create the replaceable tip and very little credible evidence to the contrary." *Id.* at 3. On November 16, 2013, Plaintiffs filed a Notice of Appeal to the Federal Circuit of several Orders issued in this matter. Dkt. 473.

    **C.    Plaintiffs' Bankruptcy Filings**

On November 21, 2013, Laube and KLC notified the Court that each had "filed a voluntary petition" in the Bankruptcy Court for relief under Chapter 11 of the United States Bankruptcy Code. Dkts. 475, 476. Plaintiffs stated that each of these filings in the bankruptcy court "operates as a stay" of, *inter alia*, the "continuation of all judicial, administrative, or other actions or proceedings against the Debtor . . . to recover any claims against the Debtor that arose before the commencement of the Debtor's cases . . . [or] any act to obtain possession of property of or from the Debtor's bankruptcy estates." Dkt. 475, 476, at 2. On November 27, 2013, the Court issued an Order staying the case as a result of Plaintiffs' bankruptcy filings, and directing the parties to file a report every 90 days on the status of the bankruptcy proceedings. Dkt. 479.

On December 12, 2013, Defendant filed a status report in which it stated that, on December 11, 2013, the Bankruptcy Court issued an "Order Granting Motion For Relief From The Automatic Stay Under 11 U.S.C. § 362." Dkt. 480. at 1. On the same date, Defendant filed the Motion. Dkt. 481.[1]

---

[1] Plaintiffs failed to file a timely Opposition. The Court directed Plaintiffs to file their Opposition, along with a request for an extension of time stating the reason why the Opposition was not filed timely. Dkt. 483. Plaintiffs filed their Opposition and request on January 28, 2014. Dkt. 485. Plaintiffs contend that they believed this Court's Order staying the case (Dkt. 479) remained in effect, notwithstanding the bankruptcy court's Order granting relief from the automatic stay. *Id.* at 3. This argument is not persuasive. The automatic stay initiated by Plaintiffs' Chapter 11 filings was lifted by the bankruptcy court on December 11, 2013. Plaintiffs also contend, apparently relying on an outdated version of this Court's Standing Order, that their Opposition was not due until 21 days before the hearing on the Motion. *Id.* However, this Court's operative Standing Order provides that, for any motion that is set for hearing more than 35 days after the date of the filing of the motion, "any opposition must be filed no later than 14 days after the filing of the motion." Standing Order 9(b). Notwithstanding that the Opposition was not timely filed, and that the explanation advanced is not persuasive, the Court accepts and has considered it as if it had been timely filed.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | March 17, 2014 |
|---|---|---|---|
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | |

### III. Analysis

#### A. Whether Attorneys' Fees and Costs Are Warranted

##### 1. Legal Standard

Cal. Civ. Code § 3426.4 provides that, "[i]f a claim of misappropriation is made in bad faith . . . the court may award reasonable attorney's fees and costs to the prevailing party." "The California Court of Appeals has interpreted the statute's 'bad faith' element to require 'objective speciousness of the plaintiff's claim . . . and its subjective bad faith in bringing or maintaining the claim.'" *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2007) (quoting *Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 95 Cal. App.4th 1249,1262 (2002)).

"Objective speciousness exists where the action superficially appears to have merit, but there is a complete lack of evidence to support the claim." *FLIR Systems, Inc. v. Parrish*, 174 Cal. App.4th 1270, 1276 (2009). "Subjective bad faith may be inferred by evidence that [the plaintiff] intended to cause unnecessary delay, filed the action to harass respondents, or harbored an improper motive. . . . Similar inferences may be made where the plaintiff proceeds to trial after the action's fatal shortcomings are revealed by opposing counsel." *Id.* at 1278. "A subjective state of mind will rarely be susceptible of direct proof; usually the trial court will be required to infer it from circumstantial evidence." *Gemini*, 95 Cal. App.4th at 1263.[2]

##### 2. Application

###### a. Whether the Trade Secret Claims were Objectively Specious

###### i. Design of the Stainless Steel Attachment Guide Comb

Plaintiffs claimed in their motion for partial summary judgment that the "side restraints" in the Stainless Steel Attachment Guide Comb sold by Defendant constituted a misappropriation of Plaintiffs' trade secret. Dkt. 205-1, at 8. The side restraints "prevent the sideways movement of clipper combs." *Id.* at 3. However, as the Court found in its Order granting Defendant's motion for summary judgment (the

---

[2] The legal standard for awarding attorneys' fees incurred defending a claim for misappropriation of trade secrets is different from the standard for awarding fees incurred defending a claim for patent infringement. Defendant's prior motion to recover fees incurred defending the patent claims was brought pursuant to 35 U.S.C. § 285. *See* Dkt. 425, at 18. That statute provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." "A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates [Fed. R. Civ. P.] 11, or like infractions." *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | March 17, 2014 |
|---|---|---|---|
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | |

"Summary Judgment Order"), this claim was not alleged in the SAC. Dkt. 313, at 5. Further, the Court found that, even if the claim had been properly presented, it would have failed because the side restraints had been publicly disclosed in the '973 Patent. *Id.*

Plaintiffs knew or should have known that the side restraints had been publicly disclosed; their expert, James Alpert, stated as much in his report. In the Statement of Uncontroverted Facts submitted in connection with Plaintiffs' Motion for Partial Summary Judgment, Plaintiffs cited Alpert's report. Dkt. 205-3, ¶ 26. The report stated that "the side tabs which serve to prevent sideways movement of the comb on the clipper head are disclosed in the '973 patent and are present in the Wahl accused combs." Dkt. 219-1, at 3. "The disclosure of a trade secret in a patent places the information comprising the secret into the public domain." *Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1359 (C.D. Cal. 1995).

Plaintiffs concede that they have "always maintained that the combs were disclosed and claimed in Laube's patents." Dkt. 484, at 9. However, they contend that, when the Court held that "the comb elements that Laube believed were covered by the [973 Patent] claims were not disclosed," they "accept[ed] that finding . . . and assert[ed] that if they were not disclosed in the patent, they were not disclosed anywhere else . . . making them a trade secret." Dkt. 484, at 9. Plaintiffs do not identify the particular order that is the basis for this argument, *i.e.,* one that found that the side restraints were not disclosed in the '973 patent. Plaintiffs may intend to refer to the Court's "Order Construing Claim Terms After *Markman* Hearing." Dkt. 172. There, the Court found that Claim 4 in the '973 Patent, which refers to "two side elements attached there between," was limited to side elements attached to a back plate. *Id.* at 20. However, in interpreting Claim 4, which includes the phrase "a back plate attached at a rear base edge of the support base element opposite the comb teeth and two side elements attached there between," the Court was construing that specific language in the context of the claim. That order did not present a separate, generalized determination as to what was disclosed in the '973 Patent. Plaintiff apparently erroneously conflates what is disclosed in a patent for purposes of trade secret law with the scope of a claim for purposes of patent law. Plaintiffs' expert acknowledged the distinction between technology that is claimed versus technology that is disclosed in a patent. As he stated in his report, "I have also been asked to consider whether the Wahl accused combs incorporate the technology disclosed in the '973 patent, regardless of whether the technology is in the claims." Dkt. 219-1, at 3.

Further, the Court adopted a narrower construction of Claim 4 in part because the prior art included products with the broad construction advanced by Plaintiffs. Dkt. 172, at 18-20. Thus, were the Order interpreted as stating that Plaintiffs did not disclose the side restraints at issue in the '973 Patent, it would also be interpreted to mean that prior art did disclose the side restraints. For these reasons, Plaintiffs' argument that it believed that, "if [the side restraints] were not disclosed in the patent, they were not disclosed anywhere else," is not persuasive. Dkt. 484, at 9.

For these reasons, Plaintiff knew or should have known that the side restraints were not a trade secret. Therefore, Plaintiffs' decision to pursue this claim was objectively specious. *Stilwell Development Inc. v. Chen*, No. 86-CV-4487, 1989 WL 418783, at *4 (C.D. Cal. Apr. 25, 1989) (claim was specious where "there was a total failure of proof that the alleged trade secret was the subject" of reasonable efforts to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV09-00914 JAK (JCx) | Date | March 17, 2014 |
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | |

maintain secrecy and a device incorporating those features "had been sold to the general public"); *VSL Corp. v. Gen. Technologies, Inc.*, No. 96-CV-20446, 1998 WL 124208, at *3 (N.D. Cal., Jan. 5, 1998) (claim was specious where there was a "complete failure of proof . . . plaintiff was in the best position to assess whether the allegedly misappropriated information was in fact a trade secret . . . [and] should have conducted a reasonable investigation as to whether the information qualified as a trade secret. Such an investigation would have revealed immediately that the information did not qualify for trade secret status").

      ii.  Variable Speed Technology

The Court granted Defendant's motion for summary judgment as to Plaintiffs' trade secret claim with respect to the variable speed technology. The Court found that the nature of the variable speed technology, which was described in the SAC and in the course of discovery, was the "use of electric current pulses rather than a resistor method." Dkt. 313, at 5. The Court found that "a description of the trade secret at this level of generality was fully disclosed by Plaintiffs' own advertisements in 1996." *Id*. The Court also noted that Plaintiffs did not contest "that the technology is fully disclosed during a simple examination of the product by someone knowledgeable about pulse width modulation." *Id*. Defendant contends that Plaintiffs' claim is objectively specious, because, "[a]s this Court recognized on summary judgment . . . [e]very fact precluding trade secret protection was known to Plaintiffs before they filed their Complaint, and certainly as they continued to pursue their claims through discovery." Dkt. 481, at 17.

Plaintiffs contend that their asserted trade secret covers not a general claim as to variable speed technology, but "how Laube was able to shrink that circuitry to the point that it would fit in a hand held clipper." Dkt. 484, at 9. In the Summary Judgment Order, the Court recognized that Plaintiffs had adopted the position, in connection with the parties' competing motions for summary judgment, that the asserted trade secret was not the variable speed technology in general, but the "means of making this generally-known technological concept of pulse width modulation work on a smaller scale." Dkt. 313, at 5. However, the Court found that Plaintiffs had only presented argument and evidence to the Court with respect to the pulse width modulation technology in general, rather than the size of that technology. For example, Plaintiffs' expert, James Alpert, did not describe the asserted trade secret as one that was based on the size of the circuitry; he described it as the use of "pulsing" to conserve power, prevent heat from building up in the clipper, and maintain clipper speed and cutting force. Dkt. 219-1, at 39. Indeed, at his deposition, Alpert stated that all of the aspects of the variable speed technology to which he referred in his report were well-known concepts prior to the year 2000. *Id*. at 24-26.

Plaintiffs' argument that their claim covered only the size of the technology is also contradicted by their Motion for Partial Summary Judgment. There, they stated expressly that the misappropriation claim with respect to the variable speed technology included both the "design for a pulsed variable speed controller," and, as "*[a]nother* aspect of Plaintiffs' proprietary technology," the "reduction in size of the pulse switch power supply." Dkt. 205-1, at 3 (emphasis added). Thus, Plaintiffs continued to pursue separately their claim with respect to the overall design of the variable speed technology. They did so despite the lack of evidence to support that claim, and the concession from their expert that the technology had been publicly disclosed.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | March 17, 2014 |
|---|---|---|---|
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | |

Even if Plaintiffs' claim were construed to concern only the size of the variable speed technology, Plaintiffs did not provide supporting evidence, aside from Laube's conclusory deposition testimony. At the hearing on the parties' motions for summary judgment, the Court asked Plaintiffs' counsel to point to evidence in the record that shows that the variable speed technology, or certain aspects of it, had not been publicly disclosed. In response, Plaintiffs' counsel referred the Court to Laube's declaration and Alpert's expert report. Hearing Tr., Feb. 25, 2013.[3] Laube's declaration contains only a conclusory statement that his inventions "contained information not known to the general public or to other persons who could obtain value from their disclosure or use." Dkt. 217, at 4. Alpert's report did not refer to the size of the variable speed technology, or state that the variable speed technology, or any aspects of it, had not been publicly disclosed. Dkt. 219-1, at 38. To the contrary, as noted, Alpert conceded at his deposition that, prior to 2000, all of the aspects of the variable speed technology to which he referred in his report were well-known, disclosed concepts. *Id.* at 24-26.

Moreover, Plaintiffs did not provide evidence that they took reasonable steps to protect the claimed trade secret. Although Plaintiffs argued that Laube "masked" the technology to prevent the public from identifying its components, the Court noted that "Plaintiffs conceded at the hearing that masking of the chip numbers would be irrelevant if it were already known that Plaintiffs were using pulse width modulation technology. As noted, use of this technology was already disclosed by Plaintiffs in their advertisements." Dkt. 313, at 6.

As the Court noted in the Summary Judgment Order, "the undisputed evidence shows that the essence of the alleged trade secret Plaintiffs have described was publicly disclosed." Dkt. 313, at 6. For these reasons, Plaintiffs' claim is objectively specious. *FLIR Systems,* 174 Cal. App.4th at 1276 ("Objective speciousness exists where the action superficially appears to have merit, but there is a complete lack of evidence to support the claim."); *Weco Supply Co. v. Sherwin-Williams Co.*, No. 10-CV-00171, 2013 WL 56639, at *3 (Jan. 3, 2013) (finding objective speciousness where the court found on summary judgment that "the undisputed facts show that Weco's pricing . . . and costs of acquisition were not trade secrets").

       iii.   Replaceable Tip Technology

The Court denied Defendant's motion for summary judgment with respect to the replaceable tip technology. Dkt. 313, at 6. At trial, the jury found that Plaintiffs did not "prove by a preponderance of the evidence that Kim Laube created the replaceable tip." Dkt. 362, at 8. Defendant contends that the issue of who created the replaceable tip was "not before the Court on summary judgment," and "Plaintiffs had absolutely no evidence (aside from Kim Laube's uncorroborated testimony) that Wahl misappropriated their replaceable tip technology." Dkt. 481, at 19. At the conclusion of the jury trial, the Court denied Defendant's Motion for Judgment as a Matter of Law. Trial Tr., Mar 1, 2013, Dkt. 384, at 53.

---

[3] In their Statement of Uncontroverted Facts in support of their Motion for Partial Summary Judgment, Plaintiffs cited only the Laube Declaration in support of their position that the alleged trade secrets had not been disclosed. Dkt. 205-3, at 5.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | March 17, 2014 |
|---|---|---|---|
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | |

The Court later denied Plaintiffs' Motion for Judgment as a Matter of Law or, Alternatively, Motion for New Trial. Dkt. 436. The Court found that "there was sufficient evidence in the trial record to support a conclusion that Plaintiffs did not create the replaceable tip and very little credible evidence to the contrary." *Id*. at 3. The Court also noted that Plaintiffs' motion failed to identify "the evidence that would support a finding by a preponderance of the evidence that Plaintiffs created the replaceable tip." *Id*. Similarly, Plaintiffs Opposition to the instant Motion fails to identify any evidence that would support a finding by a preponderance of the evidence that Laube created the replaceable tip. Dkt. 484, at 11-12.

However, as noted, to conclude that Plaintiffs' claim was objectively specious, the Court must determine not only that Plaintiffs failed to prove it by a preponderance of the evidence, but that there is "a complete lack of evidence to support the claim." *FLIR Systems*, 174 Cal. App.4th at 1276. The Court denied Defendant's motions for summary judgment and judgment as a matter of law with respect to the replaceable tip, concluding that there was sufficient evidence to warrant the submission of that issue to the jury. Based on the entire record in this action, it has not been shown that this claim was objectively specious.

b.    Whether Plaintiffs Acted in Subjective Bad Faith

"Subjective bad faith may be inferred by evidence that [the plaintiff] intended to cause unnecessary delay, filed the action to harass respondents, or harbored an improper motive. . . . Similar inferences may be made where . . . the action's fatal shortcomings are revealed by opposing counsel . . . and the decision is made to go forward despite the inability to respond to the arguments raised." *FLIR Systems,* 174 Cal. App.4th at 1278, 1283; *Gabriel Technologies Corp. v. Qualcomm, Inc.*, No. 08-CV-1992, 2013 WL 410103 (S.D. Cal., Feb. 1, 2013).

For the reasons previously stated, Plaintiffs knew or should have known that the side restraints had been publicly disclosed, in either the '973 Patent or the prior art. Plaintiffs also knowingly pursued their claim with respect to the variable speed technology, despite the absence of evidence that the technology had not been publicly disclosed. Plaintiffs also offered changing and inconsistent descriptions of the particular aspects of the variable speed technology that they claimed as a trade secret. *See Gabriel Technologies*, 2013 WL 410103 at *7 (trade secret claim brought with subjective bad faith where the claims "lacked adequate specificity" and were not "designate[]d with sufficient particularity"). The "knowing persistence of an invalid claim also demonstrates plaintiffs' subjective bad faith in causing the needless expenditure of money in defense of the trade secret claim." *Stillwell Dev., Inc. v. Chen,* No. 86-CV-4487, 1989 WL 418783, *5 (C.D. Cal., Apr. 25, 1989).

Defendant contends that subjective bad faith is also shown by Plaintiffs' "vexatious litigation conduct," including: (i) naming "Greg Wahl as a Defendant, in the first two versions of their Complaint, with no good faith basis to do so;" (ii) opposing "Wahl's efforts to lift the stay of the action;" (iii) refusing to comply with discovery obligations; (iv) taking "outrageous settlement positions;" (v) making "deliberate attempts to present excluded evidence to the jury during trial;" and (vi) pursuing "frivolous motions even after trial concluded." Dkt. 481, at 20-21. Each of these arguments is separately addressed.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | March 17, 2014 |
|---|---|---|---|
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | |

i.  Naming Greg Wahl as Defendant

The original Complaint and the First Amended Complaint named Wahl's CEO, Greg Wahl, as a defendant in his individual capacity. Dkt. 1; Dkt. 8. The SAC did not. Dkt. 45. Plaintiffs contend that "Greg Wahl is the individual who Laube continues to assert visited Laube's plant, looked at all of the trade secrets and directed to have them sent to Wahl's corporate offices." Dkt. 484, at 7. Plaintiffs contend that they chose not to name Greg Wahl in the SAC because "there was some question regarding whether Greg Wahl was subject to personal jurisdiction." *Id.* at 8. Defendant does not contest these arguments in its Reply. Dkt. 490. Accordingly, there is not a sufficient showing to conclude that Plaintiffs had "no good faith basis" to name Greg Wahl in the original complaint or the First Amended Complaint.

ii.  Plaintiffs' Opposition to Defendant's Efforts to Lift Stay Pending Reexamination of Patent

The action was stayed as of February 1, 2010 in light of the PTO's ongoing reexamination of the '973 patent. Dkt. 64. Defendant sought to lift the stay after the reexamination was completed. Dkt. 112. Plaintiffs opposed lifting the stay because they were appealing the decision of the PTO. Dkt. 114; Dkt. 484, at 8. The Court lifted the stay. Dkt. 121. Given these facts, Defendant has not provided a basis to find that Plaintiffs' attempt to maintain the stay so that their appeal of the PTO's determination could be completed shows bad faith.

iii.  Plaintiffs' Compliance with Discovery Obligations

Defendant contends that Plaintiffs' subjective bad faith can be inferred from their "refus[al] to comply with their discovery obligations, forcing Wahl to file not one, but three, motions to compel." Dkt. 481, at 20. On July 30, 2012, Defendant filed its first Motion to Compel. Dkt. 147. On August 28, 2012, Magistrate Judge Chooljian granted the motion in part. Judge Chooljian noted that Plaintiffs had agreed to produce certain documents, advised Defendant's counsel that they were "in the process of locating and scanning responsive documents," and yet continuously failed to produce them, ultimately arguing that they should not be required to do so prior to the entry of a protective order. Dkt. 158, at 3-5. Plaintiffs appear to maintain that position, arguing in their Opposition to the instant Motion that "Wahl's first motion [to compel] was filed seeking confidential information prior to entry of a protective order." Dkt. 484, at 10. However, as Judge Chooljian stated in the order granting the Motion to Compel, "[e]ven if, despite the parties' agreement to abide by their stipulated protective order before it was entered, it was justifiable for plaintiffs to withhold certain documents pending the entry of a protective order, plaintiffs failure timely to produce *any* documents responsive to the requests for production cannot be justified on such basis." Dkt. 158, at 5.

Judge Chooljian also stated that Plaintiffs' Opposition to the Motion to Compel was filed more than two weeks late. *Id.* at 1. She also observed that Plaintiffs failed to produce timely "infringement contentions." *Id.* at 3. Perhaps most disturbing, she noted that, although Plaintiffs produced certificates of service showing that the infringement contentions were served on a particular date prior to the deadline that had

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | March 17, 2014 |
|---|---|---|---|
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | |

been set for production, the postmark dates on the "accompanying envelope[s]" show that the contentions were actually served on a later date, after the deadline had expired. *Id.* at 3, n. 5.

Ultimately, Judge Chooljian held that "Plaintiffs and their counsel, jointly and severally, are directed to pay sanctions in the amount of $1000 . . . based upon plaintiffs' failure to participate in the preparation of a joint stipulation." *Id.* at 9. In the Order, Judge Chooljian also stated that, at the hearing on the Motion to Compel, she had "admonished plaintiffs/plaintiffs' counsel regarding compliance with service and filing rules/deadlines and cautioned that although only monetary sanctions were being imposed at this juncture, any further noncompliance with the governing rules could subject plaintiffs/plaintiffs' counsel to additional sanctions, including terminating sanctions." *Id.* at 1 n.2.

Defendant filed a second Motion to Compel on November 7, 2012. Dkt. 177. Defendant contends that it did so because Plaintiffs had "completely ignored Wahl's Second Requests for Production, refused to provide the supplemental discovery ordered by the Court, and refused to provide Wahl with a privilege log to substantiate several documents that had been withheld from discovery." Dkt. 481, at 8. Defendant withdrew its second Motion to Compel (Dkt. 182) after "Plaintiffs eventually agreed to respond to the RFPs and to provide Wahl with a privilege log." Dkt. 481, at 9. Defendant filed a third Motion to Compel on December 21, 2012. Plaintiffs did not file an Opposition, but opposed the Motion at oral argument. The Court granted the motion in part, ordering the production of certain additional discovery. Dkt. 318.

Plaintiffs' conduct during the course of discovery is troubling. Plaintiffs frequently missed deadlines for producing information. Plaintiffs appear to have made misstatements with respect to their progress related to the production of certain documents. Plaintiffs also appear to have misstated the dates on which they served their "infringement contentions" on Defendant. Although this conduct is not, by itself, sufficient to show subjective bad faith, it is properly a part of the assessment of all of the evidence on this issue.

iv.     Plaintiffs' Settlement Positions

Defendant contends that Plaintiffs "took outrageous settlement positions, claiming that they were entitled to hundreds of millions in punitive damages and assignment of Wahl's patents, among other things." Dkt. 481, at 21. Plaintiffs contend that Defendant "improperly relies upon Laube's settlement offers to impute bad faith and liability." Dkt. 484, at 6. Such offers, Plaintiffs contend, "are clearly inadmissible to prove liability" under Federal R. Evid. 408. *Id.*

Fed. R. Evid. 408 provides that, although evidence of "conduct or a statement made during compromise negotiations about the claim . . . is not admissible . . . either to prove or disprove the validity or amount of a disputed claim," such evidence may be admitted "for another purpose . . ." Plaintiffs' settlement positions may be considered in the context of the Motion. They are offered not to prove liability, but "for another purpose" -- to support Defendant's contention that Plaintiffs pursued their misappropriation claims in bad faith. *Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1160 (9th Cir. 2007); *Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 584 (N.D. Cal. 2008).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | March 17, 2014 |
|---|---|---|---|
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | |

Prior to the parties' initial May 24, 2012 settlement conference, Plaintiffs submitted a statement in which they asserted that a "conservative" estimate for punitive damages is "in the range of $100 million," or 10% of their estimate of Wahl's net value. Dkt. 482-3, at 10. Prior to the parties' second settlement conference, which was held on December 17, 2012, Plaintiffs submitted a statement in which they again estimated conservative punitive damages "in the range of $100 million," and also stated that "the jury could easily more than double that amount." Dkt. 482-5, at 9.

Prior to the parties' final settlement conference in March 2013, after the patent claims and two of the three trade secret claims had been dismissed, Plaintiffs submitted a statement that "Plaintiffs believe the most likely calculation [of punitive damages] by the jury will be in the range of $283 million." Dkt. 482-6, at 5. Thus, Plaintiffs estimate of punitive damages increased nearly three-fold after several claims were dismissed.

Plaintiffs contend that their settlement demands "were consistent with the expert reports in the case and consistent with the evidence of record in the various motions." Dkt. 484, at 10. Plaintiffs do not cite to the particular expert reports or evidence that may provide a basis for their estimate of $283 million in punitive damages. To the contrary, Plaintiffs' damages expert, Charles Hart, submitted a report in which he estimated that the "gross revenues of replaceable tip sales" were $4,546,687. Dkt. 219-2, at 43. Thus, Plaintiffs' estimate for punitive damages was nearly 63 times their own expert's estimate of damages. The California Uniform Trade Secrets Act limits punitive damages to two times the amount of damages awarded. Cal. Civ. Code § 3426.3.

Plaintiffs' settlement positions were not based on the evidence or applicable legal standards. They were more aggressive as Plaintiffs' claims were reduced and narrowed in scope through pre-trial rulings. Such conduct suggests subjective bad faith. *See FLIR Systems*, 174 Cal. App.4th at 1282 ("A trial court, in awarding sanctions, may consider a party's dilatory tactics and bad faith settlement demands in maintaining the action. . . . Here the settlement terms were inflammatory, violated public policy, and were made in bad faith.").

        v.  Plaintiffs' Respect for Evidentiary Rulings

Defendant contends that, at trial with the jury present, Plaintiffs improperly read to certain witnesses portions of a letter that the Court had ruled to be irrelevant. Dkt. 481, at 10-11. Defendant also contends that Plaintiffs improperly disclosed to the jury details of a prior lawsuit between the parties, and improperly argued to the jury that it should award damages that did not include a deduction for costs and expenses, despite the Court's rulings to the contrary. *Id.* Plaintiffs do not contest Defendant's characterization of their conduct at trial; they contend that they were merely "building [their] record at trial for an appeal." Dkt. 484, at 11. Thus, Plaintiffs do not dispute that they intentionally presented evidence and arguments to the jury that the Court had specifically precluded. This conduct was not necessary to "build" a record for appeal; the Court's rulings were already in the record. Plaintiffs' improper statements at trial support Defendants' claim as to subjective bad faith.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | March 17, 2014 |
|---|---|---|---|
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | |

      vi.      Plaintiffs' Post-Trial Motions

Defendant contends that Plaintiffs' Motion for Judgment as a Matter of Law was "frivolous." Dkt. 481, at 12. Plaintiffs do not respond to this argument in their Opposition. In a joint statement filed by the parties on May 15, 2013, Defendant wrote that Plaintiffs were barred from filing the Motion for Judgment as a Matter of Law because they had not raised the arguments on which it was based in a pre-verdict motion pursuant to Fed. R. Civ. P. 50(a). Indeed, as the Court noted in its Order denying the Motion for Judgment as a Matter of Law, because Plaintiffs did not move for relief under Rule 50(a), and "such a motion is a condition precedent for seeking relief under Civil Rule 50(b), Plaintiff's Motion on this ground necessarily fails." Dkt. 436, at 1-2. Plaintiffs knew of the fatal deficiency in their motion, and yet still chose to pursue it. Such conduct is indicative of bad faith. *FLIR Systems,* 174 Cal. App.4th at 1278.

Further, Plaintiffs' Motion for Judgment as a Matter of Law rests in part upon Plaintiffs' mischaracterization of the trial testimony of several witnesses with respect to whether each had access to, and had received, Plaintiffs' replaceable tip design. Plaintiffs argued that "Greg Wahl and Kim Laube both testified that Mr. Laube showed Greg Wahl a copy of Mr. Laube's replaceable lever tip design, among other items, during Mr. Wahl's November 15, 2000 trip." Dkt. 391-1, at 7. However, Greg Wahl did not so testify. Rather, he testified that Laube did not show him the replaceable tip design during that trip. Dkt. 398-5, Exh. E. Plaintiffs also stated that "Mr. Davis testified that Mr. Laube provided prototype clippers (which included the replaceable tip) to Bo Langley for testing." Dkt. 391-1, at 8. However, Davis did not so testify. Instead, he testified that he did not know how Langley received the clippers, and he did not know whether the clippers included the replaceable tip. Dkt. 382, at 99-100, 105-106.

The Court previously noted, in its Order denying the Motion for Judgment as a Matter of Law, that the portion of Plaintiffs' motion that sought a new trial "does not include any citations to the trial record or to any legal authority. The Plaintiffs' supplement to the Motion contains a single citation to the trial record and no citations to authority. Such a presentation is both unhelpful and insufficient to meet the Plaintiffs' burden on their Motion." Dkt. 436, at 3. Indeed, Plaintiffs have submitted many briefs that fail to cite to the record or to identify specific evidence to support their claims. These same briefs mischaracterize, and, in some cases, directly contradict, the Court's prior orders and the evidence on the record. For example, Plaintiffs' Opposition to the instant Motion fails to cite to the trial record or identify specific evidence to support its conclusory arguments. Dkt. 484. The Opposition also mischaracterizes the Court's prior Orders. For example, the Opposition states that "the Court did NOT find that the comb elements were publicly disclosed, only that Laube contended that they were disclosed in the patent, a contention that the Court had already rejected." Dkt. 484, at 9. However, the Court expressly stated that the only aspect of the comb design that was identified as a trade secret with the required particularity -- the four-sided comb -- was not secret, "because this feature of the comb was disclosed; the '973 patent diagrams show a four-sided comb." Dkt. 313, at 5.

                      *                      *                      *

Taken together, Plaintiffs' persistence in continuing to pursue their objectively specious claims with respect to the side restraints and variable speed technology, and their conduct throughout the litigation

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | | Date | March 17, 2014 |
|---|---|---|---|---|
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | | |

process, show subjective bad faith. For these reasons, pursuant to Cal. Civ. Code § 3426.4, Defendant is entitled to attorneys' fees incurred defending the trade secret claims with respect to the side restraints and variable speed technology.[4]

### B. Calculating Reasonable Attorneys' Fees and Costs

#### 1. Legal Standard

Under California law, the calculation of attorneys' fees is guided by the lodestar analysis. Thus, the award of fees begins with an assessment of the reasonable number of hours expended at a reasonable hourly rate. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1134 (2001). A declaration concerning hourly rates is generally sufficient evidence of the hourly rates in the relevant legal community. *Davis v. San Diego*, 106 Cal. App. 4th 893, 903 (2003). However, "[t]he value of legal services performed in a case is a matter in which the trial court has its own expertise," and a court "may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony." *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1096 (2000).

In determining reasonable compensation, courts "must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." *Ketchum*, 24 Cal. 4th at 1132. The lodestar may be adjusted upward or downward based on a number of factors, including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 64 (2009). The party seeking attorneys' fees bears the burden of proving that the fees it seeks are reasonable. *Id.* at 47.

The Ninth Circuit, in considering an award of attorneys' fees under California law, has outlined 12 factors for trial courts to consider:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill necessary to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature

---

[4] Plaintiffs' procedural arguments -- that the Motion was not filed timely, and that Defendant's counsel failed timely to meet and confer before filing the Motion -- are not persuasive. The stay barred Defendant from filing the Motion, which Defendant filed one day after the stay was lifted. 11 U.S.C. § 362(a). Further, Plaintiffs concede that Wahl's counsel conferred with Plaintiffs' counsel prior to filing the Motion, and do not claim to have suffered prejudice from the fact that the meeting occurred three days, rather than five days, before the Motion was filed. *See* L.R. 7-3.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | March 17, 2014 |
|---|---|---|---|
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | |

and length of the professional relations with the client, and (12) awards in similar cases.

*Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1341-42 (9th Cir. 1986). A court need not consider all these factors, but it must consider those that do apply in a particular case. *Id.* at 1342 ("A complete failure to consider these guidelines constitutes an abuse of discretion. Consideration of only three factors and conclusion that the remaining nine are not relevant is not an abuse of discretion.").

    2.    <u>Application</u>

        a.    <u>Attorneys' Fees</u>

            i.    <u>Apportionment of Billing Entries</u>

Defendant seeks $1,304,638.95 in attorneys' fees and $159,323.94 in costs and expenses incurred "[d]efending against Plaintiffs' claims for misappropriation." Dkt. 481, at 22. Defendant submitted detailed documentation in support of the Motion. Long Dec'l, Dkt. 482, Exhs. Q, R, S. Defendant apportioned those time entries that address both the patent and non-patent claims as "either 50 percent related to the misappropriation claim . . . or 40 percent related to the misappropriation claims (where Wahl's non-patent counterclaims may have been implicated, to account for a deduction of time spent on those claims)." Dkt. 482, at 6. Defendant does not segregate the fees and costs incurred defending Plaintiffs' breach of contract and fraud claims from those incurred defending the misappropriation claims, because it contends "Plaintiffs' claims for breach of contract and fraud were plead based on the same facts, involved the same defenses and were treated uniformly throughout this action with the misappropriation claims." Dkt. 481, at 23 n.15.

In response to the Court's February 24, 2014 Order, Defendant provided supplemental briefing with respect to the billing entries, or portions thereof, that address the trade secret claims with respect to the side restraints and variable speed technology, as opposed to the replaceable tip technology. Dkt.497-2. As discussed above, Defendant may recover only those fees incurred defending those two claims. Accordingly, the apportionment of certain billing entries depends on the stage of the case in which the work reflected in those entries was performed. In its supplemental filing, Defendant identified four relevant time periods.

The first is from February 2009, when the original Complaint was filed, until October 16, 2009, when the Second Amended Complaint was filed that removed the side restraints claim. During this time period, there were three trade secret claims at issue. As discussed above, Defendant is entitled to recover attorneys' fees incurred defending two of those claims. Accordingly, in its supplemental declaration, Defendant seeks recovery of two-thirds (66%) of the portion of each billing entry during this period that it had previously attributed to its defense of the trade secret claims. Dkt. 497-2, ¶¶ 18-19.

The second period is from October 17, 2009 to November 16, 2012, when Plaintiffs' Supplemental Expert Report indicated that Plaintiffs sought to re-introduce the issue of the side restraint technology. During

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | March 17, 2014 |
|---|---|---|---|
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | |

this time period, there were two trade secret claims at issue. Defendant is entitled to recover attorneys' fees incurred defending one of those claims. Accordingly, Defendant seeks recovery for half (50%) of each billing entry during this period that it had previously attributed to its defense of the trade secret claims. *Id.*

The third period is from November 17, 2012 to March 9, 2013, when the Court granted in part Defendant's Motion for Summary Judgment. During this time period, there were three trade secret claims at issue. Defendant is entitled to recover attorneys' fees incurred defending two of those claims. Accordingly, Defendant seeks recovery for two-thirds (66%) of the portion of each billing entry during this period that it had previously attributed to its defense of the trade secret claims. *Id.*

The fourth time period relates to the filing and pursuit of the present motion for attorney's fees. Defendant seeks recovery for the attorneys' fees it has incurred in connection with this process. As noted, Defendant is entitled to recover for attorneys' fees incurred defending two of the trade secret claims. Accordingly, Defendant seeks recovery for two-thirds (66%) of the portion of each billing entry related to the instant Motion. *Id.*

ii.     Reasonableness of Hourly Rates and Hours Worked

With respect to the reasonableness of the hourly rates charged by defense counsel, Defendant "incorporates by reference the explanation" provided in connection with the attorneys' fee motion for the patent portion of the case "of why the hourly rates charged by Wahl's attorneys in this case were reasonable." Dkt. 481, at 22. The Court's November 6, 2013 Order noted that the rates charged by each of the lawyers who worked on the matter on behalf of Defendant were generally reasonable. The Court also stated that the rates "are consistent with or below the corresponding average hourly rates charged for patent litigation in Los Angeles." Dkt. 467, at 6. With respect to the issues raised by the instant Motion, based on the Court's experience with the hourly rates charged in this District by attorneys with similar qualifications to those who represented Defendant in this action, and who have performed similar work to what Defendant's counsel performed in this action, the Court finds that the proposed hourly rates are reasonable.[5]

---

[5] Plaintiffs contend that a reduced rate is reasonable, because Defendant, and, allegedly, defense counsel, agreed to accept reimbursement of attorneys' fees from Defendant's insurance carrier at a reduced rate. Dkt. 499, at 2. Plaintiffs contend that Defendant thereby conceded that a reduced rate was reasonable. This argument is not persuasive. Plaintiffs rely on *Nemecek & Cole v. Horn*, 208 Cal. App.4th 641 (2012). However, *Horn* supports Defendant's position. There, the Court of Appeals rejected the plaintiff's argument that the court should not award attorneys' fees based on a higher rate than that considered by the defendant's insurance carrier. The court held that "[t]he amount to be awarded as attorney's fees is left to the sound discretion of the trial court, which is in the best position to evaluate the services rendered by an attorney in his courtroom. . . . A trial court may consider the terms of the parties' contract, along with other factors, but . . . the terms of the contract do not compel any particular award." *Id.* at 649, 652.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | March 17, 2014 |
|---|---|---|---|
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | |

As the Court noted in its prior Order, notwithstanding that the fees generally appear reasonable, four downward adjustments are appropriate. These relate to the change in law firms that represented Wahl, and the limited involvement of certain of Defendant's attorneys in this matter. *Id.* First, in the prior Order, the Court applied a 15% discount to the rate of $610 per hour charged by Joan Long during the portion of the case in which she worked at Mayer Brown. *Id.* at 8. The Court applies the same reduction here. All of Long's work performed while at Mayer Brown occurred during the first time period noted above, for which Defendant is entitled to recover two-thirds (66%) of the portion of each billing entry that it attributed to its defense of the trade secret claims. Under these parameters, while at Mayer Brown, Long billed a total of $5,795 for work defending the two trade secret claims that form the basis for the award of attorneys' fees. Dkt. 482-17, Exh. Q. That amount is reduced by 15%, to $4,925.75.

Second, in the prior Order, the Court noted that two associates at Mayer Brown -- Michael Word and Christopher Mackey -- spent a substantial amount of time on general work on the matter. But, neither moved to Barnes & Thornburg when that firm took over the representation of Wahl. Therefore, "the investment in each of them by Wahl was lost, and those who replaced them at Barnes & Thornburg had to invest time to become familiar with the case." Dkt. 467, at 7. Therefore, the Court previously concluded that it was appropriate to award only 50% of the time billed by Word and Mackey. *Id.* The same reasoning applies here. Word and Mackey billed a total of $52,081.88 for work defending the trade secret claims. Dkt. 482-17, Exh. Q. All of their work was performed during the first time period noted above, for which Defendant is entitled to recover two-thirds (66%) of the portion of each billing entry that it attributed to its defense of the trade secret claims. *Id.* Accordingly, Word and Mackey billed a total of $34,721.25 for work defending the two trade secret claims that form the basis for the award of attorneys' fees. That amount is reduced by 50%, to $17,360.63.

Third, in the prior Order, the Court noted that, because Jamison Lynch worked on "issues that required a duplication of effort as a result of the transition . . . it is appropriate to reduce by 15% the requested amount of his billings." Dkt. 467, at 7. The same reasoning applies here. Lynch billed a total of $17,780.63. Dkt. 482-17, Exh. Q. All of his work was performed during the first time period noted above, for which Defendant is entitled to two-thirds (66%) of each billing entry attributed to its defense of the trade secret claims. Accordingly, Lynch billed a total of $11,853.75 for work defending the two trade secret claims that form the basis for the award of attorneys' fees. That amount is reduced by 15%, to $10,075.69.

Fourth, in the prior Order, the Court noted that "[a]nother Mayer Brown lawyer, David A. Greenfield, worked on the case for a single day. This was not efficient. Therefore, the Court has denied the request for an award of the $848.13 in fees arising from this work." Dkt. 467, at 7. The same analysis applies here. Thus, the fees incurred by Greenfield are not recoverable.

Plaintiffs made only omnibus objections to Wahl's apportionment of fees; they did not submit objections on an entry-by-entry basis. Therefore, as noted in the Court's prior Order, "to the extent the general objections fail, Laube has, in effect, conceded the propriety of the particular fees submitted." *Id.* at 8. Plaintiffs challenge Wahl's use of "block billing," arguing that it renders the time entries "insufficiently

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | March 17, 2014 |
|---|---|---|---|
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | |

specific or clear to determine what time was reasonable and necessary." Dkt. 484, at 16. However, the entries provide detailed descriptions of the work performed by each attorney on each day. Therefore, the Court was able to determine the reasonableness of the work performed and the fees incurred. A review of the supplemental detailed billing spreadsheets leads to the conclusion that Wahl's apportionment, maintenance of records, hourly rates, and hours spent, with the exceptions noted above, were reasonable.

The Court also considered the objection that much of the work performed by Defendant's counsel was performed by partners at hourly rates that are greater than those for associates. Dkt. 484, at 17. This argument is not persuasive. When more experienced lawyers perform work, less time is often required, and there is not the same need for a more senior lawyer to spend time reviewing the work. Further, when more senior lawyers perform the work and then try the case, again, there is not the need to spend as much time preparing for trial. For these reasons, and because there has been no showing of excess amounts that were billed based on the experience of the attorneys who staffed the case, no reduction is warranted.

Defendants' supplemental brief shows that they incurred $495,016.75 defending the trade secret claims with respect to variable speed technology and side restraint technology. Dkt. 497-2, at 8. The reductions discussed above total $20,856.07. Accordingly, Defendant is awarded $474,160.68 in attorneys' fees.

    b.  Costs and Expenses

Defendant seeks an award of costs and expenses in the amount of $159,323.94. Dkt. 481, at 25. Defendant has placed the costs and expenses it seeks into three categories. The first includes $28,802.56 in filing fees, deposition costs, and transcript orders. Defendant contends that such costs are recoverable under Cal. Civ. Code § 3426.4, and may also be charged under 28 U.S.C. § 1920 and Local Rule 54. *Id*. Accordingly, Defendant contends that it need not apportion those costs among the three trade secret claims at issue. However, were these costs recovered under 28 U.S.C. § 1920 and Local Rule 54, Defendant would be subject to Local Rule 54-2.1, which provides that a party entitled to costs shall file a "Notice of Application to the Clerk to Tax Costs and Proposed Bill of Costs" within 14 days after the entry of judgment. Wahl concedes that it did not timely file those documents. It contends that it did not submit a Bill of Costs in order to "avoid the perception of 'double dipping.'" Dkt. 481, at 25. However, Defendant was required to file those documents in order to tax expenses. *See Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004); *Alfonso v. Tri-Star Search LLC*, No. 07-CV-1208, 2009 WL 2517080 (D. Ore., Aug. 14, 2009). Because Defendant failed timely to file the required documents, the requested costs are not recoverable under 28 U.S.C. § 1920 and Local Rule 54.

There is an independent basis for the claimed costs -- Cal. Civ. Code § 3426.4. *See* Advisory Committee Note to Fed. R. Civ. P. 54 (distinguishing between expenses taxable as costs from those "not taxable as costs," but recovered "under governing law incident to the award of fees"). Thus, because the Motion was filed timely, Defendant may recover costs in connection with the Motion pursuant to Section 3426.4.However, for the reasons discussed above with respect to attorneys' fees, Defendant is only entitled to those costs incurred defending the trade secret claims with respect to the variable speed

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-00914 JAK (JCx) | Date | March 17, 2014 |
|---|---|---|---|
| Title | Kim Laube & Company, Inc., et al. v. Wahl Clipper Corporation, et al. | | |

technology and the side restraints technology. All but one of the billing entries submitted in this category of expenses was incurred during the first time period. As noted, during that time period, Defendant is entitled to recover two-thirds (66%) of the portion of each billing entry that it attributed to its defense of the trade secret claims. *See* Dkt. 497-4, Exh. B, at 1-3. One entry, for $851.90, was incurred on July 5, 2012, during the time period for which Defendant is entitled to half (50%) of the portion of each billing entry that it attributed to its defense of the trade secret claims. Accordingly, Defendant's request for $28,802.56 in costs is reduced by $9,742.84, to $19,059.72.

The second category of requested costs includes $42,288.08 in fees paid to expert witnesses. Dkt. 481, at 25. Cal. Civ. Code § 3426.4 provides that, "[r]ecoverable costs hereunder shall include a reasonable sum to cover the services of expert witnesses . . . actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the prevailing party." Defendant's supplemental billing entries show that it incurred $16,359.47 in expert witness fees attributable to its defense of the trade secret claims with respect to variable speed technology and side restraint technology. Dkt. 497-4, Exh. B, at 3. Based on the Court's review of these billing entries, the Court finds that the expert witness fees incurred are reasonable.

The third category of requested costs includes $88,233.30 in miscellaneous costs and expenses that Defendant contends are recoverable under Cal Civ. Code § 3426.4, "and the Court's broad discretion to sanction." Dkt. 481, at 25. These expenses primarily include legal research fees, "Local Counsel Fees," copying, printing, travel and technical costs. Dkt. 482-19, at 5. Defendant's supplemental billing entries show that it incurred $22,627.55 in such costs that are attributable to its defense of the trade secret claims with respect to variable speed technology and side restraint technology. Dkt. 497-4, Exh. B, at 4-56. Plaintiffs do not specifically object to the reasonableness of this category of damages. Based on the Court's review of these billing entries, the Court finds that the costs incurred are reasonable.

For these reasons, Defendant is awarded $58,046.74 in costs and expenses pursuant to Cal. Civ. Code § 3426.4.

### IV. CONCLUSION

For the reasons set forth above, the Motion is GRANTED IN PART. Defendant is awarded attorneys' fees in the amount of $474,160.68, and costs and expenses in the amount of $58,046.74.

**IT IS SO ORDERED.**

:

Initials of Preparer    ak